UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW WHALEN,

                              Plaintiff,

                                                                              DECISION AND ORDER

                                                                                  01-CV-6492L

                              V.

J.P. MORGAN CHASE & CO.,

                              Defendant.
_____

Plaintiff, Andrew Whalen ("Whalen"), a former employee of defendant JP Morgan Chase Bank ("Chase"), alleges that Chase failed to pay him, and a class of similarly-situated underwriters, overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., and New York Labor Law §190 et seq. and §650 et seq.[1]  Chases claims that Whalen was not entitled to overtime because he was an exempt, administrative employee under the regulations adopted by the Department of Labor, 29 C.F.R. §541.500 et seq.

Whalen has moved for summary judgment on the grounds that he is a bona fide administrative employee entitled to overtime (Dkt. #72), and Chase has cross-moved for summary

---

[1] This action was originally commenced by Michael Davis.  Whalen and three other party-plaintiffs subsequently joined the litigation.  Pursuant to a Stipulation dated December 4, 2002 (Dkt. #31), it is now being litigated as an individual case.

judgment on the grounds that Whalen is not an administrative employee (Dkt. #90).  For the reasons that follow, plaintiff's motion is denied, Chase's motion is granted, and the Complaint is dismissed.

## DISCUSSION

**A.     Standard of Review on a Motion for Summary Judgment**

It is well settled that a motion for summary judgment should be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When ruling on a motion for summary judgment, the court must construe the alleged facts in the light most favorable to the nonmovant. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party bears the ultimate burden of proof, it is his or her responsibility to confront the motion for summary judgment with evidence in admissible form.  *Anderson*, 477 U.S. at 256.

**B.     Facts**

Chase is a global financial services firm that offers a number of financial products and services, including home equity lines of credit, home equity loans and various kinds of mortgages. Whalen was employed by Chase as an underwriter (also called a credit analyst) in Chase's Home Equity group in Rochester, New York from November 1998 until May 2002.

As an underwriter, Whalen's primary job duty was to evaluate the creditworthiness of Chase's customers applying for loans and lines of credit, and decide whether to approve such requests. In making credit decisions, Whalen analyzed documents concerning applicants' finances and credit histories, and made determinations, pursuant to certain written Chase policies and guidelines (the "Credit Policy"), as to whether the collateral was sufficient to offset the financial risk to Chase. In some instances, Whalen was authorized to approve loan requests and/or make counteroffers on loan requests with one or more variances or exceptions to Chase's policies and guidelines.

**C.     Claims Under the FLSA**

The FLSA requires compensation at one and a half time the regular rate when an employer requires the employee to work more than forty hours per week. *See* 29 U.S.C. §207(a)(2). To establish an FLSA claim, plaintiff must prove that: (1) he was an employee who was eligible for overtime (i.e., that he was not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated. *See id.*; *Barry v. Town of Elma*, 2005 U.S. Dist. LEXIS 5548 at *5-*6 (W.D.N.Y. 2005).[2] Because the FLSA is a remedial act, its exemptions are narrowly construed. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 14 (2d Cir. 1991); *Burke v. County of Monroe*, 225 F. Supp. 2d 306, 317 (W.D.N.Y. 2002). The employer bears

---

[2] The relevant portions of New York Labor Law do not diverge from the requirements of the FLSA: hence, although the Court's analysis makes specific reference to federal law, it applies equally to Falleson's state law claims. *See Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002); *Bandhan v. Lab. Corp. of America*, 2002 U.S. Dist. LEXIS 25972 at *20 n. 2 (S.D.N.Y. 2002). *See generally Brown v. Tomcat Electrical Security, Inc.*, 2007 U.S. Dist. LEXIS 63542 at *19 (E.D.N.Y. 2007).

the burden of proving that an employee is exempt, by demonstrating that the employee serves in a bona fide executive, administrative, or professional capacity. *Id*.; 29 U.S.C. §214(a)(1).

Here, defendant claims that plaintiff is exempt as an administrative employee. Whether an employee's duties are "administrative" within the meaning of the FLSA is a question of law. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

The Department of Labor's ("DOL") regulations set forth a "short test" to determine an employee's exempt status. In addition to other exemptions, the regulations exempt from the FLSA any employee who is "employed in a bona fide administrative capacity": that is, whose weekly wage exceeds the applicable statutory threshold, whose primary duty is office or non-manual work directly related to management policies or general business operations of the employer, and which involves the exercise of discretion and independent judgment. 29 U.S.C.S. §201 et seq.; 29 C.F.R. §541.200(a).[3]

It is undisputed that plaintiff's wages satisfy the statutory threshold. Accordingly, whether he was "employed in a bona fide administrative capacity" turns upon whether he performed administrative duties, and exercised discretion and independent judgment.

