UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL J. DAVIS, ELENA LOMBARDO,
CAROL SMITH, ANDREW WHALEN
*and all others similarly situated,*

                      *Plaintiffs*,

                  *versus*

JPMORGAN CHASE & CO.,
JPMORGAN CHASE BANK,
CHASE MANHATTAN MORTGAGE
CORPORATION,

                      *Defendants*.

Civil Action No.
01-CV-6492L

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR EXPEDITED NOTICE
TO AFFECTED EMPLOYEES

THOMAS & SOLOMON LLP
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

Of Counsel: J. Nelson Thomas

## PRELIMINARY STATEMENT

Plaintiffs seek conditional certification under the Fair Labor Standards Act ("FLSA") of a class of employees consisting of defendants' current and former employees whose primary job duty related to approving loans, evaluating whether to issue loans to individual loan applicants and/or evaluating loan applications under credit guides and approving loans if they meet standards and who were classified as exempt by defendants.[1]  Given that the statute of limitations continues to run on these claims every day until an employee opts in, it is imperative that notice be provided as quickly as possible.  *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (Sotomayor, J.).

As this Court is aware, certification in FLSA cases typically follows a two-stage approach.[2]  To succeed at the first stage, which is presently before the Court here, plaintiffs must only meet the lenient burden of demonstrating that employees are similarly situated. *See Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (Larimer, J.); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224, 229 (W.D.N.Y. 2006) (Feldman, M.J.) *aff'd* 2006 WL 3373117 (W.D.N.Y. Nov. 3, 2006) (Siragusa, J.).

Here the evidence far surpasses that which is required for notice.  To start, the Second Circuit has held that as a matter of law these employees should have been paid overtime when they worked over 40 hours in a week.  In other words, the Court has held that all

---

[1] For purposes of this motion, plaintiffs refer to employees who perform any of these functions as "underwriters" although defendants used many different job titles in addition to Underwriter for employees performing these functions, just a few examples being Jr. Underwriter, Senior Underwriter, Mortgage Underwriter, Home Equity Mortgage Underwriter, QA Underwriting Analyst, Credit Analyst, Jr. Credit Analyst, Commercial Credit Analyst, Closer/Funder, Underwriting Supervisor, and Senior Account Manager.

[2] Typically, motions for FLSA conditional certification are decided by the magistrate judge if one has been assigned to the case.  For example, Judge Feldman decided plaintiffs' motion for class certification in *Barrus, et al. v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224 (W.D.N.Y. 2006) (Feldman, M.J.) (granting nationwide conditional certification).

employees in the class have a common claim against defendants for overtime compensation. In addition, the Second Circuit's factual findings underscore the similarity in the job duties of all employees in the class.

Therefore, plaintiffs far exceed the minimal burden on this motion for simply providing employees with an opportunity to protect their rights and join this case.

## FACTUAL BACKGROUND

This motion reaches the Court after a lengthy history. As the Court is aware, after the case was initially filed, the parties agreed to a "test case" approach, whereby they agreed to litigate the claims of Andrew Whalen, one of the opt-in plaintiffs, to resolve the legal issue of whether class members' jobs were "administratively" exempt under the FLSA.[3]

The plaintiffs prevailed in their test case. The Second Circuit held such employees could never be exempt as administrative employees. The Court described the job duties of underwriters as evaluating "whether to issue loans to individual loan applicants" provided by Chase. *See Davis v. J.P. Morgan Chase Bank*, 587 F.3d 529, 530 (2d Cir. 2009).

Ultimately, the Second Circuit held that Chase underwriters do not fall within the administrative exemption under the FLSA but rather engage in production work:

> We conclude that the job of an underwriter as it was performed at Chase falls under the category of production rather than of administrative work. Underwriters at Chase performed work that was primarily functional rather than conceptual. They were not at the heart of the company's business operations. They had no involvement in

---

[3]   During the course of the test case litigation, the claims of all potential class members in the case have been protected through a toll on the statute of limitations pursuant to an agreement between the parties. *See* Docket No. 31. The tolling agreement remained in effect until plaintiffs re-filed their First (now Fourth) Amended Complaint, which was filed just prior to the filing of this motion. Because the statute of limitations has begun to run on employees' claims again, it is essential that employees receive notice of this case as quickly as possible so that they can decide whether to opt into this case and protect their rights.

