EXHIBIT A

J. NELSON THOMAS
PATRICK SOLOMON
MICHAEL LINGLE
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY  14607
Telephone: 585/272-0540
Facsimile:  585/272-0574

Class Counsel

SAM S. SHAULSON
CARRIE A. GONELL
MORGAN LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY  10178
Telephone:  212/309-6000
Facsimile:  212/309-6001

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL J. DAVIS, et al., | ) | |
| | ) | Case No. 01-CV-6492L |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **JOINT STIPULATION AND** |
| JPMORGAN CHASE & CO., JPMORGAN | ) | **SETTLEMENT AGREEMENT** |
| CHASE BANK, and CHASE MANHATTAN | ) | |
| MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

IT IS HEREBY STIPULATED AND AGREED by and between MICHAEL J. DAVIS, ELENA LOMBARDO, CAROL SMITH, and ANDREW WHALEN (as "Class Representatives"), on behalf of themselves and all others similarly situated, on the one hand, and JPMORGAN CHASE, as defined herein at section 1.15, on the other hand, hereinafter all referred to jointly as "Settling Parties," as set forth below:

## I.      THE CONDITIONAL NATURE OF THIS STIPULATION

This Stipulation and Settlement Agreement and all associated exhibits and attachments (herein "Stipulation") are made for the sole purpose of settling the Litigation on a collective and class-wide basis.  This Stipulation and the settlement it evidences is made in compromise of disputed claims.  Because this action was pled as a class action, this settlement must receive preliminary and final approval by the Court.  Accordingly, the Parties enter into this Stipulation and associated settlement on a conditional basis.  In the event that the Court does not enter the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in sections I, IV, 2.12.4, 2.12.5 and those provisions relating to the return of documents and discovery set forth in section 2.13) shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation of the Stipulation shall remain confidential and the terms and entry of the Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, and any other analogous rules of evidence that are applicable.

JPMorgan Chase denies all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief as well as the collective and class allegations asserted in the Litigation, as that term is defined in section 1.19.  JPMorgan Chase has agreed to resolve the Litigation via this Stipulation, but to the extent this Stipulation is deemed void or the Effective Date does not occur, JPMorgan Chase does not waive, but rather expressly reserves, all rights to challenge all such claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class and collective action treatment on any grounds, to raise federal law preemption of the asserted claims, as well as asserting any and all other potential

defenses or privileges.  The Class Representatives and Class Counsel agree that JPMorgan Chase retains and reserves these rights and they agree not to take a position to the contrary; specifically the Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument that based on this Stipulation, JPMorgan Chase could not contest class certification or collective action certification on any grounds, raise federal law preemption of asserted claims, or assert any and all other potential defenses and privileges if this Litigation were to proceed.

## II.      THE PARTIES TO THIS STIPULATION

This Stipulation (with the associated exhibits) is made and entered into by and among the following Settling Parties:  (i) the Class Representatives (on behalf of themselves and each of the Settlement Class Members), with the assistance of Class Counsel; and (ii) JPMorgan Chase, with the assistance of its counsel of choice.

## III.      THE LITIGATION

On October 4, 2001, the Class Representatives commenced a proposed class and collective action in the United States District Court for the Western District of New York, Civil Action No. 01-CV-6492L ("*Davis* action").  On or about April 8, 2010, the Class Representatives filed a Fourth Amended Complaint in the *Davis* action.  On or about March 18, 2010, Elizabeth Anne Ebert commenced a proposed collective action under the FLSA against JPMorgan Chase in the United States District Court for the Southern District of Texas.  Ebert, et al. v. J.P. Morgan Chase & Co., H-10-894 (S.D. Tex. 2010) ("*Ebert* action").  On or about March 29, 2010, Gayla Pickle commenced a proposed collective action under the FLSA against JPMorgan Chase in the United States District Court for the Southern District of New York.  Pickle, et al. v. J.P. Morgan Chase & Co., 10-CV-02791 (RJS) (S.D.N.Y. 2010) ("*Pickle* action").  On or about May 10, 2010, Cynthia Cole, Darin Takahashi, and Sally Helmken commenced a proposed collective action under the FLSA and class action under California law against JPMorgan Chase, and Georgia Schroeder commenced an individual action under the FLSA against JPMorgan Chase in the United States District Court for the Central District of California.  Cole, et al. v. J.P. Morgan Chase & Co., CV 10-00632 (C.D. Cal. 2010) ("*Cole* action").

Upon execution of this Stipulation, the Class Representatives will file a fifth amended class and collective action complaint in the United States District Court for the Western District of New York ("Fifth Amended Complaint" or "Amended Action"), in the *Davis* action.  A copy of the Fifth Amended Complaint is attached as Exhibit 1.  Class Representatives have alleged original federal court jurisdiction on the basis of federal question jurisdiction with respect to their Fair Labor Standards Act claims and Class Action Fairness Act ("CAFA") diversity jurisdiction and supplemental jurisdiction with respect to their state law claims.  *See* 28 U.S.C. §§1331-32, 1367.

The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims and Released Federal Law Claims upon and subject to the terms and conditions hereof, including but not limited to, Released State Law Claims and Released Federal Law Claims asserted in the Litigation.  JPMorgan Chase retains the right to void the Stipulation if any of the claims covered by this settlement and Stipulation, including without limitation, the Released State Law Claims, the Released Federal Law Claims, and the Class Representatives' Released Claims, are not extinguished as of the Effective Date.  In addition, the Settling Parties agree that the stipulation filed under seal in the *Davis* action on or about December 18, 2002, shall be void and shall have no further application to any individuals as of the Effective Date; provided, however, that the confidentiality provisions therein shall continue to be in effect with respect to Class Representatives and Class Counsel.

## IV.    DEFENDANTS' DENIAL OF WRONGDOING OR LIABILITY

JPMorgan Chase specifically and generally denies all of the claims asserted in the Fifth Amended Complaint and the Litigation, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Fifth Amended Complaint or the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  JPMorgan Chase maintains that all of its employees in Covered Positions are and always have been properly classified as exempt employees, and that, for any purpose other than settlement, the Fifth Amended Complaint and the Litigation are not suitable or appropriate for class or collective action treatment pursuant to either Federal Rule of Civil Procedure 23 or 29 U.S.C. §216(b).  Nonetheless, JPMorgan Chase has concluded that further conduct of the Litigation would

- 3 -

be protracted, distracting and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.   JPMorgan Chase has also taken into account the uncertainty and risks inherent in any litigation.   JPMorgan Chase has therefore determined that it is desirable and beneficial to it to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## V.   CLAIMS OF THE CLASS REPRESENTATIVES AND BENEFITS OF SETTLEMENT

The Class Representatives and Class Counsel believe that the claims asserted in the Litigation have merit and that evidence developed to date supports the claims.   However, the Class Representatives and Class Counsel recognize and acknowledge the expense and length of time of the type of continued proceedings necessary to prosecute the Litigation against JPMorgan Chase through trial and through appeals.   The Class Representatives and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in all litigation.   Based upon their evaluation, the Class Representatives and Class Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Class Representatives and the Settlement Class.

