UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DAVIS, et al., *on behalf of themselves and all others similarly situated* <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, and CHASE MANHATTAN MORTGAGE CORPORATION, <br><br> Defendants. | Civil Action No. 01-CV-6492L(B) <br><br><br> Hon. David G. Larimer <br> Action Filed: 10/04/2001 |

# THE COLE PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION FOR PRELIMINARY APPOVAL

JULES L. SMITH
jlsmith@bklawyers.com
Blitman & King LLP
Powers Building, Suite 500
16 West Main Street
Rochester, NY 14614
Telephone: 585-232-5600
Facsimile: 585-232-7738
Attorneys for Intervenors

and

JAMES F. CLAPP, *pro hac vice*
jclapp@sdlaw.com
ZACH P. DOSTART, *pro hac vice*
zdostart@sdlaw.com
MARITA M. LAUINGER, *pro hac vice*
mlauinger@sdlaw.com
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, California  92122-1253
Telephone: 858-623-4200
Facsimile: 858-623-4299

Proposed Intervenors Cynthia Cole, Darin Takahashi, Sally Helmken, Carrie Wehner (the "Cole plaintiffs") hereby oppose the joint motion for preliminary approval filed by plaintiff Michael Davis, et al. ("Plaintiffs") and defendants JPMorgan Chase & Co., JP Morgan Chase Bank, and Chase Manhattan Mortgage Corp. (collectively, "Chase").

I.  INTRODUCTION

On Friday, February 11, 2011 at approximately 9:00 p.m. EST, Plaintiffs and Chase filed a joint motion for preliminary approval of a proposed nationwide settlement of all wage and hour claims against Chase.  Docket No. 183.  The proposed settlement encompasses not only the claims alleged in this case, but also the also the claims asserted by the Cole plaintiffs in the Central District of California (Cole v. J.P. Morgan Chase, Case No. SACV10-00632) as well as the claims alleged in three other class action lawsuits against Chase.  As explained in the Cole plaintiffs' motion to intervene, Docket No. 158, the Cole plaintiffs were excluded from the negotiations between Plaintiffs and Chase and had no idea what the precise terms of the settlement were until the filing late Friday evening.  Remarkably, although Plaintiffs and Chase have been aware for several months that the Cole plaintiffs have an interest in this litigation and have serious concerns about the propriety of the settlement, they have set the hearing on the motion for preliminary approval for Tuesday, February 15, 2011 at 10:00 a.m., giving the Cole plaintiffs just a few business hours to review the settlement documents and prepare their response.  This is obviously an attempt to deprive the Cole plaintiffs of the opportunity to express their concerns about the proposed settlement.

As discussed below, there are numerous problems with the settlement and the motion for preliminary approval. The Court should deny the motion.[1]

II.     THERE IS NO BASIS FOR THE COURT TO FIND THAT THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

In evaluating the fairness of a proposed class action settlement, the Court acts as a fiduciary to protect the rights of the absent class members. Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2nd Cir. 1987). The Court must closely scrutinize any proposed settlement because "[w]hile the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion." Vollmer v. Selden, 350 F.3d 656, 660 (7th Cir. 2003); see also Manual for Complex Litigation, Fourth, section 21.61 at 309 ("Judicial review [of class action settlements] must be exacting and thorough. The task is demanding because the adversariness of litigation is often lost after the agreement to settle.") Where, as here, a settlement is negotiated prior to class certification, it is subject to a higher degree of scrutiny. D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2nd Cir. 2001).

In order to grant preliminary approval of a class action settlement, the Court must find that the settlement falls within the "range of possible approval." In re Prudential Securities Inc. Limited Partnerships Litigation, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). One of the factors the Court must consider is the size of the settlement fund as compared to the "best possible recovery" the class could achieve. D'Amato, 236 F.3d at 86.

The motion for preliminary approval is devoid of any estimate of the "best possible recovery" that Plaintiffs might achieve if they litigated this case through judgment. Neither the

---

[1] As noted above, the Cole plaintiffs have only had a few hours to review the settlement documents. There may be additional deficiencies that are not discussed in this opposition.

motion itself nor the accompanying affidavit of J. Nelson Thomas gives any estimate of Chase's potential exposure. Therefore, it is impossible to know whether the proposed settlement represents 90% of Chase's exposure or 5%. Furthermore, the motion fails to disclose how much a class member will receive per Work Month (i.e. tenure month as an underwriter) if he or she submits a claim. The proposed class notice, Docket No. 185-2 at page 12 of 38, contains blanks where that information should be disclosed. Without this information, neither the Court nor the class members can make an informed decision about whether the proposed settlement is fair and reasonable, even on a preliminary basis.[2]

