1             UNITED STATES DISTRICT COURT

2             WESTERN DISTRICT OF NEW YORK

3

4

5  - - - - - - - - - - - - - X
    MICHAEL J. DAVIS, ET AL.,  )   01-CV-6492(L)

6            Plaintiffs  )
                   )

7  vs.                )
                   )   Rochester, New York

8  J.P. MORGAN CHASE, ET AL.,  )  February 15, 2011
            Defendants.  )   10:00 a.m.

9  - - - - - - - - - - - - - X

10

11

12             TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DAVID G. LARIMER

13            UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21  COURT REPORTER:     Christi A. Macri, FAPR, RMR, CRR, CRI
                    Kenneth B. Keating Federal Building

22                   100 State Street
                   Rochester, New York 14614-0222

23

24

25

1                    A P P E A R A N C E S

2

3              THOMAS & SOLOMON, LLP
               BY: J. NELSON THOMAS, ESQ.
4              693 East Avenue
               Rochester, New York 14607
5              Appearing on behalf of the Plaintiffs

6

7              MORGAN LEWIS & BOCKIUS, LLP
               BY: SAMUEL S. SHAULSON, ESQ.
8              101 Park Avenue
               New York, New York 10178-0060
9              Appearing on behalf of the Defendants

10

11             DOSTART CLAPP GORDON & COVENEY, LLP
               BY:  ZACH P. DOSTART, ESQ.
12             4370 La Jolla Village Drive
               Suite 970
13             San Diego, California 92122

14                        - and -

15             BLITMAN & KING
               BY:  JULES L. SMITH, ESQ.
16             The Powers Building
               16 West Main Street
17             Suite 207
               Rochester, New York 14614
18             Appearing on behalf of Intervenor Cynthia Cole

19

20

21

22

23

24

25

<pre>
 1                    P R O C E E D I N G S

 2                    *         *          *

 3           THE COURT: Good morning, all.

 4           MR. SHAULSON: Good morning, Your Honor.

 5           MR. THOMAS: Good morning.

 6           THE COURT: This is Davis vs. JP Morgan Chase, et al.

 7           Could we have cast of characters here?  Mr. Thomas we

 8   know.  Anybody on the line here that's listening?

 9           THE CLERK: No, no one is on the phone today.

10           THE COURT: All right.  Mr. Thomas is here for

11   plaintiffs.

12           MR. SHAULSON: Good morning, Your Honor, Sam Shaulson for

13   the defendants.

14           THE COURT: Good morning.

15           MR. SHAULSON: Good morning.

16           THE COURT: Mr. Smith is here, I see.

17           MR. SMITH: Yes, Your Honor.  Jules Smith from Blitman &

18   King on behalf of the Cole plaintiffs.  With me is Zach Dostart

19   also on behalf of the Cole plaintiffs.

20           Do you want to state your name, Zach?

21           MR. DOSTART: Zach Dostart on behalf of the Cole

22   plaintiffs from Dostart Clapp Gordon & Coveney.

23           THE COURT: Tell me your name again.

24           MR. DOSTART: Zach Dostart, D-O-S-T-A-R-T.  Thank you,

25   Your Honor.
</pre>

Timestamps in left margin: 10:14AM (line 5), 10:14AM (line 10), 10:14AM (line 15), 10:14AM (line 20), 10:15AM (line 25).

1          THE COURT: I did receive a letter from Mr. Swartz, who

2   apparently represents the *Pickle* case in the Southern District.

3   Not here I guess?  Okay.

4          Well, what often is a rather pro forma proceeding, that

10:15AM  5   is, approving preliminary order of settlement, turns out perhaps

6   not to be such here.  There tends to be sort of an automatic

7   scheduling process when both sides notify the Court that they have

8   reached a settlement and they want to put the preliminary approval

9   on and schedule dates for, ultimately, the fairness hearing, it's

10:16AM 10   something that gets arranged pretty quickly.

11          In this case, I think the pending motions to intervene

12   were not really focused on when we did that.  So I guess I have

13   several questions as to what to do at this stage, and I'd be happy

14   to hear from -- I don't know if Mr. Smith or Mr. Dostart is going

10:17AM 15   to carry the rowing oar relative to these issues or --

16          MR. SMITH: Your Honor, I thought -- we thought that I

17   would take the major oar.  Mr. Dostart is prepared to speak on the

18   peculiarities related to the California statutes that have an

19   impact on the reasons why we believe this proposed settlement

10:17AM 20   should not be approved.

21          THE COURT: Well, I'll hear all three, and I think

22   there's sort of some competing interests here obviously.

23          In the objection to the motion to intervene, among other

24   factors advanced by the plaintiffs, was the fact that certainly

10:17AM 25   when the motion to intervene was made, I think arguably even now

1   plaintiffs would suggest that the things about which you complain

2   can be dealt with at the ultimate fairness hearing, that that's

3   the time to deal with these.

4           So I guess that's sort of the first issue I have is I

10:18AM   5   sort of put it under the category of standing as to whether

6   anybody, whether it's a proposed to intervene order or a potential

7   class member, which I guess is what you purport to represent or

8   who you purport to represent, whether you really have much to say

9   at this stage -- that is, the preliminary approval stage --

10:18AM   10   without prejudice certainly to whatever submissions might be made

11   at the ultimate fairness hearing where everybody has a right to be

12   heard sort of related to that.

13           In this posture now, is it really necessary to deal with

14   the motions to intervene?  The plaintiffs suggested in their

10:19AM   15   opposing papers in the motion to intervene that the applications

16   were premature then because you really didn't know what the

17   settlement was, the terms and so forth.

18           Well, now all that presumably is before us, so

19   plaintiffs suggest and I am wondering if it's not the case that

10:19AM   20   intervention really isn't necessary, if you have full rights to

21   suggest to the Court whatever you want to suggest before the Court

22   finally approves it.

23           And just before I stop talking and let you go, I think

24   it was the plaintiffs' -- either affidavits or memo -- where it

10:20AM   25   was suggested that the multi-district panel, in denying apparently

 1  the application to consolidate, referenced the fact that the folks

 2  who sought consolidation could raise their objections in a

 3  fairness hearing before me.  That was specific -- I was

 4  specifically mentioned.  It's always nice to be specifically

10:20AM   5  mentioned.  So even the multi-district panel seemed to suggest

 6  that the fairness hearing was a place to do this.

 7       So unless you have a better idea -- well, I'll say one

 8  more thing, if I could, and then I will promise to let you.

 9       Mr. Swartz, S-W-A-R-T-Z, who purports to represent the

10:21AM  10  *Pickle* plaintiffs, an action in the Southern District, said in his

 11  letter, which appears to have been copied to all of you --

 12       MR. SMITH: Yes, it was, Your Honor.  It was filed, so we

 13  all received it.

 14       THE COURT: Yes, it was filed yesterday, the 14th.  He

10:21AM  15  raises some issues about the notice which, of course, is one of

 16  the things the Court has to do as far as the preliminary approval.

 17       So at least as to the notice, that would seem to be

 18  something that maybe people other than the parties have some

 19  interest in.  And the Court, if the matter is provided for me --

10:22AM  20  for approval, of course, the Court has to decide whether the

 21  notice is appropriate and maybe folks represented by Mr. Smith and

 22  Mr. Swartz should have some input into that.  Maybe not.

 23       So I call it "standing."  Maybe that's not the correct

 24  word, but, you know, the process envisions preliminary order of

10:22AM  25  approval, notice sent out, and time for people to object, opt-in

1   to raise objections.