**1.   Administrative Duties**

At the outset, I note that the DOL's Interpretive Regulations specifically address the rendering of credit decisions, classifying it as exempt, administrative work:

---

[3] It is undisputed that the 2003 regulations control, and the parties have cited to the regulations as they were numbered in 2003. To ensure clarity, the Court has opted to employ the present-day regulations, which include some changes to numbering and sentence structure, but to which no relevant substantive changes have been made.

> A credit manager who makes and administers the credit policy of his employer, establishes credit limits for customers, authorizes the shipment of orders on credit, and makes decisions on whether to exceed credit limits would be performing work exempt under §541.200. Work that is directly and closely related to these exempt duties may include checking the status of accounts to determine whether the credit limit would be exceeded by the shipment of a new order, removing credit reports from the files for analysis, and writing letters giving credit data and experience to other employers or credit agencies.

29 C.F.R. §541.703(b)(7).[4]

Moreover, the DOL has stated that with respect to administrative work in the financial services sector, "[e]mployees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts . . ." 29 C.F.R. §541.203(b).

Here, it is undisputed that plaintiff's duties, and those of other Chase underwriters, included the review of customer financial information concerning requests for loans and lines of credit, including the gathering of any additional required information, and the making of a decision – binding upon Chase – to approve or deny the loan request. As such, plaintiff's primary duty was to evaluate and determine the credit-worthiness of Chase customers, analyzing putative borrowers' financial information in light of Chase's Credit Policy. Plaintiff was, however, empowered to grant

---

[4] The Secretary's legislative regulations interpreting FLSA exemptions are entitled to controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute. *See Freeman v. National Broadcasting Co.*, 80 F.3d 78, 82 (2d Cir. 1996). In addition to legislative regulations, the Secretary has also promulgated interpretive regulations, which although not binding, "are entitled to considerable weight because they constitute a body of experience and informed judgment to which courts may properly resort for guidance." *Burke*, 225 F.Supp. 2d 306 at 317.

variances and exceptions to borrowers who would not otherwise qualify for credit under the Credit Policy, where he determined that a denial of credit would not serve Chase's best interest.

By performing these duties, plaintiff represented Chase's financial interests with respect to those of its clients whom he serviced. Although plaintiff strains to characterize plaintiff's role as one of mere production, "helping to generate credit product after credit product for each customer," it is undisputed that plaintiff was not responsible for developing or "selling" Chase's loan or home equity products to its customers. The crux of plaintiff's duties was the analysis and rendering of individualized decisions which committed Chase to certain financial obligations, not the slavish manufacture of "credit products" on some theoretical assembly line.

I find that plaintiff's duties, which primarily include "collecting and analyzing information regarding the customer's income, assets, investments or debts," making "decisions to exceed or otherwise vary these limits in the case of particular customers," and otherwise upholding Chase's Credit Policy, are clearly "office, non-manual work directly related to management policies or general business operations of the employer," and therefore administrative. 29 C.F.R. §§541.200, 203(b). Indeed, all other courts known to have examined the issue have unanimously concluded that underwriting is an administrative function. *See e.g.*, *Havey v. Homebound Mortgage, Inc.*, 2005 U.S. Dist. LEXIS 27036 (D. Vt. 2005); *Edwards v. Audubon Ins. Group, Inc.*, 2004 U.S. Dist. LEXIS 27562 (S.D. Miss. 2004); *Callahan v. Bancorpsouth Ins. Servs.*, 244 F. Supp. 2d 678, 687 (S.D. Miss. 2002); *Creese v. Washington Mutual Bank*, 2008 Cal. App. Unpub. LEXIS 2060 (Cal. Ct. App. 2008) (unpublished order).

## 2. Exercise of Discretion and Independent Judgment

The final element of the administrative exemption test requires that plaintiff's position include the exercise of discretion and independent judgment. The DOL has specified:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term . . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance . . . The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.