> determining the future strategy or direction of the business, nor did they perform any other function that in any way related to the business's overall efficiency or mode of operation. It is undisputed that the underwriters played no role in the establishment of Chase's credit policy. Rather, they were trained only to apply the credit policy as they found it, as it was articulated to them through the detailed Credit Guide.
>
> Furthermore, we have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business. In *Reich*, for example, BCI Investigators "produced" law enforcement investigations. By contrast, administrative functions such as management of employees through a human resources department or supervising a business's internal financial activities through the accounting department are functions that must be performed no matter what the business produces. For this reason, the fact that Whalen assessed creditworthiness is not enough to determine whether his job was administrative. The context of the job matters: a clothing store accountant deciding whether to issue a credit card to a consumer performs a support function auxiliary to the department store's primary function selling clothes. An underwriter for Chase, by contrast, is directly engaged in creating the "goods" – loans and other financial services – produced and sold by Chase.

*See id.* at 535. Accordingly, all employees engaged in the process of analyzing loan applications are entitled to overtime compensation at the statutorily required premium rate for all hours worked over 40 each week.

ARGUMENT

I.   THE COURT'S ROLE IN NOTIFYING EMPLOYEES OF THEIR RIGHT TO OPT-IN TO THIS LAWSUIT.

    A.   **Expedited Notice Is Required Under the FLSA.**

When the FLSA was enacted in the 1930s, Rule 23 did not exist. Congress, however, thought it was important to create a mechanism by which employees who alleged violations under the FLSA could have their claims adjudicated in one lawsuit. Therefore, the FLSA

created a precursor of Rule 23 with its "collective action" provision. 29 U.S.C. § 216(b). Under the FLSA the employee must affirmatively "opt-in" to the lawsuit, but once she does so, her case is part of the class-wide allegations in the lawsuit.[9]

It is important that employees be notified of their rights to participate in a FLSA collective action. First, the Second Circuit has long held that the interests of both the parties and the courts are best served if plaintiffs' FLSA claims are heard in one lawsuit. *Braunstein v. Eastern Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1979) ("We believe that Judge Daly took the proper course in authorizing notice to other potential plaintiffs in this action under the FLSA....[T]his holding comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding the multiplicity of suits.").

The Supreme Court adopted the views of the Second Circuit and encouraged the use of notice as being in the best interests of the parties involved. *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989) ("[a] collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and serves the equally important judicial interest of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."). This Court wrote,

> A collective action allows…plaintiffs to take advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity…. Notice plays an important role in facilitating a collective action and further [the statute's] remedial purposes.

---

[9] Age discrimination claims brought under the Age Discrimination in Employment Act (ADEA) are subject to the same opt-in mechanism under the FLSA. *Hoffman-LaRoche, Inc.*, 493 U.S. at 168.

- 4 -

*Rehwaldt v. Elec. Data Systems Corp.*, No. 95-876, 1996 WL 947568, at *3 (W.D.N.Y. March 28, 1996) (citing *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995)).

Second, expedited notice is required because of the FLSA's statute of limitations. The statute of limitations covers the last three (or two) years of the plaintiff's paychecks. Therefore, an injured employee loses forever her right to recover on illegal paychecks more than three years old. As then-District Judge Sotomayor explained, expedited notice is essential because an injured employee's claims "die daily" if they do not opt-in the lawsuit. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Certainly defendant has every incentive to delay the matter.

    **B.**    **Notice Is Required Once Plaintiffs Present "Modest" Allegations of Other Similarly Situated Employees**.

If there are potentially "similarly situated" employees, class-wide notice is appropriate. *Hoffman-LaRoche, Inc.*, 493 U.S. at 168-69. Perhaps because of the importance of expedited notice, the requirements to demonstrate the existence of possibly "similarly situated" employees are minimal. *Brychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-308 (S.D.N.Y. 1998) (Sotomayor, J.); *Hoffman*, 982 F. Supp. At 249; *Rehwaldt*, 1996 WL 947568, at *5; *Jackson*, 163 F.R.D. at 429; *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Palmer v. Reader's Digest Association, Inc.*, No. 84-8397, 1986 WL 324 (S.D.N.Y. Feb. 11, 1986); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981). Courts, including this Court, hold that notice in FLSA collective actions is appropriate under standards far more lenient than those under Rule 23. *Hoffman*, 982 F. Supp. at 263 (Sotomayor, J.) ("[T]he prevailing view

among federal courts, including courts in this Circuit, is that [FLSA] collective actions are *not* subject to Rule 23's strict requirement, particularly at the notice stage."); *Schwed v. Gen. Elec.*, No. 94-1308, 1997 WL 204394, at *3 (N.D.N.Y. April 11, 1997); *Rehwaldt*, 1996 WL 947568, at *3 (citing with approva*l Jackson*, 163 F.R.D. at 431 and *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, *2 (S.D.N.Y.)).