## VI.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representatives (for themselves and the Settlement Class Members) and JPMorgan Chase, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Class Members, the Litigation and the Class Representatives' Released Claims, Released State Law Claims and Released Federal Law Claims shall be finally and fully compromised, settled, and released, and the Litigation, including but not limited to JPMorgan Chase's counterclaims in the Litigation, shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation and the Judgment.

1.   _Definitions._

As used in all parts of this Stipulation, the following terms have the meanings specified below:

1.1     "Administrative Costs" means the amount set aside for the Claims Administration Account as provided in section 2.10.1 of this Stipulation; the maximum amount available to Class Counsel in the form of attorneys' fees; the maximum amount available to Class Counsel in the form of costs; the maximum amount to be paid as individual Enhancements to the Class Representatives; the amount to be paid to the California Labor and Workforce Development Agency as set forth in section 2.2.6; the amount to be set aside for the Reserve; and any and all other costs in connection with consummating the terms of this Stipulation, including the costs of all notices set forth in section 2.5 and its subsections.

1.2     "Allocation" means the form of distribution of the Net Settlement Amount to the Class, which shall be developed as provided in section 2.2.2 of this Stipulation.

1.3     "Claims Administrator" means the third-party claims administration firm of Rust Consulting, Inc. or another administrator mutually agreed to by the Parties.

1.4     "Class" means the group of individuals employed by JPMorgan Chase in Covered Positions during the Class Period, or the estates of such individuals.  The Class does not include any Persons who were never employed by JPMorgan Chase in Covered Positions during the Class Period.

1.5     "Class Counsel" means the law firm of Thomas & Solomon LLP.

1.6     "Class Member" or "Member of the Class" means a Person who is a member of the Class.

1.7     "Class Period" means the period during which the Class Member was employed by JPMorgan Chase in a Covered Position either (A) at any time from September 8, 1999 through the Preliminary Approval Date in any state other than New York, or (B) at any time from September 8, 1996 through the Preliminary Approval Date in New York.

1.8     "Class Representatives" or "the Class Representatives" means Michael J. Davis, Elena Lombardo, Carol Smith, and Andrew Whalen, plaintiffs in the Litigation.

1.9     "Class Representatives' Released Claims" collectively means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the JPMorgan Chase Releasees, of whatever kind and nature, character, and description, whether in law or equity,

whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, including Unknown Claims as defined in section 1.44 hereof, by a Class Representative arising, for each Class Representative, during the period from the beginning of that Class Representative's dates of employment at JPMorgan Chase to the date on which the Court enters the Order of Final Approval for any type of relief, including without limitation, claims for wages, damages, unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any class or collective action relief (except in connection with this settlement and Stipulation).  The Class Representatives' Released Claims include, but are not limited to, claims arising from or dependent upon any and all applicable federal, state, and local laws and regulations including, but not limited to, claims arising from or dependent on the Arizona General Wages Statute, Ariz. Rev. Stat. §§23-350– 362; the Arizona Equal Pay Law, Ariz. Rev. Stat. §§23-340–341; Ariz. Rev. Stat. §23-1501 *et seq.*; the Arizona Civil Rights Act, Ariz. Rev. Stat. §§41-1401 *et seq.*; the New York Minimum Wage Act, N.Y. Lab. Law §650 *et seq.*; Article 6 of the New York Labor Law, §190 *et seq.*; the New York Human Rights Law, N.Y. Exec. Law §290 *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code §8-101 *et seq.*; the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 *et seq.*; the Illinois Equal Wage Act, 820 Ill. Comp. Stat. 110/1 *et seq.*; the Illinois Equal Pay Act of 2003, 820 Ill. Comp. Stat. 112/1 *et seq.;* the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et seq.*; the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat 115/1 *et seq.*; and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat 105/1 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.*; the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*; and all of their implementing regulations.  The Class Representatives' Released Claims also include the waiver of any right to bring, maintain, or participate in a class, collective, or representative action against the JPMorgan Chase Releasees to the maximum extent permitted by law, other than participation in the settlement of this Litigation.

1.10    "Court" means the United States District Court for the Western District of New York.

1.11    "Covered Positions" means, collectively, the following positions covered by this Stipulation:  (i) non-supervisory underwriters, credit analysts and/or other positions whose main job responsibilities are or were to evaluate creditworthiness of Persons for individual loans or lines of credit and/or to decide whether JPMorgan Chase should issue individual loans or lines of credit to Persons, and including those positions with the job titles and job codes in the lines of business identified on Schedule 1, and (ii) which existed at JPMorgan Chase in the United States at any time during the Class Period, and (iii) which is or was treated as exempt from overtime at any time during the Class Period by JPMorgan Chase.  For purposes of this Stipulation, an individual will be considered to be employed in or to have been employed in a Covered Position only for the time period during which the Covered Position was treated as exempt from overtime by JPMorgan Chase.

1.12    "Effective Date" means the date on which the Judgment becomes a Final Judgment.

1.13    "Enhancement" means an amount approved by the Court to be paid to the Class Representatives identified in section 1.8, in addition to their awards as Participating Claimants, in recognition of their efforts in participating in the Litigation as Class Representatives.

1.14    "Final Judgment" means the latest of:  (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment.  Notwithstanding the foregoing, any proceeding or order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees or attorneys' costs shall not, by itself, in any way delay or preclude the Judgment from becoming a Final Judgment.

1.15    "JPMorgan Chase" means, collectively, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., JPMorgan Chase Bank, Banc One Acceptance Corp., Chase Home Finance LLC, Chase Auto Finance Corporation, Chase Bank USA, N.A., Chase BankCard Services, Inc., and Chase Manhattan Mortgage Corporation.

1.16    "JPMorgan Chase Releasees" means JPMorgan Chase, each of its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives.

1.17    "Judgment" means the judgment to be rendered by the Court pursuant to this Stipulation.

1.18    "Last Known Address" or "Last Known Addresses" means the most recently recorded mailing address for a Class Member as such information is contained in JPMorgan Chase's HR databases.

1.19    The "Litigation" or the "Lawsuit" means the *Davis* action, including the claims asserted in the Fifth Amended Complaint.

1.20    "Maximum Settlement Amount" shall mean the maximum amount that JPMorgan Chase shall pay under the terms of this Stipulation, which is the gross sum of $42,000,000.

1.21    "Net Settlement Amount" means the Maximum Settlement Amount less:  (1) the Administrative Costs; and (2) an amount equal to the ((Total Number of Opt-Out Work Months)/(Total Number of Settlement Work Months)) multiplied by the Maximum Settlement Amount, which shall be paid to Chase.

1.22    The "Notice Mailing Deadline" shall be March 18, 2011, subject to section 2.4.4.

1.23    "Notice Regarding Pendency of Class and Collective Action" or "Notice To Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing On Proposed Settlement" or "Class Notice" means a notice (and associated response forms) entitled "Notice To Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing On Proposed Settlement" to be approved by the Court, substantially in the form attached hereto as Exhibit 2.

1.24    The "Notice Response Deadline" shall be May 3, 2011, subject to section 2.4.4.

- 8 -

1.25    "Opt Out" or "Opt Outs" means written and signed requests by Class Members to be excluded from the Settlement Class, which are submitted on the forms, in the manner, and within the time set forth in the Notice Regarding Pendency of Class and Collective Action.