---

[2]     Based on the limited information provided, the Cole plaintiffs are very concerned that the proposed settlement is unreasonably low. The moving parties represent that the proposed class consists of 5,200 persons. Docket No. 184 at page 6. Using conservative estimates that each class member earned $50,000 per year, worked 50 hours per week, and was employed an average of 36 months during the class period, and assuming that the California class members represent only 10% of the entire class, Chase's exposure on the overtime claims alone (not including interest, late payment penalties, and damages for missed rest and meal breaks) is well over $150 million. The overtime due under the FLSA is calculated as follows: $50,000 / (52 x 50 hrs/wk) x 0.5 x 10 overtime hrs/wk = $96.15 due per week, or $416.35 due per work month. Excluding California class members, the 4,680 remaining class members worked a total of 168,480 work months during the class period (4,680 x 36 months), yielding overtime exposure of $70,146,648 (168,480 months x $416.35). That amount is then doubled under 29 U.S.C. section 216(b), resulting in a total FLSA exposure of $140,293,296. The overtime due under California law is calculated as follows: $50,000 / (52 x 40 hrs/wk) x 1.5 x 10 overtime hrs/wk = $360.58 per week or $1,561.30 per month. The estimated 520 California class members worked a total of 18,720 months during the class period (520 x 36 months), yielding California overtime exposure of $29,227,536 (not including interest). Thus, the total federal plus California overtime exposure is $169,520,832. Of course, these are estimates, and it does not include additional overtime wages that may be owed under the laws of other states. As discussed in their motion to intervene (Docket No. 158-2, page 17), the Cole plaintiffs have asked for the right to take limited discovery concerning the factual assumptions underlying the settlement, including the average annual compensation and tenure of the class members during the class period. Such discovery is necessary to determine whether the settlement falls within the range of possible approval.

III. THE SETTLEMENT DOCUMENTS ARE INCOMPLETE

The "Joint Stipulation and Settlement Agreement" ("Stipulation"), Docket No. 185-1, refers to a "Schedule 1," which supposedly lists the underwriter positions covered by the proposed settlement (see para. 1.11), and a "Schedule 2," which supposedly lists the statutes and regulations that give rise to the claims being released (see para. 1.34). The moving parties have failed to include these important documents with their filing.

IV. THE RELEASE IS OVERBROAD

According to paragraph 1.34 of the Stipulation, class members who do not timely opt-out will be deemed to release all "Released State Law Claims." "Released State Law Claims" is defined as:

> "any and all state law wage-and-hour claims … that accrued on any date up through and including the Preliminary Approval Date, or, in the case of Class Members who complete, properly execute, and timely return the Settlement Claim Certification and Consent to Joint Settlement Form, the date on which the Class Member executes the Settlement Claim Certification and Consent to Join Settlement Form, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief …." Stipulation, para. 1.34.

Chase reclassified its underwriters as non-exempt, hourly employees in February 2009. However, the definition of "Released State Law Claims" includes any off-the-clock, unpaid wage, minimum wage, meal and rest period, or vacation pay claims that have arisen since the underwriters were reclassified as non-exempt. At no time have Plaintiffs ever alleged claims on behalf of hourly underwriters; instead, this case has always been about underwriters who were misclassified as exempt. The definition of "Released State Law Claims" is too broad.[3]

---

[3] The Cole plaintiffs are also concerned about the reference to "unpaid costs" in the definition of Released State Law Claims. "Unpaid costs" might refer to claims for unreimbursed employee expenses under California Labor Code section 2802. Such claims have never been asserted in this case.

V.  THE CLASS PERIOD SHOULD BE CO-EXTENSIVE WITH THE APPLICABLE STATE LAW LIMITATIONS PERIOD

Paragraph 1.7 of the Stipulation defines the "Class Period" as running from September 8, 1996 to the Preliminary Approval Date for class members who were employed in New York and September 8, 1999 to the Preliminary Approval Date for class members who were employed in any other state.

This definition is unfair to class members who were employed in California. The statute of limitations on a claim for unpaid wages in California is four years. Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 178-79 (holding that unpaid wages may be recovered under California's Unfair Competition Law, which has a four year statute of limitations). However, the statute of limitations for wage claims in most other states (other than New York) is two or three years. See, e.g. N.J. Stat. section 34:11-56a25.1 (limitations period in New Jersey is two years); 43 P.S. section 260.9a(g) (limitations period in Pennsylvania is three years). By extending the Class Period for all class members back to September 8, 1999, moving parties are allowing class members in states with shorter statutes of limitation to recover on wage claims that are otherwise time-barred. Since class members supposedly share in the Net Settlement Amount (i.e., the amount remaining after deduction of attorneys' fees, costs, etc.) on a pro rata basis (Stipulation, para. 2.2.2), this unfairly dilutes the recovery for California class members. The Class Period for each class member should be co-extensive with the applicable statute of limitations in the state where the class member worked.