2         So I'm not sure we can do everything today, and I guess

3   my first question is should I even hear Mr. Smith and his folks?

4         Mr. Thomas, why don't you go first?

10:22AM  5         MR. THOMAS: Thank you, Judge.  First, I think it's -- if

6   you don't mind, I'd just like to take a step back here a little

7   bit in terms of this case.

8         Sam Shaulson and I have been litigating -- or our

9   respective firms have been litigating this case since 2001.

10:23AM  10         THE COURT: Has have I.

11         MR. THOMAS: As have you, Your Honor.  And in that time

12   none of these people appeared until last year because -- and they

13   appeared shortly after the Supreme Court -- as you know, we

14   litigated the case, we had multiple motions in front of Your

10:23AM  15   Honor, we conducted --

16         THE COURT: Copy cat actions.

17         MR. THOMAS: Copy cat actions is what's going on here,

18   they're jumping in after the Supreme Court denied cert. and

19   suddenly these people pop up.

10:23AM  20         I'm not saying that at the proper point in this

21   procedure they can't have -- they can't make objections.  We

22   believe they should be able to make objections at the right point.

23   In this litigation, the MDL panel has ruled when the appropriate

24   time to make those objections are.

10:24AM  25         And the letters -- I agree with Your Honor, the point

1    Your Honor made:  The letters read like objections to the

2    settlement.

3            And this is simply a procedural issue as to when we do

4    that.  Are we going to go over that today, or are we going to go

10:24AM   5    over that when it's time for final approval and people have a

6    chance to opt-out?

7            I think the proper time for that is at the time of

8    approval when there's a chance for people to opt-out, put in all

9    their objections.  The reason for that is many-fold.

10:24AM   10           One is preliminary approval is not the stage to do that.

11   As everyone agrees, the only question is, is this a settlement

12   within the range of potential approval?  This is a $42 million

13   non-reversionary settlement that is providing thousands of dollars

14   for class members.

10:24AM   15           This is not a case, you know, where there's some sort of

16   anomalous settlement or there appears to be anything on the

17   surface that's wrong with it.  They raise more subtle issues which

18   can be teased out at the final stage, but not now.

19           But I also think from a due process perspective, it's

10:25AM   20   important to get the notice out.  There are at least two other law

21   firms out there who also have copy cat litigation going on and

22   there's obviously --

23           THE COURT: Two more besides these?

24           MR. THOMAS: These two, correct.  And there's also --

10:25AM   25           THE COURT: I'm sorry, let me just -- two more in

1 | addition to the *Cole* and *Pickle* actions?

2 |       MR. THOMAS: There's two different law firms.  I believe

3 | one of them is in the *Pickle* action; another one is separate.  Am

4 | I getting that right?

10:25AM 5 |       MR. SHAULSON: There are in addition to *Pickle* and *Cole*,

6 | there are two other actions that purport to bring claims on behalf

7 | of Chase underwriters.  The *Ebert* action, which is located in

8 | Texas; and another California action which has been brought by

9 | Dostart Clapp, which is the firm that Zach is here representing.

10:25AM 10 |       MR. THOMAS: This goes to show there's other people out

11 | there and, in fact, of course, there's putative class members.

12 |       It serves everyone's interest that those objections be

13 | heard at one time in one forum and nobody gets a jump start on

14 | this, no one tries to -- no one tries to put in some objections

10:26AM 15 | now and have them partially ruled on without an opportunity for

16 | people to be heard.

17 |       So the rules envision there's a proper time for those

18 | objections, and that's later.  I understand they're saying they're

19 | going to object at that point.  That's their right.  But at this

10:26AM 20 | point that's not what we're here for, which is preliminary

21 | approval.

22 |       I also do think there's serious issues about standing

23 | and the ability to even object --

24 |       THE COURT: At this stage.

10:26AM 25 |       MR. THOMAS: -- at this stage.  Later there's no issues,

1   and I think to the degree there's a belt-and-suspenders approach

2   from them, listen, we want to make sure they're going to hear

3   objections, at this stage we want to get in on it.  Understood.

4           But that's not --

10:26AM 5           THE COURT: Well, their right to be heard at the fairness

6   hearing is because they represent purported class members?

7           MR. THOMAS: Correct.  And that's -- if they represent

8   people -- and who knows, they may choose to opt-out.  If they

9   opt-out, they won't be there.

10:27AM 10          There's lots of things that need to happen between now

11  and then, and now's just not the time.  The part of the -- and the

12  other thing with it is not only this copy cat litigation, this has

13  already been litigated, if this case had gone to the MDL panel and

14  the case had been consolidated with Your Honor or some other

10:27AM 15  judge, then of course everybody would need to be a part of this

16  process.

17          But the MDL panel has already ruled the proper procedure

18  for this is for them to object as the rules specify when the time

19  for objections is to be heard when everything can be given careful

10:27AM 20  consideration.

21          THE COURT: Was anybody before the MDL panel besides the

22  *Cole* and *Pickle* people?

23          MR. THOMAS: *Ebert* was as well, and I believe --

24          MR. SHAULSON: *Ebert* had submitted papers that weren't as

10:27AM 25  active as some other counsel were, but they were before the panel.

1    So, yes, all counsel in the constituent copy cat cases were before

2    the MDL panel.

3              THE COURT: All right.

4              MR. THOMAS: I think, Your Honor, there are serious due

10:28AM   5    process problems with hearing objections and making a

6    determination on objections piecemeal without everyone being

7    present, without a complete record at a premature point in the

8    proceedings.

9              In terms of the notice, I think the only objection here

10:28AM  10   that relates to the notice is whether the other actions should be

11   mentioned.  They shouldn't be for a couple of reasons.

12             One primarily is because under the MDL panel's decision,

13   they're not consolidated.  These aren't the same cases.  And the

14   appropriate time, as another court has already opined, the

10:28AM  15   appropriate time for those objections to come in is not now, but

16   later.

17             Second of all, these other cases, because they are copy

18   cat, follow-on litigation, they all basically stay in suspended

19   animation with virtually nothing having happened in them.

10:28AM  20   Therefore, I don't know that it really does anybody any good to go

21   find out that there's been a complaint filed elsewhere.

22             Again, there will be plenty of time for that to happen

23   in the objection process, but it's important that everyone be on

24   the same page, everyone from a due process perspective, and from a

10:29AM  25   procedural perspective receive notice and know what they can do,

1  and now is not the time.

2      This issue has been litigated.  Now's not the time to go

3  over this.  This notice of $42 million settlement should go out to

4  folks so they know what's going on, then we can be back in front

10:29AM  5  of your Your Honor and everyone will have the right to put forth

6  their positions.

7      THE COURT: The notice is, and the nature of the notice

8  is something that's often litigated and it seems to me that's a

9  not insignificant thing.

10:29AM  10      Mr. Swartz in his letter cites a case which -- two

11  cases, I guess, which purport to approve a District Court's

12  issuance of a notice that did contain references to two other

13  actions.  Now, I haven't had time really to research the issue to

14  any extent, and you haven't had time to respond, but --

10:30AM  15      MR. SHAULSON: Your Honor, I can certainly address that

16  if you wanted me to.