29 C.F.R. §541.202(a), (c).

Plaintiff's authority to bind Chase to extend loans and lines of credit up to $500,000.00 each manifestly relates to "matters of significance" for Chase's business. It is undisputed that plaintiff's decisions over the course of three-plus years involved over two-and-a-half billion dollars in loans, and thus over two-and-a-half billion dollars of potential risk, for Chase. In making those decisions, which were final and binding upon Chase, plaintiff used his independent judgment to assess loan files and evaluate the reasons offered by customers for any discrepancies or "derogatory credit items." Plaintiff had the discretion to require a customer to submit additional information, or else waive the customer's obligation to provide required information. Most significantly, plaintiff exercised the discretion and independent judgment to make the ultimate decision as to whether Chase should extend credit to a customer, including whether variances and/or exceptions to Chase's policies and guidelines should be extended, whether a counteroffer should be made and under what

terms, and what disposition should be recommended to supervisors when forwarding files outside of his lending authority.

While plaintiff appropriately emphasizes that such decisions were made, and required to be made, consistent with Chase's Credit Policy, adherence to instructions does not, by itself, prevent the exercise of discretion and independent judgment within the meaning of the applicable regulations. *See e.g.*, 29 C.F.R. §541.704; *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) (a corporation's issuance of detailed guidelines to employees does not prevent the exercise of discretion and independent judgment, where corporate success is as dependent upon discretion "as adherence to 'the book'"). While it is undisputed that the Credit Policy provided guidelines for the calculation of credit risk scores which influenced the outcome of plaintiff's decision-making to varying degrees, it was not always dispositive, and plaintiff and other witnesses testified via depositions and affidavits that the policy contained gray areas within which underwriters were expected to exercise their own judgment, and that reasonable underwriters applying the Credit Policy could reach different decisions when reviewing the same file. *See e.g.*, Parmar Aff., dated May 17, 2007, at 4; Whalen Dep. 43; Lopa Dep. 72-73; Smith Dep. 15, 92-93; McGraw Dep. 135.[5] In fact, the Credit Policy itself instructs underwriters to make "an informed decision which has been based on an appropriate level of analytical review and the use of a considered objective judgment . . . [t]here will always be situations that fall into gray areas with respect to the underwriting of a final

---

[5] The instant motions have been filed under seal. Due to an ongoing dispute between the parties as to what portions of their submissions should be sealed and/or redacted, Chase's reply to plaintiff's motion for summary judgment has not yet been filed and made part of the public record. There appears to be no dispute that plaintiff was duly served with Chase's reply, and as set forth below, the Court will order the filing and unsealing of the parties' submissions, as appropriate, forthwith.

decision on a file . . . credit risk analysis is perceived as an art; not as a science . . . [T]he underwriter must recognize that it is his/her responsibility to use sound judgment and to seek advice/expertise, when necessary, in making lending decisions." (Shaulson Reply Aff., dated May 17, 2007, Exh. O at §2.5.4, 2.8).

Based on the foregoing, I find that plaintiff's duties included "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered," and therefore involved the exercise of discretion and independent judgment sufficient to render them exempt. 29 C.F.R. §541.202(a).

### 3. Plaintiff's Status During His Training Period

Plaintiff argues that even if plaintiff's duties as an underwriter render him exempt, plaintiff was not exempt with respect to work performed during his initial "training period," because plaintiff did not yet have lending authority, and was empowered only to make recommendations concerning the disposition of loan applications, including whether variances or exceptions should be made. However, the DOL Regulations specify that "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. §541.202(c). It is undisputed that the plaintiff's duty to exercise discretion and independent judgment as an underwriter was required in equal measure during his training period, regardless of whether he had attained full authority to make decisions that were binding on Chase. As such, I conclude that plaintiff was exempt during that time, as well.

I have examined and considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Dkt. #72) is denied, defendant's cross motion for summary judgment (Dkt. #90) is granted, and the Complaint is dismissed, with prejudice.

As noted above, submissions in the instant motions were filed either under seal, or in some cases, not filed at all, due to disputes between the parties concerning the extent to which they included confidential information. It is well settled that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). As such, within ten (10) days from the entry of this Decision and Order: (1) Chase is ordered to file any and all documents which it submitted to the Court concerning the instant motions which have not been previously filed, and may do so under seal only to the extent that Chase intends to request the continued sealing of portions thereof; and (2) any party that seeks the continued sealing and/or redaction of any document filed under seal shall notify the Court in writing of those documents or portions of documents for which continued sealing is requested, as well as the "compelling reasons" therefor. Counsel shall then immediately submit to the Court a joint consent Order unsealing any document or portion of a document for which continued sealing has not been requested, and the Court will determine whether sufficient legal justification has been provided for the continued sealing of any document or portion of a document.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 6, 2008.