This Court has held that notice should be sent if the plaintiffs merely allege that there are other employees who were also not paid overtime. *Rehwaldt*, 1996 WL 947568, at *4 (notice to be sent "based on little more than the plaintiff's allegations") (citing with approval *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y. 1981)). Other courts in this Circuit have reached the same conclusion. Courts have noted that plaintiffs must, at most, make "substantial allegations;" or "describe the potential class within reasonable limits;" or allege that other plaintiffs are "purportedly subject" to a common scheme to deprive them of overtime; or assert "at least a colorable claim;" or make a "modest factual showing;" or present "some factual basis;" or "indicate" there is a class-wide basis for relief. *Jackson*, 163 F.R.D. at 431; *Schwed*, 159 F.R.D. at 375-76; *Hoffman*, 982 F. Supp. At 261 (Sotomayor, J.); *Realite*, 7 F. Supp.2d at 307 (Sotomayor, J.). As this Court has held, the allegations need neither be "strong or conclusive" for notice to be sent. *Rehwaldt*, 1996 WL 947568, at *4 ("plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subject to a common discriminatory scheme") (citing *Jackson*, 163 F.R.D. at 431-32; *Hoffman*, 982 F. Supp. at 261 (Sotomayor, J.) ("The burden on plaintiffs is not a stringent one.")).

Courts identify two reasons for this low standard. First, under well-established Second Circuit and Supreme Court precedent, the FLSA is to be read broadly and liberally to effectuate its remedial purpose. *Hoffman*, 982 F. Supp. at 261 (Sotomayor, J.); *Rehwaldt*, 1996 WL 947568, at *4 (W.D.N.Y); *Braunstein*, 600 F.2d at 336.

Second, and perhaps more importantly, class-wide notice is wise, even if the claims have no merit, or even if the plaintiffs will be placed into subclasses. This Court cited with approval the following holding in *Jackson v. New York Telephone Company*:

> *The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted….* [E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable a more efficient resolution of the underlying issues in this case…. These benefits, however, depend on employees receiving accurate and timely notice.

*Rehwaldt*, 1996 WL 947568, at *3 (emphasis in original). Discovery can also be conducted more efficiently if the notice is sent early, regardless of the potential merits of the claim or ultimate merits of the claim. As cited by this Court,

> Defendants' argument [against pre-discovery notice] is that the "plaintiffs' claims may be shown in the crucible of discovery to be weak, if not meritless," in which case no notice should be sent. The answer is that the experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of plaintiffs' own claims; and the notice machinery contemplated by the [statute], by reaching out to potential plaintiffs, may further the statute's remedial purpose.

*Rehwaldt*, 1996 WL 947568, at *5 (citing *Frank*, 88 F.R.D. at 676; *Realite*, 7 F. Supp.2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated…. I may later decertify the class, or divide the class into subgroups…. However, at this early juncture … principles of efficiency and judicial

economy militate in favor of maintaining this action as a collective one, and waiting to see what the fact bear out.")).

Thus, in making the determination to send out notice, the court does not examine the underlying merits of the action. *Rehwaldt*, 1996 WL 947568, at *5 (citing *Frank*, 88 F.R.D. at 676; *Realite*, 7 F. Supp.2d at 308 (Sotomayor, J.); *Jackson*, 163 F.R.D. at 431.)). Nor does the fact that the notified employees may or may not ultimately be found to be similarly situated, make any difference at the notification stage. *Id*.