1.26    "Order of Final Approval" or "Order Granting Final Approval of Settlement" shall mean an order to be entered and filed by the Court entitled "Order Determining Good Faith and Granting Final Approval of Settlement."

1.27    "Participating Claimant" or "Participating Claimants" means each Member of the Settlement Class who properly and timely submits a Qualifying Settlement Claim Certification and Consent to Join Settlement Form in response to the Notice Regarding Pendency of Class and Collective Action.

1.28    "Person" means a natural person.

1.29    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.30    "Preliminary Approval Order" means an order to be executed and filed by the Court entitled "Order Granting Preliminary Approval of Class and Collective Action Settlement," substantially in the form attached hereto as Exhibit 3, approving the terms contained in this Agreement, certifying a class and collective action for settlement purposes only as provided in section 2.1.

1.31    A "Qualifying Settlement Claim Certification and Consent to Join Settlement Form" shall mean a Settlement Claim Certification and Consent to Join Settlement Form that is completed, properly executed, and timely returned to the Claims Administrator.

1.32    A "Reasonable Address Verification Measure" shall mean the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, update a mailing address.

1.33    "Released Federal Law Claims" shall collectively mean any and all federal law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against JPMorgan Chase Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including Unknown Claims as

- 9 -

defined in section 1.44 hereof, by a Class Member that accrued on any date up through and including the date on which the Participating Claimant executes the Qualifying Settlement Claim Certification and Consent to Join Settlement Form, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.* for Class Members in Covered Positions, including all such claims that are existing and have been asserted as of the date on which the Participating Claimant executes the Qualifying Settlement Claim Certification and Consent to Join Settlement Form.

      1.34    "Released State Law Claims" shall collectively mean any and all state law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against JPMorgan Chase Releasees, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, statute, or other applicable law, whether known or unknown, and whether anticipated or unanticipated, including Unknown Claims as defined in section 1.44 hereof, by a Class Member that accrued on any date up through and including the Preliminary Approval Date, or, in the case of Class Members who complete, properly execute, and timely return the Settlement Claim Certification and Consent to Join Settlement Form, the date on which the Class Member executes the Settlement Claim Certification and Consent to Join Settlement Form, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, including, without limitation, the following categories of allegations:  (a) any and all claims asserted in the Lawsuit which arose under the law of any state; (b) any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any Class Member in a Covered Position; (c) any and all claims which arose under applicable state laws for failure to timely pay wages, including payment of wages at termination arising out of or relating to the Class Members' work in a Covered Position; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods in a Covered Position; (e) any and all claims under

applicable state laws stemming from or based on the alleged misclassification of employees in Covered Positions as exempt employees, *i.e.*, employees who JPMorgan Chase classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in state law; and (f) all claims for penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (e) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date.  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations, or common law, including without limitation those set forth in the compendium of state specific wage and hour laws set forth in attached Schedule 2, which includes claims under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") on behalf of the State of California.

   1.35  "Reserve" shall mean the sum of $950,000, which amount shall be taken out of the Maximum Settlement Amount and used to pay disputed claims, including but not limited to claims from Class Members who are mistakenly not identified as such by the parties for purposes of the Notice Regarding Pendency of Class and Collective Action, that are accepted in accordance with the provisions of section 2.6.6.

   1.36  "Settlement Claim Certification and Consent to Join Settlement Form" shall mean the form attached as Form B to the Notice Regarding Pendency of Class and Collective Action, in the same or substantially the same form as set forth in Form B attached to Exhibit 2, which a Class Member must submit in order to become a Participating Claimant and recover a payment pursuant to sections 2.2 and 2.7.

   1.37  "Settlement Class" means all of the Class Members who do not opt out of the Settlement Class by submitting Opt Outs pursuant to section 2.6, and thus means all of the Class Members who will become bound by the Released State Law Claims portion of the Judgment if the Effective Date occurs.

   1.38  "Settlement Class Member" or "Member of the Settlement Class" means any Person who is a member of the Settlement Class.

1.39    "Settlement Hearing" or "Fairness and Good Faith Determination Hearing" means a hearing set by the Court to take place during the week of May 23, 2011, subject to section 2.4.4 (or such date as the Court may otherwise establish) for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Stipulation terms and associated settlement pursuant to class action procedures and requirements; (ii) determining the good faith of the Stipulation and associated settlement; and (iii) entering Judgment.

1.40    "Settling Parties" means JPMorgan Chase and the Class Representatives on behalf of themselves and all Members of the Settlement Class.

1.41    "Stipulation" means this agreement, *i.e.*, the Stipulation and Settlement Agreement together with all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.   It is understood and agreed that JPMorgan Chase's obligations for payment under this Stipulation are conditioned on, *inter alia,* the occurrence of the Effective Date.

1.42    "Total Number of Opt Out Work Months" means the total Work Months in a Covered Position for all Opt Outs employed outside of California plus four times the total Work Months in a Covered Position for all Opt Outs employed within California.

1.43    "Total Number of Settlement Work Months" means the total Work Months in a Covered Position for all Members of the Settlement Class employed outside of California plus four times the total Work Months in a Covered Position for all Members of the Settlement Class employed within California.

1.44    "Unknown Claims" means (a) any Released State Law Claims which the Class Representatives or any Settlement Class Member (including all Participating Claimants) does not know or suspect to exist in his or her favor at the time of the time of the release, and which, if known by him or her might have affected his or her decision to settle with and release of the JPMorgan Chase Releasees, or might have affected his or her decision to opt out of the Class or to object to this settlement, and (b) any Released Federal Law Claims which the Class Representatives or any Participating Claimant does not know or suspect to exist in his or her favor at the time of the release, and which, if known by him or her might have affected his or her decision to settle with and

- 12 -

release of the JPMorgan Chase Releasees, or might have affected his or her decision to opt out of the Class or to object to this settlement.  With respect to any and all claims being released, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall have expressly, knowingly, and intentionally waived for themselves and, by operation of the Judgment, each of the Settlement Class Members shall be deemed to have waived the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, likewise waived all such benefits and rights.  The Class Representatives and each Settlement Class Member may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released State Law Claims and Released Federal Law Claims, but Class Representatives and each Settlement Class Member (including all Participating Claimants), upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released State Law Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Likewise, Class Representatives and each Participating Claimant, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Federal Law Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future,

- 13 -

including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representatives acknowledge the significance and consequence of this waiver, and the Settlement Class Members (including Participating Claimants) shall be deemed by operation of the Judgment to have acknowledged the consequence and significance and assume full responsibility for any loss that may be incurred by reason of such waiver. The Class Representatives further acknowledge, and the Settlement Class Members (including Participating Claimants) shall be deemed by operation of the Judgment to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

1.45    "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member, or any other source.

1.46    "Work Months" means the total number of calendar days in which a Class Member was actively employed by JPMorgan Chase in a Covered Position, divided by 365/12, rounded to the nearest whole number.

2.    *The Settlement.*

2.1 *Certification of a Class and Collective Action for Settlement Purposes Only.*

2.1.1    The Parties stipulate, for settlement purposes only, to the certification by the Court of a class as to all claims asserted in the Litigation pursuant to state law, and further stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims asserted in the Litigation pursuant to the FLSA.