VI.  THE ALLOCATION TO CALIFORNIA CLASS MEMBERS MAY BE UNFAIR

Paragraph 2.2.2 of the Stipulation provides that class members who were employed in California will receive a monthly settlement payment that is four times the monthly settlement

payment to class members in other states. However, as noted above, moving parties have failed to specify what these monthly settlement payments will be.

It is undisputed that the California class members are entitled to a substantial premium over class members in other states because the overtime rate of pay is calculated differently under California law. As the Cole plaintiffs pointed out in their motion to intervene (Docket No. 158-2 at pages 8-9 and fn. 2), California law calculates the overtime rate of pay based on a 40 hour workweek instead of by using the FLSA's "fluctuating workweek" standard. Compare California Labor Code section 515(d) to 29 C.F.R. section 778.114. This alone increases the damages available to California class members by a factor of four or more. Docket No. 158-2, fn. 2 (describing an example in which a California employee would be entitled to 4.5 times the overtime wages due to an employee under the FLSA). However, California employees who are no longer employed by Chase are also entitled to 30 additional days' pay under California Labor Code section 203. Based on an estimated average salary of $50,000 per year, these late payment penalties amount to $5,769.23 per former employee. Docket No. 158-2, fn. 3 (performing calculation for late payment penalties). Furthermore, California class members are entitled to prejudgment interest on unpaid wages at the rate of 10% per year (Bell v. Farmers Insurance Exchange, 135 Cal.App.4th 1138, 1150 (2006)), whereas prejudgment interest under the FLSA accrues at the adjusted prime rate (currently 3.25%) (Reich v. New Mount Pleasant Bakery, Inc., 1993 U.S. Dist. Lexis 12937, *25 (N.D.N.Y. Sept. 13, 1993)). Because of these late payment penalties and the higher rate of prejudgment interest, a ratio of 5 to 1 might be more appropriate.

The moving parties fail to offer any justification for their proposed 4 to 1 ratio. The moving papers state that the allocation is "in recognition of the greater protections provided by California law to employees in that state and consistent with settlements in other cases which include participants from California." Docket No. 184 at page 4. However, there is no

7

discussion in either the moving papers or in the Thomas affidavit about what statutes or authorities the parties considered in arriving at the proposed allocation. Because nationwide wage and hour settlements involve the interplay of the FLSA plus the laws of 50 different states, the settling parties customarily retain the services of a special master to review the applicable wage and hour laws and make an independent recommendation to the District Court about a proper allocation. That customary procedure was not followed in this case. At a minimum, the moving parties should be required to justify their proposed allocation before the notice is mailed to the class. Furthermore, the Cole plaintiffs should be entitled to obtain their requested discovery about the factual assumptions underlying the settlement to determine whether the proposed 4 to 1 allocation is fair.

VII. THE SETTLEMENT PROVIDES THAT UNAWARDED ATTORNEYS' FEES REVERT TO CHASE RATHER THAN TO THE CLASS MEMBERS

In recent years, courts have become increasingly suspect of class action settlements in which the parties set aside a particular amount for class counsel's attorneys' fees and any fees that are not awarded by the court revert to the defendant. In Glass v. UBS Financial Services, Inc., 331 Fed. Appx. 452, 456 (9th Cir. 2009), an appeal of a nationwide wage and hour settlement, the Ninth Circuit wrote:

> "We agree that the reversion clause, as pertaining to attorneys' fees, is problematic because it acts as a device to isolate fees from scrutiny. [Citation.] In addition to being favorable to class counsel, the reversion clause is favorable to [defendant], which will receive the ultimate benefit of any reduction by the court. Because the reversion clause creates incentives for the negotiating parties to make the attorneys' fees a larger percentage of the total recovery, the district court is required to ensure that that the class members' interests were not compromised in favor of those of class counsel." Id. (Internal quotes and cites omitted.)

In this case, the moving parties have agreed that Plaintiffs' counsel may request up to 33 and 1/3% of the $42 million (or $14 million) as attorneys' fees. Stipulation, para. 2.9.1. As the

settlement is currently structured, if less than $14 million is awarded as attorneys' fees, the unawarded fees revert to Chase instead of the class members. Paragraph 2.2.2 of the Stipulation provides that class members who submit timely claims will receive a pro rata share of the "Net Settlement Amount." Paragraph 1.21 defines "Net Settlement Amount" as the "Maximum Settlement Amount" ($42 million) less: (1) "Administrative Costs," and (2) a reduction of the $42 million for class members who opt out. According to paragraph 1.1, "Administrative Costs" includes "the maximum amount available to Class Counsel in the form of attorneys' fees" – i.e., $14 million. In other words, the Stipulation segregates the $42 million into two pots: the Net Settlement Amount, which is distributed pro rata to the class members who submit claims, and the Administrative Costs, which includes the $14 million set aside for attorneys' fees. If the Court awards less than $14 million in attorneys' fees, this does not result in a corresponding increase in the Net Settlement Amount. Thus, the class members have no opportunity to share in any reduction of the proposed fee. Instead, any unawarded fees revert to Chase. Alarmingly, the moving parties have failed to explain this important aspect of the settlement to the Court.