17      THE COURT:  Well, I guess I'm just wondering if it makes

18  some sense to have everybody -- if you can't agree on the notice,

19  to have everybody submit something to me in a short period to

10:30AM  20  assist the Court in deciding whether the notice should be as the

21  parties have agreed, or contain some additional provisions.

22      Because I think it's probably -- let me just -- I mean,

23  it's probably to the benefit of everybody that the notice be

24  complete and not subject to later attack.

10:30AM  25      What's your reaction to that?

1         MR. THOMAS: Your Honor, there have already been --

2    there's been extensive letters and things that came into this

3    Court on this issue.  They've examined this agreement very

4    carefully.  I am confident if they had any problems with the

10:31AM  5    notice, other than mentioning their actions, we would have heard

6    of it.  We heard just about everything else, so I don't know

7    there's really --

8         THE COURT: You say you've heard "everything else."  I

9    mean, the proposed settlement was filed, like, a day ago, and the

10:31AM  10   letters I got yesterday.

11        So it doesn't seem to be a great length of time for

12   folks to consider this unless the proposed settlement was

13   submitted to people before it came here.

14        MR. THOMAS: My point is, though, they responded to --

10:31AM  15   they attacked what was submitted to you on a number of fronts and

16   there was only one issue with the notice.  I assume if there was

17   problems with the notice, they would have focused on those because

18   that is the only really appropriate thing to be focusing on at

19   this stage of litigation, and the only issue is whether the other

10:31AM  20   litigation should be mentioned.

21        THE COURT: I will ask Mr. Smith when you're through as

22   to why that's important, but I'll let you finish.

23        MR. THOMAS: Yes.  So I don't think there's -- I mean,

24   we've been over this, this follows the FJC guidance in terms of

10:32AM  25   what should be in there.  I don't think the other cases are

1  important, and that's the only issue we have that's been raised in

2  terms of notice.

3       I also think it is not appropriate to vet the notice

4  with multiple counsel in related actions.  If every notice that

10:32AM  5  was sent out in a class action settlement you had to go out and

6  find people who might be interested in the notice and get their

7  opinions on it, it would really frustrate the settlement process.

8       THE COURT: We don't have to go looking, they've sort of

9  come here.

10:32AM  10       MR. THOMAS: But the point is should only they be heard?

11  And why should they be heard?  Because they sent in a letter?

12  And, again, send in a letter not challenging the notice.

13       So I don't know that sending in letters not challenging

14  the notice entitles them to spend time going over the notice.  I

10:32AM  15  think it's just -- there's nothing wrong with the notice -- again,

16  leaving aside, which I think is fine to do -- the issue of the

17  cases, there's nothing wrong with the notice.

18       They don't -- it barely sets forth what the settlement

19  is.  They just don't like it or they claim they may not like it

10:33AM  20  now.  I just don't know there's -- given the fact there's not

21  issues with it, that that need to be rehashed.

22       THE COURT: I take it from your comments that you both

23  are not willing to make the change in the notice to notify folks

24  that there are these other actions pending?

10:33AM  25       MR. SHAULSON: Judge, can I just address that point?

1          THE COURT: Either one of you.

2          MR. SHAULSON: There are two cases that are cited by

3  Mr. Swartz in his letter.  The *Wal-Mart* case, which approved the

4  settlement despite the fact that other pending litigations were

10:33AM  5  not mentioned in the notice.

6          While they did have a footnote on the point, the Court

7  said the fact that the release was cited and quoted in the notice

8  was absolutely sufficient.

9          What's distinguishable about *Wal-Mart* from this case is

10:34AM  10  that in none of the other actions in this case has there been a

11  certified class.  There was a certified class in the *Wal-Mart*

12  case, so it would be -- it would make sense to notify individuals

13  who already received notice that their claims in that case that

14  they've received notice about were going to be extinguished.

10:34AM  15          That's not the case here, so there's no necessity to

16  advise class members about some case they've never heard of.  All

17  it would do is create confusion.

18          So it's actually against the class members' interest to

19  provide them notice of another case that they've never heard of,

10:34AM  20  only to confuse them.

21          THE COURT: Because *Pickle*, *Cole* or *Ebert* haven't been

22  certified as a collective or a class action?

23          MR. SHAULSON: Correct.  And the other case he cites, the

24  *Churchill* case, doesn't say anything about the appropriateness of

10:34AM  25  providing notice of other related actions.  All it does is mention

1   that, in fact, a notice had been sent that contained that

2   information.  It doesn't endorse that principle at all.

3         THE COURT: Well, this was sent to us at 9 o'clock last

4   night and I have not done the research that you apparently have

10:35AM  5   done, so....

6         But I guess Mr. Swartz, in submitting the letter to me,

7   is not here to speak for himself, but requested in his final

8   paragraph that I postpone the hearing.  And if so, that he on

9   behalf of his folks want to supplement his letter by further

10:35AM  10   submissions.

11         And the only thing he did mention in that paragraph

12   about the notice was if I decided to forge ahead, that I do direct

13   that the notice contain references to these other lawsuits.  There

14   didn't appear to be -- at least in his two-page letter -- anything

10:36AM  15   else that he found to be untoward about the notice.

16         MR. SHAULSON: And why, Judge, would an objector class

17   counsel filing a copy cat action want to provide notice of their

18   own action?  So that they could solicit objectors and solicit

19   opt-outs, which is not the business of the Court.

10:36AM  20         The Court shouldn't be -- if the Court approves the

21   settlement as fair, it shouldn't be in the business of soliciting

22   objectors or opt-outs for class counsel who have an ulterior

23   interest.

24         THE COURT: No, the Court's obligation is to make sure

10:36AM  25   that class members are fully apprised of what's being suggested

1    here so they can exercise their rights, whether that means to get

2    in or to get out.

3            I guess, Mr. Smith, I would be interested as to why

4    telling potential people that there's some lawsuit in California

10:36AM    5    and Texas and down in New York City, why that's of any moment?

6            MR. SMITH: Because their substantial rights are being

7    affected by this settlement.  The fact that --

8            THE COURT: But that's -- I'm sorry for interrupting, but

9    that's true regardless of whether you notify them that there are

10:37AM   10    other actions pending.

11            I mean, why -- I think Mr. Shaulson's suggestion that it

12    could cause confusion I think makes some sense.  Telling them

13    there are another three actions, what are they supposed to do with

14    that?  They got no notice about those actions, they don't know

10:37AM   15    anything about it.

16            Go ahead.

17            MR. SMITH: Well, Your Honor, first of all, let me step

18    back for a minute.  There are substantial rights being litigated

19    in these other forums.  There's no ulterior motive other than --

10:37AM   20            THE COURT: They sound very similar to what's being

21    litigated here.

22            MR. SMITH: They are very similar to what's being

23    litigated here.  There are some substantial differences, but there

24    are substantial rights that are being affected by this case.

10:38AM   25            THE COURT: Let me interrupt you, and I'm sorry I keep --

1    a perk judges have is to be able to interrupt people, until we get

2    home.

3            I lost my train of thought.  Oh, the proposed

4    settlement, as far as I know, was just disclosed Thursday or

10:38AM   5    Friday, so --

6            MR. SMITH: Friday night.

7            THE COURT: -- I wonder if everybody's had enough time to

8    really digest that to see if there are really substantive problems

9    that really do affect adversely people litigating in California

10:38AM   10    and Texas and the City?