Nor do the employment situations or claims of the notified employees need to be the same. Courts send out notice to employees allegedly affected by the same policy regardless of their job titles, location within the company, or reporting relationships: "Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations." *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). A "finding of similarly situated does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all." *Abrams v. Gen. Elec. Co.*, No. 95-1734, 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996); *Jackson*, 163 F.R.D. at 432. Even if all the named plaintiffs were employed by the same department, as long as the plaintiffs allege the same policy effected other employees elsewhere, notice to employees in the corporation's other units and operations is warranted. *Schwed*, 159 F.R.D. at 377. *Hoffman*, 982 F. Supp. at 264 (Sotomayor, J.) (notice appropriate to all current and former managers and co-managers, or persons holding equivalent positions, however titled, who worked overtime and were not paid, rejecting defendant's attempts at a narrower range). The plaintiff must simply allege a

factual nexus between the employees and the alleged policy. *Realite*, 7 F. Supp.2d at 308 (Sotomayor, J.) (notice appropriate because affidavits "indicate" same policy was in effect at other locations).

In cases involving misclassification claims, such as those here, courts routinely grant conditional certification. *See Parks v. Dick's Sporting Goods, Inc.*, No. 05-6590, 2007 WL 913927, at *4 (W.D.N.Y. Mar. 23, 2007) (Siragusa, J.) (affirming decision granting notice by Judge Feldman); *DiFilippo v. Barclays Capital, Inc.*, No. 05-4990, 2006 WL 1716860, at *5 (S.D.N.Y. Jun. 20, 2006); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02-5915, 2003 WL 21136308 (S.D.N.Y. May 15, 2003); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1347 (N.D. Ga. 2002); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. Jun. 3, 2000); *Bosley v. Chubb Corp.*, No. 04-4598, 2005 WL 1334565, at *5 (E.D. Pa. Jun. 3, 2005).

As part of the notification process, the defendant is required to immediately (often within 15 days or shorter) turn over the names and last known addresses of the potential opt-ins. *Hoffman-LaRoche, Inc.*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses...."); *Brzychnalski v. UNESCO*, 35 F. Supp.2d 351, 353 (S.D.N.Y. 1999); *Realite*, 7 F. Supp.2d at 309-10 (Sotomayor, J.); *Jackson*, 163 F.R.D. at 432-33; *Rehwaldt*, 1996 WL 947568, at *8; *Schwed*, 159 F.R.D. at 378. Because the information is likely stored on a computer database, to facilitate notice, plaintiff requests the production in both electronic (in a readily readable format) and hard copy format.

C.  **The Evidence Demonstrates Other Employees Are Similarly Situated.**

The plaintiffs in this action readily meet the liberal standard for court-authorized notice.

Indeed, the Second Circuit has described how the class of employees subject to this motion is similarly situated both legally and factually.

As a matter of law, the Second Circuit held that the class of employees subject to this motion are not administrative employees and are therefore entitled to statutory overtime when they work over 40 hours in a week. *See Davis*, 587 F.3d at 535. As a result, all of these employees share a common claim for statutory overtime under the FLSA making them similarly situated and they should therefore receive notice.

This decision resolved the exact common legal questions for which the parties designed this "test case." The Second Circuit has now provided an answer as to whether class members' rights were violated. Having failed this test of their own choosing, the defendants can hardly argue that class members should be kept in the dark about their rights.

Because the plaintiffs were all subject to defendants' policy which deprived them of compensation for hours worked over 40 in a week, and had similar job duties, they should be provided with notice and given an opportunity to join this case.

II.  **PLAINTIFFS' PROPOSED COURT-AUTHORIZED NOTICE**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. 165, 170. The court-authorized notice prevents "misleading communications," such as is often unilaterally

disseminated by defendants. *Id*. at 171. Plaintiffs' proposed notice meets these criteria. It provides notice of the pending action and opportunity to opt-in. *See* Affirmation of J. Nelson Thomas ("Thomas Aff."), sworn to April 8, 2010, Ex. A.