2.1.2    If for any reason the Court does not approve this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment, or if this Settlement Agreement and Stipulation is lawfully terminated for any other reason, JPMorgan Chase shall retain the absolute right to dispute the propriety of class certification and collective action certification on all applicable grounds.

- 14 -

2.2 *Consideration to Settlement Class Members.*

   2.2.1  The Net Settlement Amount, the amount set aside for the Claims Administration Account, the amount available to Class Counsel in the form of attorneys' fees, the amount available to Class Counsel in the form of costs, the maximum amount to be paid as individual Enhancements to the Class Representatives, and the amount to be set aside for the Reserve shall be placed by JPMorgan Chase into one or more JPMorgan Chase interest-bearing accounts within thirty (30) days after the Preliminary Approval Date.  If the Court enters the Order of Final Approval and the Effective Date occurs, the interest on the Net Settlement Amount escrow fund will be distributed pro rata to Participating Claimants who submit valid and timely Settlement Claim Certification and Consent to Join Settlement Forms, and the interest applicable to the amount set aside for the Claims Administration Account, the amount available to Class Counsel in the form of attorneys' fees, the amount available to Class Counsel in the form of costs, the maximum amount to be paid as individual Enhancements to the Class Representatives, and the amount to be set aside for the Reserve shall increase the foregoing amounts by the amount of interest applicable to each amount.  If the Court does not enter the Order of Final Approval or if the Effective Date does not occur, the amount in the account(s) plus any interest shall be returned to JPMorgan Chase.

   2.2.2  JPMorgan Chase, itself or through the Claims Administrator, and according to the terms, conditions, and procedures set forth in section 2.7 of this Stipulation, shall pay each Participating Claimant according to the following allocation formula:  the Net Settlement Amount will be distributed to Participating Claimants on a pro rata basis based on each Participating Claimant's length of service in Work Months in a Covered Position according to JPMorgan Chase's records; provided that Participating Claimants who were employed by JPMorgan Chase in California shall receive an allocation of four (4) times the allocation of other Participating Claimants for each month of service in a Covered Position while employed in California.  The formula will be applied and calculated only after any and all disputed claims have been received and resolved in accordance with the provisions of section 2.6.7 of this Stipulation.  The formula is designed to result in the complete distribution of the Net Settlement Amount based on the assumption that all Class Members become Participating Claimants.  If fewer than all Class Members participate in the distribution, the

- 15 -

amounts for each Participating Claimant will increase on a pro rata basis, consistent with the above-described allocation formula.

2.2.3    To the extent administratively convenient, the payment to each Participating Claimant shall be made via a single check.

2.2.4    The payments set forth in section 2.2.2 shall be allocated for reporting reasons as set forth below:  (a) fifty percent (50%) shall be deemed payment in settlement of claims for unpaid wages; and (b) fifty percent (50%) shall be deemed payment in settlement for claims of penalties, liquidated damages, interest, and all other non-wage recovery.

2.2.5    As further detailed in section 2.3, and for each payment made pursuant to sections 2.2, 2.7 and 2.9 of this section VI, JPMorgan Chase, itself or through the Claims Administrator, will report each payment to government authorities including the Internal Revenue Service as required by law, and it shall make all required deductions, withholdings, and/or payroll tax payments.

2.2.6    In addition to the payments to Participating Claimants set forth in section 2.2.2, JPMorgan Chase, itself or through the Claims Administrator, shall also make a payment in the amount of $40,000 to the California Labor and Workforce Development Agency as consideration for the release of PAGA claims on behalf of the State of California.  Such payment shall be included as part of the Administrative Costs and be paid out of the Maximum Settlement Amount.

2.3 *Taxes.*

2.3.1    Those payments allocated to the settlement of claims for unpaid wages (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported in the year of payment as wage income to the Participating Claimant on a Form W-2 and such other state or local tax reporting forms as may be required by law.  Those payments allocated to all other claims, including without limitation claims for penalties, reimbursement, liquidated damages, interest, and other non-wage recovery (a) shall not be subject to required withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported in the year of payment as non-wage income to the

- 16 -

Participating Claimants on a Form 1099 and such other state or local tax reporting forms as may be required by law.  Other than as set forth above, JPMorgan Chase will not make from the payment to each Participating Claimant any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Order of Final Approval by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.

2.3.2    Any amount paid to Participating Claimants shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "JPMorgan Chase Benefit Plans") provided by JPMorgan Chase, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any are not considered eligible compensation for are not considered eligible compensation for JPMorgan Chase's 401(k) Savings and Retirement Plans or for any other benefit purposes, or otherwise require any contribution or award under any JPMorgan Chase Benefit Plan, or otherwise modify benefits, contributions or coverage under any JPMorgan Chase Benefit Plan.

2.3.3    Other than the withholding and reporting requirements set forth in section 2.3.1, Participating Claimants shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this section VI of this Stipulation.  JPMorgan Chase acknowledges that it will be responsible for paying the employer's share of any applicable payroll taxes.  JPMorgan Chase makes no representations and it is understood and agreed that JPMorgan Chase has made no representations as to the taxability to any Participating Claimants of any portions of the settlement payments, the payment of any costs or an award of attorneys' fees, or any payments to the Class Representatives.  The Notice Regarding Pendency of Class and Collective Action will advise each Class Member to seek his or her own personal tax advice prior to acting in response to

- 17 -

that notice, and JPMorgan Chase, the Class Representatives, and Class Counsel agree that each Class Member will have an adequate opportunity to seek tax advice prior to acting in response to the notice.

2.4 *Court Approval of Notice to the Class and A Settlement Hearing.*

2.4.1    The Class Representatives and JPMorgan Chase, through their counsel of record in the Litigation, shall file this Stipulation with the Court and jointly move for preliminary approval of this Stipulation.   Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, will request that the Court enter the Preliminary Approval Order approving the terms of this Stipulation, certify a class and collective action for settlement purposes only as provided in section 2.1, approve the Settling Parties' proposed allocation of settlement funds set forth in section 2.2.2, and schedule the Settlement Hearing for the purposes of determining the fairness of the settlement, granting final approval of the settlement, granting final approval of this Stipulation, and entering Judgment.

2.4.2    Subject to Court availability, the Class Representatives and JPMorgan Chase shall endeavor to notice the joint motion for entry of the Preliminary Approval Order described in section 2.4.1 for a hearing before the Court on or before ten (10) days after the joint motion is filed.   A decision by the Court not to enter the Preliminary Approval Order in its entirety, or a decision by the Court to enter the Preliminary Approval Order with modifications that JPMorgan Chase determines in its reasonable and good faith judgment to be material, will be grounds for JPMorgan Chase to terminate the settlement and the terms of this Stipulation within twenty-one (21) days of receipt of the Court's decision.

2.4.3    If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for JPMorgan Chase shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Stipulation.   In the event that the Settling Parties fail to reach such agreement, any of the Settling Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

2.4.4    If the Preliminary Approval Date occurs on a date after February 15, 2011, all subsequent dates set forth in this Stipulation, including but not limited to, the Notice Mailing Deadline, the Notice Response Deadline, the deadline for the mailing of the reminder

- 18 -

postcard set forth in section 2.5.8, the date for the motion for entry of the Order of Final Approval set forth in section 2.6.10, and the Settlement Hearing, shall be extended by the number of days equal to the number of days between February 15, 2011 and the date on which the Court enters the Preliminary Approval Order.