Ordinarily in class action settlements, "after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant." Glass at 456 n.2 citing Staton v. Boeing Co., 327 F.3d 938, 970 (9th Cir. 2003). Because the reversion of unawarded attorneys' fees to the defendant acts as a device to isolate fees from scrutiny, this aspect of the settlement should be disapproved.

VIII.   THE CLASS AND COLLECTIVE ACTION SHOULD NOT BE CERTIFIED

The moving parties ask the Court to certify an FLSA collective action under 29 U.S.C. section 216(b) and a Rule 23 class action as to all wage and hour claims that exist under state law. That request should be denied.

First, even in the settlement context, the moving parties bear the burden of proving that the elements of Rule 23 are met. <u>Amchem Products v. Windsor</u>, 521 U.S. 591, 620 (1997) (except for the question of trial manageability, the other elements of Rule 23 "demand undiluted, even heightened, attention in the settlement context.")  Here, there has been no showing that common issues predominate over individual issues.  As the <u>Cole</u> plaintiffs explained in their motion to intervene, Docket No. 158-2, pages 12-14, an overtime claim under California law is fundamentally different from an overtime claim under the FLSA.  Furthermore, the moving parties fail to make even a cursory showing that the wage and hour laws of the other 49 states covered by the settlement are sufficiently similar that they can be resolved in a single class action.  Without such a showing, the Court has no basis on which to conclude that common issues predominate over individual issues.

Second, Plaintiffs are not adequate representatives of the California class members.  As discussed in the <u>Cole</u> plaintiffs' motion to intervene, Docket No. 158-2, pages 6-8, Plaintiffs do not have standing to assert or to compromise claims under California law.  More generally, the moving parties have failed to present any admissible evidence that the named Plaintiffs, who were presumably employed as residential loan underwriters in New York, are legally capable of asserting wage and hour claims on behalf of all Chase underwriter positions in all 50 states throughout the United States.[4]

---

[4]  In <u>McDaniel v. JPMorgan Chase Bank</u>, C.D. Cal. Case No. 10-CV-10044-VBF-FFM, a class action lawsuit brought on behalf of Chase's auto loan underwriters (<u>not</u> residential loan underwriters as in this case), Chase recently took the position that McDaniel's claims are barred by the instant settlement.  There has been no evidentiary showing that residential loan underwriters are capable of adequately representing the interests of the other underwriter positions at Chase. <u>See, e.g.</u> <u>Moses v. Avco Lycoming Division</u>, 97 F.R.D. 20, 24 (D. Conn. 1982) (denying class certification on the ground that one class representative sought to represent the entire spectrum of job categories at defendant).

Furthermore, Plaintiffs' interests are in conflict with those of the California class members. As discussed in Section V above, the settlement unfairly dilutes the California class members' recovery by allowing class members in states with shorter statutes of limitation to recover on wage claims that are otherwise time-barred. In addition, depending on the factual assumptions underlying the settlement, the 4 to 1 ratio between the California payment and the payment to class members in other states might be too small. Because the settlement fund is fixed, Plaintiffs have an interest in minimizing the value of the California claims in order to maximize the value of their own claims. As in Amchem, since the settlement provides "no structural assurance of fair and adequate representation the diverse groups and individuals affected" (Amchem at 627), it should not be approved in its present form. Instead, the Court should appoint separate class representatives to protect the interests of the California class members.

IX.   CONCLUSION

For all of the foregoing reasons, the motion for preliminary approval of the proposed settlement should be denied. In addition, the Cole plaintiffs respectfully request that the Court grant their motion to intervene and request for limited discovery.

Dated:  February 14, 2011

By: /s/ James F. Clapp
JAMES F. CLAPP, *pro hac vice*
jclapp@sdlaw.com
ZACH P. DOSTART, *pro hac vice*
zdostart@sdlaw.com
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, California  92122-1253
Telephone: 858-623-4200
Facsimile: 858-623-4299

/s/ Jules L. Smith
JULES L. SMITH
Blitman & King LLP
Powers Building, Suite 500
16 West Main Street
Rochester, NY 14614
Telephone: 585-232-5600
Facsimile: 585-232-7738
jlsmith@bklawyers.com

Attorneys for Proposed Intervenors

367268.1