11            MR. SMITH: Your Honor, that really is our major thrust.

12    We have been trying for a period of time to get information about

13    what was going on with this case.

14            Friday night at 9 p.m. is when the settlement agreement

10:38AM   15    was filed, although it did not include all of the schedules that

16    were alluded to, which were filed last night.

17            This train is moving very quickly and counsel are

18    scrambling to try to slow things up so that we can fully analyze

19    the settlement and make appropriate responses.

10:39AM   20            We have noticed in the short period of time some very

21    substantial problems with the substantive provisions of the

22    settlement agreement.  I think it's appropriate for Your Honor to

23    consider those, you know, I think we should be -- we have a

24    substantial right to participate, and we fully briefed that in

10:39AM   25    terms of intervention, but certainly I think it's appropriate to

1  hear counsel for these other cases to assist in moving this

2  process forward.

3      Some of the concerns that we noted that Your Honor even

4  pointed out, without finishing the next -- what we think is the

10:40AM  5  next sentence is that, yes, the primary purpose at this point,

6  Your Honor, or one of the primary purposes is to assure that the

7  proposed settlement is in the range of what would be reasonable,

8  what could be approved.

9      Given the record, I don't think that's possible because

10:40AM  10  nobody knows -- there's nothing that discloses what is the total

11  exposure of Chase.  And that becomes even of more concern because

12  of a substantial difference in the *Cole* case from this case, which

13  are the state law claims which will be released.  Those claims

14  haven't been -- although they will be released, they have not been

10:40AM  15  litigated in this case.  We don't know what their value is.

16      They include, for instance, Your Honor, wage claims

17  under a very favorable state statute for these -- for the

18  California plaintiffs.  It includes meal and rest period claims

19  under the California law, which can be extremely costly.  It

10:41AM  20  includes business expenses that the California statute requires to

21  be reimbursed.

22      THE COURT: I take it from your comments that's just sort

23  of preface to what you want to raise in a couple of months.  You

24  don't suggest I have to deal with that now, do you?

10:41AM  25      MR. SMITH: What I'm suggesting, Your Honor, is that if

1  this settlement, this proposed settlement and the approval process

2  continues, by the time we get to the fairness hearing this egg is

3  going to be so scrambled that it's going to be extremely difficult

4  to go back and fix it.

5  I don't know how, without these issues being dealt with

6  now, how there's going to be a -- how this is ultimately going to

7  be approved.

8  THE COURT: This happens in every case where there's a

9  preliminary approval and then it goes out to be commented on,

10  whether it's a month from now or two months or three months or

11  five months.

12  I mean, the Court, if it decides additional time is

13  necessary for individuals to weigh in, that's sort of standard.

14  MR. SMITH: That's true, Your Honor.

15  THE COURT: The train is moving, but it's not moving at

16  the lightening speed you suggest.

17  MR. SMITH: Well, we got papers 9 o'clock on Friday night

18  for an appearance Tuesday in Rochester.  Those wheels of justice

19  are moving quickly.

20  But my point is, Your Honor, we believe that this

21  proposed settlement is fatally flawed.  We don't think, Your

22  Honor, that it can be moved forward for some of the reasons that

23  we proposed now.

24  Even if we're not here as intervenors, certainly, Your

25  Honor, bringing this forward to the Court as an amicus we think is

1   appropriate and we would like, and Mr. Swartz would like, and I

2   believe the counsel in the other cases would like the opportunity

3   to submit to Your Honor the very important concerns that we

4   raised.

10:43AM   5         There's substantial law to the effect, for instance,

6   that you can't waive claims that weren't litigated, and that's one

7   of the things that's being waived here by the release.

8         THE COURT: Well, the problem is that I have two people

9   standing before me who litigated this case for a decade, the

10:43AM  10   plaintiff and the attorneys for the bank.

11         You know, the history of this litigation is well-known

12   to all.  They both think, presumably after arm's length

13   discussion, experience counsel on both sides, that this is a good

14   deal.  Obviously the rules require that their say so isn't enough;

10:44AM  15   that the Court has to decide that.

16         So everything you're telling me, it just seems like it's

17   not grist for today; it's something we do tomorrow --

18   metaphorically tomorrow, in the future -- without prejudice.

19   But -- and I don't think Mr. Thomas suggests that anything you've

10:44AM  20   just said can't be broached at a later time.

21         So I don't --

22         MR. SMITH: Well, part of the problem, Your Honor, is

23   that without some of this missing information or that dealing with

24   some of the questions that I've raised, if this proposed

10:44AM  25   settlement goes out in this forum, and the notice to the class

1  members goes out summarizing it, the class members will not have

2  adequate information to determine whether they should opt-in or

3  not.  That's a very basic problem.

4        THE COURT:  You say that, but there may be a whole bunch

10:45AM  5  of them that are quite comfortable with the notice they get and

6  elect to proceed or decline to opt-out.

7        MR. SMITH: They may be comfortable with the notice

8  because of what's missing in the notice which is, for instance,

9  what is the total exposure that Chase has.

10:45AM  10        THE COURT: You mean how much money do they have or --

11  what's that mean?

12        MR. SMITH: How much money would mean -- less than they

13  did yesterday.  That means what is the exposure under this

14  lawsuit?  What are the claims?  Is their exposure $50 million?  Is

10:45AM  15  it $100 million?  Is it $200 million?

16        That would seem to me to be an important factor for

17  class members to evaluate when determining whether they're

18  settling.  They might look at it and say, well, yeah, their

19  exposure is five times what they're settling, but there are these

10:46AM  20  factors that convince me that's appropriate.

21        They might also look at it and say, well, wait a minute.

22  I'm getting 10 cents on the dollar, that doesn't seem appropriate.

23        THE COURT: Well, so they opt-out.

24        MR. SHAULSON: That's certainly not required, Your Honor,

10:46AM  25  and I would defy counsel to provide settlements that they have

1   entered into which sets forth the total exposure in the notice.

2   I've never seen one.

3          THE COURT: If you mean "exposure," if you're talking

4   about the strength or weaknesses of the case, I think most

10:46AM  5   settlements discuss that that, you know, there are issues that

6   speak in favor of plaintiff, but there are possible defenses and

7   the cost of litigation.  I mean, all that is pretty standard fare

8   for advising plaintiffs of the risk factor here.

9          So I don't think this case is any different in that

10:46AM  10  regard than many of the other cases I've had, and I don't know --

11         MR. SMITH: Your Honor, I just point out --

12         THE COURT:  Let me just --

13         MR. SMITH: I'm sorry.

14         THE COURT: -- before I forget the thought.  I don't know

10:47AM  15  how many folks are in the *Cole* action or the *Pickle* action,

16  whether -- if that's even been determined yet, how many opt-ins or

17  named plaintiffs there are in those cases.  Maybe it doesn't

18  matter.

19         I mean, this case, the case before me, I suspect is

10:47AM  20  pretty well-known and publicized among employees of the bank

21  because it has been litigated.  I think the original understanding

22  was maybe they would pick a test -- I think it was pitched to me

23  as sort of a test case, and the Court made its summary judgment

24  motion ruling and the Circuit, of course, disagreed and sent it

10:47AM  25  back and here we are.