Plaintiffs' counsel modeled their proposed notice heavily on the examples provided on the Federal Judicial Center's ("FJC") website, found at (http://www.fjc.gov/public/home.nsf). The FJC is the education and research agency for the federal courts which was established by Congress in 1967, on the recommendation of the Judicial Conference of the United States. *See* Thomas Aff., Ex. B. The FJC was requested to develop illustrative notices of proposed class action certifications and settlements by the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules. In order to develop its illustrative notices, the FJC engaged in a careful study of the use of plain language in legal documents. *See* Thomas Aff., Ex. B. After obtaining recommendations from a lawyer with a Ph.D. in linguistics and using multiple rounds of focus groups, testing and re-drafting to refine the notice to provide maximum comprehension for individuals reading the notice, the FJC finally posted, and re-posted, its illustrative notices for use by courts and attorneys. *See* Thomas Aff., Ex. C (FJC Employment Discrimination Class Action-Full Notice). As a result of this comprehensive research and analysis, the FJC's illustrative notices are the recognized leading models for notice in class actions. *Pierce v. Novastar Mortgage, Inc.,* No. 05-5835, 2007 WL 505670, at *3 (W.D. Wash. Feb. 12, 2007); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207 (D.N.J. 2005); *Rivera-Feliciano, et al. v. Acevedo-Vila*, No. 05-1910, 2005 WL 2170881 (D.P.R. Sept. 7, 2005); *Grider v. Keystone Health Plan Cent., Inc.*, No. 2001-05641, 2006 WL 3825178 (E.D. Pa. Dec. 20, 2006); *In re Educ. Testing Serv. Praxis Principles of*

*Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006); *Martsolf v. JBC Legal Group, P.C.*, No. Civ. A. 04-1346, 2005 WL 331544 (M.D. Pa. Feb. 7, 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y. 2003); *Allstate Fin. Corp. v. Bristol Meyers Squibb Co.*, No. 96-1785, 1997 WL 728237 (S.D.N.Y. Nov. 20, 1997); *Bafus v. Aspen Realty, Inc.*, No. 04-121, 2007 WL 793633 (D. Idaho Mar. 14, 2007); *In re Serzone Products Liability Litigation*, 231 F.R.D. 221 (S.D.W.Va. 2005).

Plaintiffs' notice follows the content and form of the FJC models, including an introductory page that quickly informs class members about the case and how they are affected and detailed information separated by headings. *See* Thomas Aff., Ex. A. Overall, plaintiffs' proposed notice is easy to read and written in plain English, informing class members of their rights and how they can elect to participate in the action. The notice also describes the legal effect of joining the suit; describes the legal effect of not joining the suit; notes that the Court expresses no opinion regarding the merits of plaintiffs' claims or defendants' liability; and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Plaintiffs propose that the notice and consent forms be mailed first-class to all of defendants' employees within the class definition. To facilitate this notice, the Court should also order defendant to disclose the names and addresses of all potential plaintiffs.

Because the statute of limitations is daily destroying the injured employees' ability to collect damages, plaintiffs also request that defendants internally post the notice prominently wherever other work-related notices are posted, print the notice in five circulations of the

company's newsletter and e-mail notices to employees. Courts have long required that notice be posted at company facilities, in addition to being mailed to employees' homes as well as ordering notice to be emailed to employees. *See, e.g., Cranney v. Carriage Servs., Inc.*, No. 07-1587, 2008 WL 608639, at *5 (ordering notice to be posted in defendants' locations, emailed to employees, publicized in employee newsletter as well as mailed to employees); *Collozzi*, 595 F. Supp. 2d 200, 212 (ordering notice to "be posted by the defendants conspicuously in approved areas where other labor and related notices are typically posted"); *Fengler*, 595 F. Supp. 2d 189, 200 (ordering notice to "be posted by the defendants conspicuously in approved areas where other labor and related notices are typically posted"); *Hamelin*, 2009 WL 211512, at *11 (ordering notice to "be posted by the defendants conspicuously in approved areas where other labor and related notices are typically posted"); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (first class mail and posting at workplaces constituted "'best notice practicable'" to the class); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 964 (N.D. Tex. 1982) (notice ordered to be posted on employee bulletin boards at defendant's flight bases); *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 216 (D. Mass. 2001)(requiring the provision of employee's e-mail address).

Plaintiffs have also requested the last four digits of employees' social security numbers. Courts regularly authorize the production of social security numbers in litigation, especially in the context of employment actions. *See Gieseke v. First Horizon Home Loan Corp.*, No. 04-2511, 2007 WL 445202 (D. Kan. Feb. 7, 2007); *Rincon v. B.P. Sec. & Investigations, Inc.*, No. 06-538, 2006 WL 3759872, at *3 (S.D. Tex. Dec. 19, 2006); *Rees v. Souza's Milk Transp., Co.*, No. 05-00297, 2006 WL 3251829, at *1 (E.D. Cal. Nov. 8, 2006).