2.4.5    If the Court enters the Preliminary Approval Order, then at the resulting Settlement Hearing, the Class Representatives and JPMorgan Chase, through their counsel of record, shall address any timely written objections from Class Members or any concerns from Class Members who attend the hearing as well as any timely stated concerns of any state official who receives a CAFA notice, if any, and any concerns of the Court, if any, and shall and hereby do, unless provided otherwise in this Stipulation, stipulate to final approval of this Stipulation and entry of the Judgment by the Court.

2.5 *Notice to Class Members.*

2.5.1    If, by entering the Preliminary Approval Order, the Court provides authorization to send the Notice Regarding Pendency of Class and Collective Action to Class Members, JPMorgan Chase, through the Claims Administrator, will facilitate the mailing of the Class Notice to all Class Members at their Last Known Addresses.  This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

2.5.2    This Class Notice and its envelope or covering shall be marked to denote the return address of the Claims Administrator and the envelope shall also be marked "JPMorgan Chase Bank, N.A. Settlement Notice."

2.5.3    JPMorgan Chase shall prepare the name and Last Known Address for each Class Member for the Claims Administrator so that the Claims Administrator can engage in the processing and mailing of each Class Notice.

2.5.4    Prior to mailing the Class Notice to each Class Member, the Claims Administrator shall undertake a Reasonable Address Verification Measure to ascertain the current accuracy of the Last Known Address of each Class Member.  To the extent this process yields an Updated Address, that Updated Address shall replace the Last Known Address and be treated as the new Last Known Address for purposes of this Stipulation and for subsequent mailings in particular.

Case No. 01-CV-6492L

2.5.5    Unless the parties agree otherwise in writing or the Court so orders, each of the Notices shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Deadline.

2.5.6    Part of the amount set aside by JPMorgan Chase for the Claims Administration Account, as defined in section 2.10.1, shall include all costs of the mailings described in section 2.5, which shall be the fees charged by the Claims Administrator, the cost of the envelopes in which the Class Notice will be mailed, the cost of reproducing the Class Notice, and the cost of postage to send the Class Notice.  The following Forms will be included with the Class Notice in this mailing:  Change of Name or Address Information (Form A), Settlement Claim Certification and Consent to Join Settlement Form (Form B), and Election to Opt Out of Settlement and Class Action (Form C).  The Class Representatives acknowledge that JPMorgan Chase's agreement to pay the claims administration costs to a fund as set forth in section 2.10.1 as part of the Maximum Settlement Amount constitutes part of the consideration to the Class.

2.5.7    Unless the Claims Administrator receives a Class Notice returned from the United States Postal Service for reasons discussed below in this section, that Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five days (5) days after mailing.  In the event that subsequent to the first mailing of a Notice Regarding Pendency of Class and Collective Action and prior to the deadline for a response, that Notice is returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the notice to that address, the notice will be deemed mailed as of that date, and the forwarding address shall be deemed the Updated Address for that Class Member. In the event that subsequent to the first mailing of a Class Notice, and at least fourteen (14) days prior to the Notice Response Deadline, that Notice is returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within fourteen (14) days of receiving

such information; if no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address.  In either event, the Notice Regarding Pendency of Class Action shall be deemed received once it is mailed for the second time.

2.5.8    To the extent a Class Member, whose address has not been deemed unknown by the Claims Administrator, has not submitted to the Claims Administrator some form of written response to the Class Notice by April 10, 2011, subject to section 2.4.4, the Claims Administrator shall send that Class Member a postcard (a) referencing the name of the Amended Action; (b) stating that the Class Member received a notice in this action; (c) providing the address for the Claims Administrator; (d) stating the Notice Response Deadline, *i.e.*, the deadline to respond to the Class Notice if the recipient desires to do so; and (e) stating that the Class Member can contact the Claims Administrator to receive an additional copy of the notice.  The postcard shall not contain additional information or statements.  Nothing in this section 2.5.8 shall be construed to extend the Notice Response Deadline for any Class Member, and the reasonable costs expended in association with the preparation and mailing of the postcards contemplated by this section shall be included as part of the Administrative Costs and be paid out of the Maximum Settlement Amount.

2.5.9    Within ten days following the filing of this Stipulation with the Court, JPMorgan Chase shall serve upon the Attorney General of the United States and the appropriate State official of each State in which any Class Member resides a notice of the proposed Settlement in compliance with the requirements of CAFA, 28 U.S.C. §1715.  A copy of the CAFA Notice is attached as Exhibit 4.

2.5.10    Additionally, within ten days following the filing of this Stipulation with the Court, Class Counsel shall provide written notice to the California Labor and Workforce Development Agency of the proposed Settlement.

2.6 *Responses to the Notice Regarding Pendency of Class Action; Motion for Final Approval.*

2.6.1    Class Members have the option to retain their own attorney(s) in connection with this Lawsuit at their own expense.  Class Members who choose this option will be

Case No. 01-CV-6492L

responsible for any attorneys' fees or costs incurred as a result of this election.  The Notice Regarding Pendency of Class Action will advise Class Members of this option.

   2.6.2  Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Lawsuit, the settlement, and the Settlement Class.  Class Members who wish to exercise this option must fully complete, properly execute, and timely mail, per the instructions therein, the form entitled "Election to Opt Out of Settlement and Class Action" attached to the Notice Regarding Pendency of Class and Collective Action as Form C.  If a fully completed and properly executed Opt Out form is not received by the Claims Administrator from a Class Member with a postmark on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to opt out of the Settlement Class.  Class Members who do not timely submit fully completed and properly executed Opt Out forms shall be deemed Members of the Settlement Class.  Class Members who do timely submit fully completed and properly executed Opt Out forms shall have no further role in the Litigation, and for all purposes they shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, this settlement, or this Stipulation.

   2.6.3  Class Members who do not opt out of the Settlement Class pursuant to section 2.6.2 may object to the Stipulation by submitting written objections to the Court and mailing copies of their written objection so they are sent to Class Counsel, counsel for JPMorgan Chase, and the Claims Administrator with a postmark on or before the Notice Response Deadline.  The Class Notice shall advise Class Members of this option.  The Claims Administrator shall immediately provide copies of any such objections to counsel of record.

   2.6.4  Class Members who do not opt out of the Settlement Class pursuant to section 2.6.2 may elect to become Participating Claimants.  Class Members who wish to exercise this option and certify their entitlement to payment under the settlement must fully and timely complete, execute, and mail, per the instructions therein, the form entitled "Settlement Claim Certification and Consent to Join Settlement Form" attached to the Notice Regarding Pendency of Class and Collective Action as Form B.  If a completed and properly executed Settlement Claim Certification and Consent to Join Settlement Form is not received by the Claims Administrator from a Class Member with a

Case No. 01-CV-6492L

postmark on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement.  However, as long as they do not properly submit Opt Outs, Class Members shall be deemed Members of the Settlement Class and shall be subject to the Judgment even if they do not submit a Settlement Claim Certification and Consent To Join Settlement Form in a timely and proper fashion.  Only Participating Claimants whose completed and properly executed Settlement Claim Certification and Consent To Join Settlement Forms and whose Consent to Join Settlement Class attachments to such forms are filed with the Court shall be entitled to payment pursuant to the settlement and this Stipulation.