10:48AM

1          Well, Mr. Smith, assuming that the Court does what

2     Mr. Thomas, and I think Mr. Shaulson, agree should be done and

3     that is to allow class members either individually or through

4     counsel to object at the fairness hearing, is there any need for

5     the Court to resolve the motions to intervene?

6               MR. SMITH: Well, Your Honor --

7               THE COURT: Let me just finish the thought.

8               MR. SMITH: I'm sorry.

9               THE COURT: Does that give you any better rights to raise

10    the things you want to raise?  I suggest it doesn't, but I'm happy

11    to try to be convinced.

12              MR. SMITH: Well, Your Honor, one of the problems that we

13    have had that I've mentioned is finding out what, in fact, is

14    going on in the case.  Being a party as an intervenor would give

15    us more access to that information.

16              THE COURT: Well, I mean, what's going on in the case I

17    think is now contained in the four square document called the

18    settlement agreement that is being presented.

19              So Mr. Lingle (sic), Mr. Shaulson, relative the motions

20    to intervene, should they be denied?  Denied as moot?  Should I

21    rule on them?

22              Obviously, if I rule in your favor, I guess you're not

23    opposed to that, but -- I mean, Mr. Smith has suggested there

24    might be other rights that folks might have if they were

25    intervenors.  I understand your argument that this is sort of the

1   second bite of the apple, having argued for consolidation before

2   the panel, and the Court should not sort of reopen this at this

3   stage, but --

4           MR. SMITH: Your Honor, might I ask if you would permit

10:50AM  5   Mr. Dostart to comment on the intervention motion issue?

6           THE COURT: Okay.

7           MR. DOSTART: Thank you, Your Honor.

8           THE COURT: How did you get here from California?

9           MR. DOSTART: Unfortunately for my girlfriend and myself,

10:50AM 10   I flew out yesterday.  And she would be upset if I didn't do my

11   best up here, so I'm going to go ahead and --

12          MR. THOMAS: There's nothing like a Valentine's Day in

13   Rochester, New York.

14          THE COURT: We don't --

10:50AM 15          MR. SHAULSON:  My wife wasn't happy that I was here

16   yesterday either.

17          THE COURT: You traveled across the country on the red

18   eye, but --

19          MR. SMITH: I want to point out you guys did this.

10:50AM 20          THE COURT: I digress.  Go ahead, Mr. Dostart.

21          MR. DOSTART: Thank you, Your Honor.  Going back to what

22   Jules mentioned regarding the potential exposure of Chase, the

23   reason that that's directly applicable to the hearing today is

24   because of a case called *D'Amato vs. Deutsche Bank*, which we cited

10:51AM 25   in our opposition to this hearing today, and the cite for Your

1   Honor is 236 F.3d 78 at --

2           THE COURT: That's in your papers?

3           MR. DOSTART: Correct, Your Honor, a Second Circuit case

4   from 2001.  And what the Court held is that the District Court

10:51AM   5   should look at whether or not a proposed settlement is within the

6   range of possible approval.

7           And one factor that courts must consider is a potential

8   exposure of the client, and the reason that's important is because

9   once this train leaves the station here today, meaning if Your

10:51AM   10   Honor preliminarily approves the settlement, it's very difficult

11   for us to get information regarding the potential exposure of

12   Chase.

13           So, for instance --

14           THE COURT: What does exposure mean?  You mean -- I

10:52AM   15   assume you don't mean just money in the bank?  I assume you mean

16   the likelihood that plaintiffs might prevail and make more money?

17           MR. DOSTART: I'm sorry, Your Honor, yes, that's

18   precisely correct.  Let me explain that in more precise terms.

19           What we mean by "potential exposure" is if all of the

10:52AM   20   claims that Chase is purporting to release under their settlement

21   agreement were actually released, what the value of those claims

22   would be.

23           Now, given it's an estimate, and given that it's a very

24   rough approximation, that is still something that courts must

10:52AM   25   consider when preliminarily approving a settlement, the range of

1   exposure, and it's completely absent from the proposed settlement.

2          There's nothing in there about what sort of exposure

3   under the multitude of state law claims, and I'm primarily

4   concerned with the California state law claims.

10:53AM   5          THE COURT: Why can't you tell me all that at the

6   fairness hearing?  I mean, lay out all your objections at that

7   point?

8          MR. DOSTART: For one very simple reason, Your Honor: We

9   do not have the facts to make an evaluation of this settlement

10:53AM   10  because of the dearth of information in the preliminary

11  approval -- preliminary settlement documents.  There's nothing in

12  there.

13         All we know is that there's 5,200 class members; it's a

14  $42 million settlement; and there's a bunch of claims being

10:53AM   15  settled.  That's all we know.

16         We have no idea of the number of underwriters in

17  California; of the potential exposure of their state law claims,

18  which we have alleged, and which were not alleged or litigated in

19  the *Davis* or *Whalen* case.

10:54AM   20         Your Honor, there's simply no way for us to make an

21  evaluation for our class members as to whether or not it's fair

22  and they should opt-in or opt-out.  We have no way to tell them or

23  advise them as to what's fair because there's nothing in their

24  papers.

10:54AM   25         THE COURT: Well, it sounds like you think you have some

 1  right to wade in and engage in discovery and do all the things

 2  that Mr. Thomas and Mr. Shaulson have been doing here, which

 3  doesn't seem to be --

 4       MR. DOSTART: Your Honor, I do not want to appear, nor

10:54AM  5  are we seeking, to ruffle feathers.  All we would like to do is

 6  get discovery as to the California individuals: The work weeks in

 7  California; the number of employees in California; and the

 8  exposure that Chase -- meaning the amount of money that Mr. Thomas

 9  and Chase have estimated the claims may be worth -- for the

10:55AM  10  California claimants.

11       That's all we need.  It's very limited discovery.  I do

12  not think it would take more than four weeks.  I'm sure it's

13  already been done by Chase, we hope, for this preliminary approval

14  hearing today.  It's just not in the papers.

10:55AM  15       THE COURT: And you haven't done any of that in your

16  separate lawsuit?

17       MR. DOSTART: We've tried, but it's very difficult

18  because Chase has been making motions to dismiss our case.  And we

19  entered into a stipulation to stay it in light of the MDL's

10:55AM  20  hearing and in light of today hoping that I could come to Your

21  Honor and ask Your Honor to allow us to get that information.

22       We think it would be most efficient if Your Honor

23  permitted us to obtain that information as opposed to having to

24  litigate the case in the Central District of California in front

10:55AM  25  of Judge Carter and ask for it there.  There's really a lot of --

1        THE COURT: So if I grant it for you, I should grant it

2   for the *Cole* people down in the City, and the *Ebert* people in

3   Texas, and probably a bunch of others that might pop up?

4        MR. DOSTART: No, Your Honor.  And the reason why the

10:56AM   5   answer to that is no is because, number one, there are only --

6   just to clarify a little bit of the water here, there are really

7   only the *Cole* case, which is ours, and the reason that we're here

8   today is because of California.

9        Then there's the *Pickle* case, and the *Pickle* case has a

10:56AM   10  New York class representative, which Mr. Thomas has already

11  litigated in front of Your Honor for a decade, and then a

12  California class representative.  We and the *Pickle* plaintiffs are

13  aligned in that, we care about the California class.