The specific reason for this request is to aid plaintiffs' counsel in locating current and accurate addresses for putative plaintiffs when that the court notice sent to them is returned as undeliverable. *See* Affirmation of Sylvia M. Kraus-Lewicka, sworn to April 8, 2010 ("Kraus Aff."), ¶ 4. These notices are returned undeliverable to plaintiffs' counsel for multiple reasons, including putative plaintiffs who have moved, plaintiffs who have changed their name, etc. *See* Kraus Aff. ¶ 5. In plaintiffs' counsel's experience, proper contact information for putative plaintiffs often cannot be located without this vital piece of information. *See* Kraus Aff. ¶ 6.

Plaintiffs' counsel does not dispute the sensitive nature of the social security numbers and will take all necessary precautions to ensure the privacy of this confidential information. *See* Kraus Aff. ¶ 7. First, requesting only the last four digits of the social security number as opposed to the entire social security number will help protect privacy interests. *See* Kraus Aff. ¶ 8. Second, plaintiffs' counsel will only use the last four digits of the social security number for the limited purpose of locating current addresses for putative plaintiffs so that they are given an opportunity to review this Court's notice. *See* Kraus Aff. ¶ 9. Finally, plaintiffs' counsel will destroy the last four digits of putative class members' social security numbers once the Court-ordered notices have been sent. *See* Kraus Aff. ¶ 10. Because class members' social security numbers will be protected and only used for a limited purpose, potential privacy concerns are outweighed by the need to provide notice to potential class members. *See* Kraus Aff. ¶ 11.

Plaintiffs' counsel can also take steps in addition to the court-approved notice to inform plaintiffs of their rights. For instance, counsel may send additional written notices to

affected employees, provided the written communication is accurate and not misleading. *See Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988); *Gulf Oil Co. v. Bernard* 452 U.S. 89 (1981). To ascertain the facts and gather evidence, plaintiffs' counsel may initiate phone contact with potential witnesses, provided those individuals are not represented by counsel. These measures are important, and plaintiffs' counsel will utilize them as needed. However, as courts have repeatedly held, the best way to insure that employees' rights do not continue to "die daily" is for this Court to approve the notice proposed by plaintiffs; order its expedited dissemination; and forbid any future retaliation.

As set forth above, this case requires immediate and effective FLSA notification. Defendants have every reason to delay this process in any way possible – every day that goes by removes large amounts of liability from their books. Therefore, every effort must be made to stop the valid claims of defendants' employees from continuing to "die daily."

Therefore, it is appropriate to send notice to all potentially affected employees.

### III.   APPOINTMENT OF CLASS COUNSEL.

Plaintiffs respectfully request that the law firm of Thomas & Solomon LLP ("TS") be appointed class counsel in this matter. Courts appoint class counsel in FLSA cases, and in fact, TS is currently serving as appointed class counsel in two wage and hour suits. *See Kuznyetsov*, 2009 WL 1515175, at *7; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, Civ. No. 09-85J, 2009 WL 3032590 (W.D. Pa. Sept. 17, 2009) ("Implicit in [the *Kuznyetsov*] ruling [appointing TS as class counsel] was Judge Ambrose's conclusion that Plaintiffs' counsel were qualified and could appropriately represent the plaintiffs in the conditionally certified collective action…[t]he Court finds the same here.").

TS should be appointed class counsel in this case for several reasons. First, TS has both identified the claims in this case and thoroughly investigated and litigated those claims – including obtaining a favorable ruling from the Second Circuit on liability. Further, through its investigation, TS discovered the illegal policies at issue and the millions of dollars of wages being denied to defendants' employees.