2.6.5     If any Class Member submits a timely but deficient Settlement Claim Certification and Consent to Join Settlement Form, or if any Class Member submits a properly executed Settlement Claim Certification and Consent to Join Settlement Form after the Notice Response Deadline, or if any Class Member submits a properly executed response to the cure letter set forth in Section VI, subsection 2.6.8 after the Notice Response Deadline, JPMorgan Chase will have the discretion to decide whether the Class Member's submission(s) shall be accepted even though it was deficient or submitted untimely, after consultation with Class Counsel.  In no event shall the acceptance of untimely or otherwise deficient claims result in JPMorgan Chase being required to pay more than the Maximum Settlement Amount.

2.6.6     In the event that the Claims Administrator receives a properly executed Settlement Claim Certification Form and Consent to Join Settlement Form or a properly executed response to the cure letter set forth in Section VI, subsection 2.6.8 after the Allocation formula has already been calculated and applied to the Net Settlement Amount and all disputed claims have been resolved, to the extent any such claims are accepted as set forth below, such claims will be paid out of the Reserve defined in Section VI, subsection 1.35.  JPMorgan Chase will have the discretion to decide whether the Class Member's submission(s) shall be accepted despite having been submitted untimely, after consultation with Class Counsel.  After 180 days following the date that checks are issued to Participating Claimants pursuant to this Stipulation, and provided that no Plaintiff or Participating Claimant has petitioned the Court for additional relief, any amount remaining in the

- 23 -

Reserve shall be distributed as unclaimed funds pursuant to subsection 2.12.1 of this Section VI.   In no event shall the acceptance of untimely or otherwise deficient claims result in JPMorgan Chase being required to pay more than the Maximum Settlement Amount.

2.6.7     If a Participating Claimant disagrees with the number of Work Months pre-printed on his or her Settlement Claim Certification and Consent to Join Settlement Form, the Participating Claimant must write his or her correct Work Month total and the correct dates of employment in a Covered Position during the Class Period and provide documents that evidence that he or she was employed in a Covered Position during the Class Period for the state(s) where the Participating Claimant worked.   The Work Months listed on the Settlement Claim Certification and Consent to Join Settlement Form are presumed to be accurate unless the Participating Claimant submits documentation demonstrating otherwise.   In the event of any dispute over an individual's Work Months, Class Counsel and counsel for Chase shall meet and confer in good faith in an attempt to resolve the dispute.   If the dispute cannot be resolved, it shall be submitted to the Claims Administrator for a binding, non-appealable final determination, using and applying the definitions and provisions set forth in this Stipulation.   All disputes under this section 2.6.7 must be resolved before the Allocation formula can be applied and before any payments can be made under section 2.7.1.   If any disputes under this section 2.6.7 are received after the Allocation formula has been applied and after payments have been made pursuant to section 2.7.1, any additional payments to be made resulting from the resolution of such disputes shall be paid out of the Reserve defined in Section VI, subsection 1.35.   In no event shall the resolution of any dispute over any class member's Work Month total result in JPMorgan Chase being required to pay more than the Maximum Settlement Amount.

2.6.8     Class Members who submit an Opt Out and also submit a Settlement Claim Certification and Consent To Join Settlement Form shall be sent a cure letter (in a form similar to that attached as Exhibit 5) by the Claims Administrator seeking clarification of whether they intend to opt out of the settlement and the Settlement Class or become a Participating Claimant.   Absent a response to the contrary within 15 days or the deadline for filing claims, whichever is later, such Class Members will be deemed to be a Participating Claimant.

- 24 -

2.6.9      Class Members who, for future reference and mailings from the Court or Claims Administrator, if any, wish to change the name or address listed on the envelope in which the Class Notice was first mailed to them, must fully complete, execute, and mail, per the instructions therein, the form entitled "Change of Name or Address Information" attached to the Notice Regarding Pendency of Class and Collective Action as Form A.  The address provided shall be the "Updated Address" for any such Class Member.

2.6.10      Prior to the Settlement Hearing and consistent with the rules imposed by the Court, the Class Representatives and JPMorgan Chase shall jointly move the Court for entry of the Order of Final Approval and the associated entry of Judgment on or before May 13, 2011, subject to section 2.4.4.  The Settling Parties shall make all reasonable efforts to secure entry of the Order of Final Approval and the associated entry of Judgment.  If the Court rejects the Stipulation, fails to enter the Order of Final Approval, fails to certify the class or collective action for settlement purposes as agreed by the Settling Parties in this Stipulation, or fails to enter the Judgment, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in sections I, IV, 2.12.4, and 2.12.5 and those provisions relating to the return of documents and discovery set forth in section 2.13) shall be void *ab initio,* and JPMorgan Chase shall have no obligations to make any payments under the Stipulation, except for Administrative Costs already incurred by the Claims Administrator.

2.7 *Timing of Payment to Participating Claimants and Notice of Final Approval to Settlement Class Members.*

2.7.1      Not more than the later of thirty (30) days after the Effective Date or the date on which all disputed claims received within thirty (30) days after the Effective Date are resolved, and only if the Effective Date occurs, the Claims Administrator shall mail to each Participating Claimant at his or her Last Known Address, or Updated Address if obtained, his or her individual payment pursuant to section 2.7 and in accordance with the terms of section 2.2.2, less the employee's share of relevant withholdings, from a Qualified Settlement Fund administered by the Claims Administrator but funded by JPMorgan Chase.

2.7.2     Checks issued to Participating Claimants pursuant to this Stipulation shall remain negotiable for a period of one hundred eighty (180) days from the date of mailing.  The Claims Administrator will make reasonable efforts under the direction of the Parties to locate and contact Participating Claimants who have not negotiated checks issued to them pursuant to section 2.7.  The funds associated with any checks not properly or timely negotiated shall be deemed to be "stale checks" and shall be distributed as unclaimed funds pursuant to subsection 2.12.1 of this Section VI.  The Settling Parties hereby agree that such funds represent settlement payments for matters disputed in good faith, not uncontested wage payments, and they shall not be subject to escheat rules, *cy pres,* or other distribution not provided for in this Stipulation.   Participating Claimants who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the terms of the Stipulation and Judgment.

2.7.3     Following the mailing of the payments to Participating Claimants discussed in section 2.7.1, the Claims Administrator shall provide counsel for the parties with a written confirmation of this mailing.  Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of judgment with the Court in the Litigation on behalf of the Settlement Class.

2.8 *Releases.*

2.8.1     Upon the Effective Date, the Class Representatives and each of the Settlement Class Members, including all Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in section 1.34.

2.8.2     In addition, upon the Effective Date, the Class Representatives and each of the Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in section 1.33.

2.8.3      In addition, upon the Effective Date, the Class Representatives, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Class Representatives' Released Claims as defined in section 1.9.