14       The *Ebert* case is in Texas.  Texas does not have state

10:56AM   15  rights that provide for greater or enhanced recovery under the

16  FLSA.  So there really is not a need for the *Pickle* -- for the

17  *Ebert* plaintiffs to have any further discovery.

18       So the end result of that is that the only two states

19  that are represented by any party in this action that provide for

10:57AM   20  enhanced recovery are New York, which has a six year statute of

21  limitations for wage claims, which Mr. Thomas has litigated; and

22  California, which I am here today to protect.

23       MR. THOMAS: We have litigated California as well, we've

24  litigated them at a national level, and the issues at the state

10:57AM   25  level are also being resolved.

 1                THE COURT: Let Mr. Dostart finish --

 2                MR. THOMAS: Sorry.

 3                THE COURT: -- then you can.

 4                MR. DOSTART: And one potential problem that we see with

10:57AM   5   this proposed settlement is that there is no California class

 6   representative.

 7                Any time a nationwide case is settled for states that

 8   have laws that are far superior to the federal laws, it's

 9   important that they're adequately represented.  And the

10:58AM  10   Second Circuit held in *Super Spuds*, which is a funny name of a

11   case, but an important case, that you cannot settle state law

12   claims if there's not a class representative that has those

13   claims.

14                Now, for the first time today, Your Honor, Mr. Thomas

10:58AM  15   has represented to Your Honor that he has litigated California

16   claims, although in the fifth amended complaint filed Friday at

17   9:00 p.m. Eastern Time, there's no California class representative

18   and there's never been a California class representative in any of

19   the other four prior complaints.

10:58AM  20                As far as we know, Your Honor, it may have been

21   discussed in mediation in front of Mr. Michael Dickstein, but it

22   was not litigated, and the claims were not alleged, in fact, in

23   front of Your Honor because as Your Honor has stated, it was

24   litigated on an individual test plaintiff basis with what we

10:59AM  25   understand New York State law and the federal law being the two

1  most important claims alleged, which in turn, Your Honor, brings

2  me to my motion to intervene, which I think does need to be ruled

3  on.

4       The motion to intervene is really -- if you look at that

10:59AM  5  motion in terms of addressing the standing issue that Your Honor

6  raised this morning and then again into the substantive issue as

7  to the discovery that we've requested, it's very important, we

8  believe, that it be addressed because we do have standing as

9  California claims are being settled, and substantively we need

10:59AM  10  further discovery whether it's simply Chase providing the work

11  weeks, the number of California employees or some limited amount

12  of discovery regarding California, but we do think that the motion

13  to intervene does need to be addressed.

14       MR. THOMAS: Your Honor?

11:00AM  15       THE COURT: Brief response.

16       MR. THOMAS: Briefly, it's clear the reason they want to

17  intervene is to conduct discovery.  That opens the flood gates to

18  everyone.  They will say I have claims under FLSA, state law,

19  whatever, that needs to be looked at.

11:00AM  20       As you made clear in the intervention papers, discovery

21  is not permitted for class settlements.  The Manual For Complex

22  Federal Litigation makes that clear, the cases make that clear and

23  obviously it's got to be the rule because as Your Honor

24  identified, if you're allowed discovery regarding a class

11:00AM  25  settlement, then all you do is just relitigate the case again and

1  again and again and again to test adequacy and fairness.

2          So I think on its face their request to intervene for

3  discovery is totally inappropriate and shows where they're going,

4  and it's just not correct.

11:01AM  5          There will be the settlement agreement that needs to be

6  supported at the approval hearing, they will have a chance to

7  object, as will everyone else at the same time, and all of these

8  issues can be handled at that point.

9          And I just -- at this stage the class needs to know

11:01AM  10  what's going on; they will get the notice.  And instead of

11  scrambling the egg now, let's save it until the final approval

12  hearing when we can deal with these issues all at one time and can

13  be carefully briefed and worked out.

14          MR. DOSTART: One final thing regarding the notice, Your

11:01AM  15  Honor, that I failed to mention earlier, and that is simply the

16  importance of the notice.

17          Mr. Nelson is saying that the notice needs to get out as

18  quickly as possible, but they seven months ago announced that this

19  case was settled, did nothing or filed nothing in the intervening

11:01AM  20  seven months, and now are saying that the notice needs to be

21  ordered to go out on two business days' notice to parties that

22  have been excluded from the settlement from over a year and a half

23  ago.

24          And as far as the discovery goes, we're not asking for

11:02AM  25  unfettered discovery.  It's simply three things: The number of

1   employees in California; the average workweek in California; and

2   the average salary in California.  That's it.

3        MR. SHAULSON: Your Honor, if we could just come back to

4   a very basic point?  And that is the MDL heard from all the

11:02AM  5   parties, and the MDL said the appropriate remedy is to address all

6   of these issues before Your Honor at the final hearing at the

7   final approval process.  Any order other than that would be

8   plaintiffs attempt or *Cole* plaintiffs attempt to do an end run

9   around the MDL order.

11:02AM  10       THE COURT: All right, I think we've covered that.

11            I'm not sure I brought all the papers out on the bench.

12   Do I have the proposed notice here?  The proposed notice?

13            MR. SHAULSON: Yes, Your Honor.

14            MR. DOSTART: Proposed notice is in the exhibit.

11:03AM  15       THE COURT: I assume it is.  I just --

16            MR. SHAULSON: Yes.

17            THE COURT: What exhibit is it?

18            MR. THOMAS: Here you go, Your Honor, here's the --

19            THE COURT: Is it in the papers?

11:03AM  20       MR. THOMAS: It is in the papers.  It's Exhibit --

21            MR. SHAULSON: Yes, it's Exhibit 2.

22            THE COURT: To what?  Mr. Thomas's affidavit or --

23            MR. SHAULSON: I believe so.  I think it's Exhibit A, and

24   then Exhibit 2 as part of Exhibit A, I believe.

11:03AM  25       THE COURT: Looks like I do have it up here.

1          THE CLERK: You don't.

2          THE COURT: I don't have it up here.  Well, this is the

3   order, not the notice.  Well, if you say it's in the papers, I

4   believe you.  I just --

11:04AM   5          MR. DOSTART: Your Honor, if you'd like, we're happy to

6   discuss some of the deficiencies in this notice.

7          THE COURT: Let me ask another question here, which I

8   think sort of may not be directly relevant, but if the Court were

9   to grant intervention, would you be seeking an application for

11:04AM   10  attorney's fees as part of the settlement?

11         MR. DOSTART: To be completely honest, Your Honor, I do

12  not know the answer to that.  However --

13         MR. THOMAS: To be completely honest, I do know the

14  answer to that, Your Honor.

11:04AM   15         THE COURT: Well, come on, one at a time.  I assume you

16  didn't travel here across the country just to enjoy our weather?

17         MR. DOSTART: Well, unfortunately, that's a little above

18  my pay grade.  I'm a paid associate of the firm.  The partner is

19  Jim Dostart, and that's my father.  My name is his last name, but

11:05AM   20  I'm an associate, I work for Jim, and so I'm paid regardless of

21  whether or not I win here today or not.

22         So what I can tell you is that I do care about the

23  people in California that whose rights are being affected today.

24  And I can tell Your Honor that if limited intervention for the

11:05AM   25  sole purpose of discovery into the California class members'

1 | claims that are being extinguished --

2 |          THE COURT: Let me try to -- I mean, if you were allowed

3 | intervention, leaving aside issues of largess, wouldn't you be

4 | entitled to seek fees?