Second, TS focuses its practice on employment law, and is currently litigating a number of lawsuits against large employers around the country for wage and hour violations, in addition to other complex employment litigation, and has resolved a number of such cases in the past. *See, e.g.*, *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 1361265 (W.D. Pa. May 14, 2009); *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 09-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009); *Hinterberger v. Catholic Health Sys.*, No. 08-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009); *Gordon v. Kaleida Health*; No. 08-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009); *Hamelin v. Faxton-St. Luke's Healthcare*, No.08-1219, 2009 WL 211512 (N.D.N.Y. Jan. 26, 2009); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009); *Cranney*, 2008 WL 608639; *Parks v. Dick's Sporting Goods, Inc.*, No. 05-6590, 2007 WL 913927 (W.D.N.Y. Mar. 23, 2007); *Barrus*, 465 F. Supp. 2d 224; *Mendez v. Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005); *see generally Prise v. Alderwoods Group, Inc.*, No. 06-1641 (W.D. Pa.); *Stickle v. SCI Western Market Support Ctr., L.P.*, No. 08-83 (D. Az.); *Rubery v. Buth-Na-Bodhaige, Inc.*, No. 04-6337 (W.D.N.Y.); *Poletta v. JP Morgan Chase & Co.*, No. 06-6237 (W.D.N.Y.); *Tracy v. NVR, Inc.*, No. 04-6541 (W.D.N.Y.).

Third, TS is well-versed in wage and hour law. As noted by this Court, "[TS] is experienced in class action lawsuits, having participated in similar actions in the past. Further, counsel has extensive experience in employment litigation, and particular expertise with the FLSA." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). In addition to prosecuting a large number of wage and hour cases both presently and in the past, TS's lawyers are also recognized leaders on the subject, serving on committees and lecturing on the subject to various groups. For example, Nelson Thomas, one of the firm's founding partners, and counsel on this case, currently sits on the American Bar Association's editorial board for the Fair Labor Standards Act treatise. *See* Thomas Aff., ¶ 11. Further, Mr. Thomas is a recognized speaker nationally on class actions, for example, recently chairing an annual national conference of prominent defense and plaintiffs' attorneys sponsored by the American Conference Institute on wage and hour class actions. *See* Thomas Aff., ¶ 12. He was also recently asked to speak on wage and hour class actions by the New York section of the National Employment Lawyer's Association on the white collar exemptions under the FLSA. *See* Thomas Aff., ¶ 12.

Fourth, the appointment of class counsel provides important benefits to the Court and defendants as well as to the plaintiffs and class members. Such appointment formally identifies one firm as the centralized clearinghouse for all matters related to the pending litigation, including the organized and accurate dissemination of information and advice. Additionally, the use of that firm to handle class issues assists in making the class discovery process manageable. It is hard to envision having multiple firms handling the identical class issues whether at discovery or at trial. Further, it prevents defense counsel from striking

sweetheart deals with the least capable plaintiffs' counsel. As such, as implicitly recognized in *Camesi* and *Kuznyetsov* the appointment of class counsel sets the groundwork for efficient and organized litigation—a result that is in the interest of all those involved in this litigation.

Last, TS is committed to litigating this case to conclusion and will dedicate the resources necessary to vindicate the rights of the class members.

Thus, TS should be appointed class counsel in this case.

## CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court issue an Order:

1. requiring the issuance of an expedited notice as set forth in Exhibit A attached to the affirmation of J. Nelson Thomas, to current and former employees who are or were involved with approving loans, evaluating whether to issue loans to individual loan applicants and/or evaluating loan applications under credit guides and approving loans if they meet standards and who were classified as exempt by defendants;

2. requiring the provision to plaintiff's counsel of a list both electronically (in an Excel spreadsheet) and by hard copy, with each item of the employee's name, current or last known address, phone number, social security number, location of employment, dates of employment, date of birth and e-mail address designated as a separate field, of all individuals who meet the above class description, within 15 days of the issuance of the order;

3. requiring defendants to post notices and opt-in forms in a conspicuous place (such as break rooms or other such locations) at defendants' locations where employees can see such notices during the pendency of the lawsuit;

4. requiring defendants to e-mail such notices and opt-in forms to employees;

5. requiring defendants to publicize such notice five times in defendants' employee newsletter or other employee communications;

6. appointing Thomas & Solomon LLP as Class Counsel; and

7. for such other relief as this Court deems just and proper.

Dated: April 8, 2010

                                         **THOMAS & SOLOMON LLP**

                    By:    s/ J. Nelson Thomas
                           J. Nelson Thomas, Esq.
                           *Attorneys for Plaintiffs*
                           693 East Avenue
                           Rochester, New York 14607
                           Telephone:  (585) 272-0540
                           Facsimile: (585) 272-0574
                           nthomas@theemploymentattorneys.com