2.9 *Payment of Costs and Attorneys' Fees to the Class Representatives.*

2.9.1      Not more than fifteen (15) days after the Effective Date, and only if the Effective Date occurs, subject to Court approval, JPMorgan Chase will pay Class Counsel an amount allowed by the Court not to exceed 33 1/3% of the Maximum Settlement Amount for all attorneys' fees, and up to $115,000 for all allowable Litigation costs and expenses from the JPMorgan Chase interest-bearing accounts for such fees, costs and expenses set forth in section 2.2.1.  Payments made per this paragraph shall constitute full satisfaction of any claim for fees or costs, and the Class Representatives and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory. The Class Representatives and Class Counsel agree that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and they agree to submit, as appropriate, the necessary materials to justify this payment no later than the submission of the Settling Parties' joint motion for final approval of the Stipulation pursuant to section 2.6.10.  Provided it is consistent with this Stipulation, JPMorgan Chase will not oppose the amount of fees or costs requested by Class Counsel.  In the event that the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, or less than the amount requested for Enhancement payments for Class Representatives set forth in section 2.9.2, only the awarded amounts shall be paid and shall constitute satisfaction of the obligations of this paragraph and full payment thereunder, and the amount of any such reduction will not get paid out by JPMorgan Chase.  Other than any reporting of this fee payment as required by this Stipulation or law, which JPMorgan Chase shall make, Class Counsel and the Class Representatives shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment that they have received pursuant to this section.

2.9.2      Not more than the later of thirty (30) days after the Effective Date or the date on which all disputed claims received within thirty (30) days after the Effective Date are resolved, and only in the event that the Effective Date occurs, JPMorgan Chase will forward two separate checks payable to Michael J. Davis, Elena Lombardo, Carol Smith, and Andrew Whalen, in their personal capacity only and via their counsel of record.   The first said check for each Class Representative shall be his or her individual payment as a Participating Claimant, pursuant to sections 2.2 and 2.7.   The second said check shall be compensation and consideration of an amount approved by the Court not to exceed $20,000 as an Enhancement payment for the efforts of the Class Representatives in the Litigation.   Each Class Representative shall be required to sign a full, general, and comprehensive release of the Class Representatives' Released Claims set forth in section 1.9, in the same or substantially the same form as set forth in Exhibit 6, in exchange for receiving an Enhancement payment.   Through this agreement, Michael J. Davis, Elena Lombardo, Carol Smith, and Andrew Whalen each agree to be a Member of the Settlement Class and a Participating Claimant subject to the Judgment, and in light of this agreement, it shall not be necessary for them to be sent a Notice Regarding Pendency of Class and Collective Action or for them to complete a Settlement Claim Certification and Consent to Join Settlement Form.   The Settling Parties agree that JPMorgan Chase shall report the Enhancement payment as non-wage income in the year of payment, and that JPMorgan Chase will report the payment of each Class Representative's individual payments pursuant to section 2.2 according to the terms of this Agreement, and with the understanding that each Class Representative will be deemed to have submitted a timely and valid claim.   Other than the reporting and withholding set forth in this paragraph, and with the exception of the employer's share of any federal, state, and local taxes, each Class Representative shall be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made to him or her pursuant to this section.

2.9.3      JPMorgan Chase shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Class Representatives, Class Counsel, and/or any other Person who may assert some claim thereto, of any award or payment issued or made in the

Litigation or pursuant to this Stipulation, including, but not limited to, any award or payment pursuant to section 2.9.1 or 2.9.2.

        2.9.4      If the Effective Date does not occur, neither the Class Representatives nor Class Counsel shall have any responsibility or obligation for the payment of costs incurred in the Litigation and its settlement by the Claims Administrator, including the cost of mailing the Notice.

        2.10    *Claims Administrator.*

        2.10.1      Class Counsel shall be responsible for all fees and expenses associated with administering the claims of the Class ("Claims Administration").  Class Counsel agrees to obtain a good faith estimate from the Claims Administrator for Claims Administration.  A portion of the Maximum Settlement Amount, in an amount that is 15% more than the good faith estimate made by the Claims Administrator for Claims Administration, shall be set aside by JPMorgan Chase in an account (the "Claims Administration Account") to be allocated to Claims Administration.  In no event will JPMorgan Chase be required to pay more for claims administration than the amount set aside for the Claims Administration Account.  Class Counsel shall have the right to withdraw funds from the Claims Administration Account as it deems necessary only to reimburse third parties for necessary fees and expenses associated with Claims Administration.  Class Counsel shall make withdrawals from the Claims Administration Account for no other purpose.

        2.10.2      The actions of the Claims Administrator shall be governed by the terms of this Stipulation.  JPMorgan Chase may provide relevant confidential information needed by the Claims Administrator such as the names, social security numbers, and addresses of Class Members to the Claims Administrator and engage in related communications with the Claims Administrator without notice or copies to Class Counsel, any Class Members, or the Court.  Otherwise, JPMorgan Chase and Class Counsel may provide relevant information needed by the Claims Administrator per this Stipulation and engage in related communications with the Claims Administrator with notice and copies to the other party.

        2.10.3      In the event that either JPMorgan Chase or Class Counsel take the position that the Claims Administrator is not acting in accordance with the terms of the Stipulation,

such party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

2.10.4    After the settlement has been fully administered, including without limitation, any additional payments to be made resulting from the resolution of disputed claims, Class Counsel will certify to the Court that all administrative costs paid out of the Claims Administration Account were reasonable and legitimately related to the administration of the settlement.  If there is a residual in the Claims Administration Account following administration of the settlement, Class Counsel will petition the Court as to how the residual is to be distributed and to whom.

2.11    *Termination of Settlement*

2.11.1    In the event that the Stipulation is not approved in its entirety as is by the Court, excluding modifications that JPMorgan Chase determines in its reasonable and good faith judgment to not be material modifications, or in the event that the settlement set forth in the Stipulation is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by JPMorgan Chase to anyone in accordance with the terms of this Stipulation, except for Administrative Costs already incurred by the Claims Administrator, the Settling Parties will bear their own costs and fees with regard to the efforts to obtain Court approval, and the Class Representatives shall dismiss the Amended Action without prejudice to the Litigation and the Fourth Amended Complaint shall be refiled.  In such event, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in sections I, IV, 2.12.4, and 2.12.5 and those provisions relating to the return of documents and discovery set forth in section 2.13) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc.*  Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid by JPMorgan Chase to Class Counsel or reducing the amount of any entitlement paid to the Class Representatives shall

- 30 -

constitute grounds for cancellation or termination of the Stipulation or grounds for limiting any other provision of the Judgment.

2.11.2  In the event that the settlement set forth in the Stipulation is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, notwithstanding any of the provisions of this section 2.11 and all its subsections, the *Davis* action may proceed as if this settlement had not been entered.  Furthermore, in any such event, if the class and/or collective action described in section 2.1 has already been certified for settlement purposes, the Parties will stipulate or jointly move, as soon as practicable, to decertify the class and/or collective action for settlement purposes.

2.12  *Miscellaneous Provisions.*

2.12.1    The only Class Members, other than the Class Representatives identified in section 1.8, entitled to any payment under this Stipulation and the associated Judgment are Participating Claimants, and they shall be entitled to their individual payments pursuant to section 2.2.2 only.  This Stipulation and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.  Those parts of the Net Settlement Amount that are not claimed shall be redistributed to all other Participating Claimants on a *pro rata* basis.  Provided, however, that if the portion of the Net Settlement Amount that is not claimed does not exceed $100,000, one-half of that amount shall be donated to a charitable organization selected by the Class Representatives and Class Counsel with the consent of JPMorgan Chase, which consent shall not be unreasonably withheld, and one-half of that amount shall be donated to a charitable organization selected by JPMorgan Chase with the consent of the Class Representatives and Class Counsel, which consent shall not be unreasonably withheld.