11:05AM 5 |          MR. DOSTART: I think the way it works, Your Honor, is

6 | that -- and this has happened to me.  I've been in Mr. Thomas'

7 | shoes where an individual comes in and asks to be part of the

8 | settlement and has a right that's being affected, and intervention

9 | is granted and that person seeks attorney's fees.

11:06AM 10 |          The way I've seen it work is that, for example, Your

11 | Honor grants intervention, the parties determine that California

12 | underwriters are effectively releasing claims worth five times

13 | that of underwriters in other states per individual on a relative

14 | basis.

11:06AM 15 |          Chase then says, well, it looks like these *Cole*

16 | plaintiffs are right, we should increase the settlement from

17 | 42 million to 45 million.  Then there is a difference in what was

18 | originally agreed to and what was later agreed to, and then we

19 | would ask for attorney's fees from that difference.

11:06AM 20 |          If it turns out that Mr. Thomas and Chase have

21 | adequately provided for every claim that they're extinguishing

22 | here today, then our clients would simply opt-in to the settlement

23 | and there would be no -- there would be no application for

24 | attorney's fees.

11:07AM 25 |          THE COURT: Okay.

1          MR. THOMAS: Your Honor, I do think attorney's fees and
2    discovery are the reason for the intervention.  They have rights
3    as intervenors, but I think the other thing to keep in mind is the
4    settlement.

11:07AM  5          Mr. Dostart has referred several times to claims being
6    extinguished, his clients being extinguished.  All of his clients
7    have the right to opt-out.  If he thinks he can go get a better
8    deal -- which he won't and we can explain why, but if his clients
9    think they can get a better deal in California and he wants to get
11:07AM 10   attorney's fees on that, he wants to have discovery on that, he's
11   totally free to do that.

12          They will only stay in this case if he likes the deal.
13   If he thinks he can get a better deal elsewhere, he can.  So
14   there's no extinguishment of rights, and that's the reason there's
11:07AM 15   no need for intervention because he can take everyone he currently
16   represents and go represent them in California, get all the
17   discovery he wants, do whatever he wants.  There is nothing -- no
18   need for discovery here, and there's nothing being extinguished.

19          MR. DOSTART: That is not true, Your Honor, we don't know
11:08AM 20   the deal.

21          MR. THOMAS: The deal is -- the deal is out there.

22          THE COURT: Read it.

23          MR. DOSTART: We don't know how -- what's allocated to
24   the California class members.  We don't have the right to
11:08AM 25   discovery in our case because -- we've stated why in today's

1  hearing.

2          MR. THOMAS: There's a very clear formula on how things

3  are allocated to California, which is in the settlement agreement.

4          We have also pulled all of the firm's agreements from

11:08AM  5  Mr. Clapp's cases.  We're providing a better recovery for his

6  clients in California.

7          THE COURT: Whose case?

8          MR. THOMAS: Mr. Clapp's, his --

9          MR. DOSTART: My boss.

11:08AM  10          MR. THOMAS: His boss.  All of his law firm's cases we

11  have pulled.  They're getting a better recovery under the terms of

12  this deal in terms of the California multiplier and the California

13  recovery then any settlement that he's ever gotten for his

14  clients.

11:08AM  15          MR. DOSTART: That's not true, Your Honor.  I've looked

16  at those terms as --

17          MR. THOMAS: I'll be glad to raise those later.  This is

18  the whole reason this is not the time to get into this.

19          THE COURT: All right, all right, okay.  I think I've

11:09AM  20  heard enough, but I'll give each of you about four minutes to say

21  anything else you want to say.  I'm going to reserve, I'm not

22  going to rule from the bench here today, except for one item.

23          I do have a bevy of people waiting here for other

24  matters.  I think the issues are pretty clear to me.  I don't

11:09AM  25  think it would be prudent just to rule from the bench, except for

1   one matter.  So I will reserve, but I'll give you all a brief

2   chance.

3          Mr. Shaulson, anything briefly you want to put forth

4   that we haven't covered and you don't think is in the papers?

11:09AM   5          MR. SHAULSON: I'll just say one thing, Your Honor, and

6   that is the Manual For Complex Litigation and the cases that cite

7   it repeatedly say there is a chilling effect on settlements,

8   particularly class settlements, where discovery is sought by

9   proposed intervenors, and so the courts deny intervention for

11:10AM   10  purposes of seeking discovery unless the proposed intervenors can

11  show collusion on the part of the parties to the settlement.

12         And having litigated this case for ten years before Your

13  Honor, I can say that this is -- there's no evidence of collusion.

14  Mr. Thomas and I have fought every issue in this case leading up

11:10AM   15  to the very last dotting of the I and crossing of the T on the

16  settlement agreement.  It was a hard fought fight, and absent

17  evidence of real collusion on the part of us, they're entitled to

18  no discovery.

19         THE COURT: All right, thank you.

11:10AM   20         Mr. Smith and/or Dostart?

21         MR. DOSTART: I would just say, Your Honor, that the

22  notion that we must prove collusion in order to be permitted to

23  limited intervention for a limited purpose and be provided limited

24  discovery is not true.  There does not have to be any proof of

11:11AM   25  collusion.

1      As our motion to intervene states, we have alleged that

2  our representation, meaning California class members' interests

3  representation in this lawsuit, is adequate.  That allegation in

4  and of itself is enough to meet our burden of proof regarding our

11:11AM  5  intervention of right.

6      As to the notice, I believe that it's insufficient for

7  many reasons, but one important reason is that it does not give

8  the best possible recovery that the plaintiffs could have

9  received.  In other words, what percent of the total amount of the

11:11AM  10  recovery that they could have gotten are they settling for?   And

11  it's very important that California class members know what rights

12  they have that they might be waiving in this settlement.

13      Chase reclassified all of their underwriters as

14  non-exempt in February of 2009.  There are two years of

11:12AM  15  off-the-clock claims that are being settled in this lawsuit that

16  were never litigated.  It's important that California underwriters

17  know what rights they're extinguishing.

18      That's all I have, Your Honor.

19      THE COURT: There are 49 other states, too.  You can make

11:12AM  20  the same statement about many of those that have state law labor

21  statutes as well.

22      MR. DOSTART: And I've done -- I've looked at nationwide

23  class action settlements and I can tell you, Your Honor, that

24  there are very few states -- New York, California, Illinois and

11:12AM  25  maybe two or three others -- that have more favorable laws than

1 | the federal laws.

2 |         And in this lawsuit the only state that is here today

3 | asking Your Honor for limited discovery and for a right to be

4 | heard is California.

11:13AM 5 |         THE COURT: All right, thank you.

6 |         Last word, Mr. Thomas.

7 |         MR. THOMAS: Yes, Your Honor.  The Federal Rules of Civil

8 | Procedure set up a clear process by which settlements are

9 | approved.  If the parties reach a settlement agreement, the absent

11:13AM 10 | class members are entitled to know about it and to comment on it

11 | if it is something within the general range of reasonableness,

12 | which this certainly is.

13 |         And I will echo Mr. Shaulson's comments:  This case was

14 | far from collusive.  I will say Mr. Shaulson, although always

11:13AM 15 | extremely ethical, is the most difficult, obstreperous defense

16 | counsel I've ever been against.