2.12.2    JPMorgan Chase's sole obligations to Class Counsel and the Claims Administrator are set forth in this Stipulation.  Class Counsel and the Claims Administrator shall hold JPMorgan Chase harmless for an award of fees or costs beyond those made in accordance with the Stipulation and shall not seek to recover any fees or costs awarded in excess of the terms in this Stipulation.

2.12.3     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation, including but not limited to obtaining the dismissal, transfer to the Court, or stay of any pending or subsequently-filed class or collective action lawsuit that alleges any of the Released State Law Claims and/or Released Federal Law Claims set forth in sections 1.34 and 1.33, respectively, of this Stipulation.

2.12.4     The Stipulation compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense.  The Settling Parties agree that the amounts paid in settlement and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

2.12.5     JPMorgan Chase specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Litigation and makes no concessions or admissions of liability of any sort.  Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Stipulation or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the JPMorgan Chase Releasees, or any of them; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the JPMorgan Chase Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may be deemed to be or may be used as an admission of, or evidence of, the appropriateness of class certification or collective action certification of any claims asserted against any of the JPMorgan Chase Releasees.  The Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that the JPMorgan Chase Releasees could not contest (or is estopped from contesting) class or collective action certification on any grounds if the Court fails to enter the Order of Final Approval; this Stipulation shall not be deemed an admission by, or ground

- 32 -

for estoppel against, the JPMorgan Chase Releasees that class or collective action certification in the Litigation is proper or cannot be contested on any grounds.

   2.12.6  All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

   2.12.7  The Stipulation may be amended or modified only by a written instrument signed by authorized representatives of all Settling Parties or their respective successors-in-interest.

   2.12.8  The Stipulation constitutes the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

   2.12.8.1  Class Counsel, on behalf of the Class, represent that, after consultation with and approval by all of the Class Representatives, they are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate. Similarly, JPMorgan Chase counsel represents that it is expressly authorized to take all appropriate action required or permitted to be taken by JPMorgan Chase pursuant to the Stipulation to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of JPMorgan Chase which they deem appropriate.

   2.12.8.2  Each counsel or other Person executing the Stipulation or any of its exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

   2.12.8.3  The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

2.12.8.4     Whenever this Stipulation requires or contemplates that one party, the Court or the Claims Administrator shall or may give notice to another, notice shall be provided by facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i) If to JPMorgan Chase, then to:

Sam S. Shaulson
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178
Facsimile:  215/309-6001

(ii)  If to Class Representatives, then to:

J. Nelson Thomas
Thomas & Solomon LLP
693 East Avenue
Rochester, NY  14607
Facsimile:  585/272-0574

2.12.8.5     The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Stipulation is not designed to and does not create any third party beneficiaries other than third parties that are identified as JPMorgan Chase Releasees in section 1.16 of this Stipulation.

2.12.8.6     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

2.12.8.7     The parties agree and understand that there shall be no injunctive relief included as part of any Court Order as to them and that JPMorgan Chase's complete obligations are detailed herein.

2.12.8.8     The Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and

- 34 -

enforced in accordance with, and governed by, the substantive laws of the State of New York without giving effect to that State's choice of law principles.

2.12.8.9    The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party.  No party shall be deemed the drafter of this Stipulation.  The parties acknowledge that the terms of the Stipulation are contractual and are the product of arms-length negotiations between the parties and their counsel.  Each party and their counsel cooperated in the drafting and preparation of the Stipulation.  In any construction to be made of the Stipulation, the Stipulation shall not be construed against any party.

2.12.8.10   Other than necessary disclosures made to a court, the Class Representatives, JPMorgan Chase, and their respective counsel agree to keep the fact of settlement, this Stipulation and any attached documents, and their settlement negotiations confidential and will not disclose that information to any third party (including the press) until such time as the Class Representatives and JPMorgan Chase move for preliminary approval of this Stipulation or otherwise agree in writing.  After preliminary approval, Class Representatives, Class Counsel and their agents may communicate with Class Members; however, the Parties shall issue no statements to the press or any other media or engage in any other publicity regarding this settlement.  Notwithstanding the foregoing, JPMorgan Chase shall have the right to disclose the terms of the settlement of the Lawsuit for litigation purposes in any case involving any of the Released State Law Claims and/or Released Federal Law Claims set forth in sections 1.34 and 1.33, respectively, of this Stipulation, or for accounting or public filing purposes or to otherwise comply with its reporting duties as a public company.

2.12.8.11   The Settling Parties stipulate and agree that as of the Effective Date, the Litigation, including but not limited to JPMorgan Chase's counterclaims in the Litigation, shall be dismissed with prejudice.

2.13    *Return of All Documents and Other Discovery.*

2.13.1    Within thirty (30) days after the Effective Date, Class Representatives and Class Counsel shall return to JPMorgan Chase all duplicate copies of materials

- 35 -

produced or obtained from JPMorgan Chase during the Litigation, whether by formal or informal discovery.  Upon written notice to Class Counsel by JPMorgan Chase, within three years and six months after the Effective Date, Class Representatives and Class Counsel shall return to JPMorgan Chase all originals of materials produced or obtained from JPMorgan Chase during the Litigation, whether by formal or informal discovery.  This provision includes all documents conveyed by JPMorgan Chase to Class Representatives by initial disclosures, formal discovery, or informal discovery including all settlement discussions and mediation sessions.  This shall include, but not be limited to, business records, proprietary information, compensation information, or any other documents materials, summaries, or notes dealing with or in any way related to the claims asserted.

2.13.2    Within thirty (30) days after the Settlement terminates for any reason, Class Representatives and Class Counsel shall return to JPMorgan Chase all originals and duplicate copies of documents, information, and data produced or obtained from JPMorgan Chase during and in connection with all settlement discussions and mediation sessions.

2.13.3    No discovery materials shall be offered for sale or distributed to any Person or entity by any Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other Person shall be retrieved by Class Counsel and returned to JPMorgan Chase, and all parties receiving such documents shall certify within thirty (30) days of the Effective Date, or within thirty (30) days of the date the Settlement terminates as set forth in section 2.11 and its subsections, that they have returned all such documents or information and all copies thereof.

2.13.4    This provision and the provisions of sections 2.13.1 and 2.13.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product and all such documents or materials attached to work product shall be returned to JPMorgan Chase.  All such documents, information or materials incorporated into any work product shall be excised.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed.

DATED: February _11_, 2011

_J. Nelson Thomas_
J. Nelson Thomas
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607
Telephone: 585/272-0540

Attorneys for Plaintiffs MICHAEL J. DAVIS, ELENA LOMBARDO, CAROL SMITH, and ANDREW WHALEN, on behalf of themselves and all others similarly situated

Respectfully submitted,

_Sam S. Shaulson_
Sam S. Shaulson
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: 212/309-6000

Attorneys for Defendants JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.

_____
Michael J. Davis

_____
Elena Lombardo

_____
Carol Smith

_____
Andrew Whalen

- 37 -

Case No. 01-CV-6492L