17 |         MR. SHAULSON: In a nice way.  I think he means that in a

18 | nice way.

19 |         THE COURT: He told me the same thing about you.

11:13AM 20 |         MR. THOMAS: He, in fact, said something like that to me

21 | on the phone the other day.  I said, well, if you're telling me

22 | that, then I will take that as a supreme compliment.

23 |         THE COURT: You've been before me enough, I know it's

24 | true.

11:14AM 25 |         MR. THOMAS: He's worse.  But this has been a very

1   difficult, long fought out battle.  There is nothing wrong with

2   the notice.  The idea that you need to put in the total potential

3   recovery, total potential recovery, I've never seen that in any

4   class notice.  I can't believe that would ever be required, much

11:14AM   5   less how you calculate something like that.

6        Assuming the worse case scenarios of worse case

7   scenarios, I don't think that's helpful information for a class

8   member.  There's nothing wrong with the notice.  The other cases

9   shouldn't be mentioned.  Total settlement amount doesn't need to

11:14AM   10   be mentioned.

11        The rest of the issues, they're putting the cart before

12   the horse.  There will come a point in time where they can object.

13   If at the objection stage they feel they didn't have enough

14   information, they can put that in as an objection if that's

11:14AM   15   correct.  It won't be, but they can opt-out or do that.

16        Now is not the time or place to do this.  The notice is

17   fair and reasonable.  It is not the time to solicit comments from

18   absent class members, particularly after the MDL has ruled the

19   appropriate approach now is for them to come in as objectors, and

11:15AM   20   they will have plenty of chance.  I'm sure we'll hear all this

21   stuff again at that point.

22        THE COURT: Two things.  Let me ask Mr. Dostart or

23   Mr. Smith:  If the Court were to give you leave to raise

24   objections or comments relative to the notice only, how much time

11:15AM   25   would you need to do that?

1           MR. DOSTART: Seven days, Your Honor.

2           THE COURT: Okay.  Mr. Swartz has weighed in with a

3    letter, and I guess we can notify him, but I don't know if you all

4    sort of work with him or not?

11:15AM 5           MR. DOSTART: We've been in contact with one of the firms

6    that is part of the *Pickle* case.

7           THE COURT: Well, I guess that shouldn't be your burden.

8    We'll notify Mr. Swartz.

9           I think whether or not the proposed intervenors have a

11:16AM 10   right to be heard relative to the notice, the Court has to make

11   sometimes tough decisions, and certainly not pro forma decisions,

12   as to what the notice should contain.

13          And I don't think there's anything improper about

14   getting input on that, so I will allow Mr. Dostart and

11:16AM 15   Mr. Smith -- not multiple objections, but one objection.

16          We will notify Mr. Swartz of that same opportunity and

17   ask that that be submitted -- you say seven days.  How about,

18   let's say, ten days?

19          MR. DOSTART: Ten days, yes, Your Honor.

11:16AM 20          THE COURT: And then should plaintiff and the bank wish

21   to respond, do you want to do ten days after that?

22          MR. THOMAS: That's fine, Your Honor.

23          MR. SHAULSON: That's fine, Your Honor.

24          MR. THOMAS: I know Your Honor is going out of town.

11:17AM 25          THE COURT: That's all right, stuff gets sent to me.

1          MR. THOMAS: Okay, fine.  We will certainly put that --

2     put those in.

3          THE COURT: Is ten days enough?

4          MR. THOMAS: Ten days is plenty.

11:17AM  5          THE COURT: All right.

6          MR. SMITH: I wonder what day of the week that is?

7          THE COURT: I can't tell you everything, Mr. Smith.

8     Today is the 15th.

9          MR. SMITH: Today is the 15th.

11:17AM  10          THE COURT: So I don't care.  Like by Friday the 25th?

11          MR. SMITH: That's fine.  I just didn't want it to be

12     like on a Sunday and it really just cuts time out.

13          THE COURT: Tell me now if you want more time, but ten

14     days?

11:17AM  15          MR. SMITH: That's fine, Your Honor.  The 25th is fine.

16     Thank you.

17          THE COURT: Then the response, let's say, by March the

18     11th.  Let me just make a note of that, notice only.

19          And we are -- our office will contact Mr. Swartz and

11:18AM  20     allow him to weigh in.  That should be all the submissions.

21          I guess I would ask counsel, Mr. Thomas and

22     Mr. Shaulson, keeping in mind that it appears that there will be

23     some issues raised about the fairness hearing, what's your

24     guesstimate as to whether we should set this two months from now,

11:18AM  25     three months from now, four months from now?  I think we have to

1 build in some time.

2          MR. THOMAS: Your Honor, there was a proposed schedule

3 that we sent in which builds in time for objections and for time

4 for a response, but it's multiple months out.  I think even

11:18AM 5 without the time now being added on to comment on, we were looking

6 at June or July.  So there will be plenty of time.

7          THE COURT: Help me again.  Is this in a proposed order?

8          MR. THOMAS: Yes.

9          THE COURT: All right.

11:19AM 10         MR. THOMAS: And I can --

11         MR. SHAULSON: It's in the proposed order, and all the

12 dates adjust based upon the preliminary approval date.

13         THE COURT: So it's so many days or weeks or months from

14 the approval date?

11:19AM 15         MR. SHAULSON: Correct.

16         THE COURT: Okay.  Well, it seems like we usually set

17 these out three or four months to allow notice to be prepared and

18 time to respond and --

19         MR. THOMAS: When does Your Honor envision having a

11:19AM 20 ruling on the notice?  Because we could try to get a new schedule

21 to set those dates from there.

22         THE COURT: I don't know.  Depends how --

23         MR. THOMAS: Fast moving trains.

24         THE COURT:  -- how lengthy your papers are and -- pretty

11:19AM 25 promptly.

1          MR. THOMAS: Okay.

2          THE COURT: So, I mean, if I need your assistance in

3    seeing if you can agree on dates, I'll let you know.  Otherwise,

4    I'll just plug in some dates.

11:19AM  5          MR. THOMAS: Your Honor, maybe what we could do is we'll

6    assume -- we could assume a preliminary approval by April 1st and

7    then set new dates and send that in to Your Honor as a proposed

8    schedule?

9          THE COURT: Don't presume anything.

11:20AM  10          MR. THOMAS: Fine, we'll wait to get the preliminary

11   approval and go from there.

12          THE COURT: Yeah, and -- I mean, I think before me I'm

13   reserving on the motion for preliminary approval; I'm reserving on

14   the nature of the notice; and I'm reserving on the motions to

11:20AM  15   intervene, and hope to decide them all.

16          MR. SMITH: Thank you, Your Honor.

17          MR. DOSTART: Thank you, Your Honor.

18          MR. SHAULSON:  Thank you, Your Honor.

19          MR. THOMAS:  Thank you, Your Honor.

11:20AM  20          THE COURT: All right, thank you, gents.  Have safe trips

21   back.

22          (WHEREUPON, the proceedings adjourned at 11:21 a.m.)

23                          *   *   *

24

25

1                      CERTIFICATE OF REPORTER

2

3          I certify that the foregoing is a correct transcript to the

4     best of my ability of the record of proceedings in the

5     above-entitled matter.

6

7     S/ Christi A. Macri

8     Christi A. Macri, FAPR-RMR-CRR-CRI
      Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25