UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL J. DAVIS, et al.,<br>on behalf of themselves and all others<br>similarly situated<br><div align="right">Plaintiffs,</div><br><br><div align="center">*versus*</div><br><br>JPMORGAN CHASE & CO., JP MORGAN<br>CHASE BANK and CHASE MANHATTAN<br>MORTGAGE CORPORATION,<br><div align="right">Defendants.</div> | Civil Action No.<br>01-CV-6492L(B)<br><br><br>Hon. David G. Larimer<br>Action Filed: 10/04/2001 |

THE *COLE* PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    THE FOLLOWING CASES DEMONSTRATE THAT THE COURT CANNOT
       PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE THERE HAS
       BEEN NO SHOWING THAT THE SETTLEMENT FALLS WITHIN THE
       RANGE OF POSSIBLE APPROVAL ................................................................2

III.   THE PROPOSED RELEASE IS OVERBROAD ..............................................4

IV.    THE NAMED PLAINTIFFS CANNOT REPRESENT THE CLASS DEFINED
       IN THE STIPULATION....................................................................................11

V.     CONCLUSION..................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>FEDERAL CASES</u>

<u>Acosta v. Trans Union, LLC</u>
243 F.R.D. 377 (C.D. Cal. 2007) ................................................. 3

<u>Amchem Products v. Windsor</u>
521 U.S. 591 627 (1997)......................................................... 7, 13

<u>D'Amato v. Deutsche Bank</u>
236 F.3d 78, 85 (2nd Cir. 2001)................................................. 2

<u>Diaz v. Electronics Boutique of America, Inc.</u>
2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) .................... 12, 13

<u>In re Prudential Securities Inc. Limited Partnerships Litigation</u>
163 F.R.D. 200, 209 (S.D.N.Y. 1995) ........................................... 2

<u>Jaime v. Std. Parking Corp.</u>
2010 U.S. Dist. LEXIS 80298, at *7-8 (C.D. Cal. July 12, 2010)............. 11

<u>Kakani v. Oracle Corp.</u>
2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007) ...................... 10

<u>Karvaly v. eBay, Inc.</u>
245 F.R.D. 71, 89 (E.D.N.Y. 2007) ............................................. 9

<u>Liebman v. J.W. Petersen Coal & Oil Co.</u>
73 F.R.D. 531 (N.D. Ill. 1973).............................................. 2, 3

<u>Morisky v. Public Services Electric & Gas Co.</u>
111 F.Supp.2d 493 (D.N.J. 2000) .............................................. 13

<u>National Super Spuds, Inc. v. New York Mercantile Exchange</u>
660 F.2d 9 (2nd Cir. 1981). ................................................. 8, 9

<u>Odon USA Meats v. Ford Motor Credit Corp.</u>
1994 U.S. Dist. LEXIS 13723 (N.D. Ill. Sept. 26, 1994) ...................... 3

<u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>
396 F.3d 96, 107 (2nd Cir. 2005)............................................... 4

<u>Weinberger v. Kendrick</u>
698 F.2d 61, 74 (2nd Cir. 1982)............................................... 3

<u>Whalen v. J.P. Morgan Chase & Co.</u>
569 F.Supp. 327, 329 (W.D.N.Y. 2008) ........................................ 12

## STATE CASES

Bright v. 99 Cents Only Stores
189 Cal.App.4th 1472, 1480 (2011) ............................................................................. 7

## STATUTES

Ariz. Rev. Stat. section 23-363 ................................................................................... 8

California Labor Code sections 200 et seq. .................................................................5

California Labor Code section 201 ............................................................................. 5

California Labor Code section 202 .............................................................................5

California Labor Code section 204 ............................................................................ 5

California Labor Code section 221 .............................................................................5

California Labor Code section 223 .............................................................................5

California Labor Code section 226 .............................................................................5

California Labor Code section 227.3 ..........................................................................5

California Labor Code section 230 .............................................................................5

California Labor Code section 232 ............................................................................ 5

California Labor Code sections 300 et seq. ...............................................................5, 6

California Labor Code section 351 ............................................................................. 6

California Labor Code sections 400-410 ....................................................................6

California Labor Code sections 430-435 ....................................................................6

California Labor Code section 450 .............................................................................6

California Labor Code sections 1171 through 1205 ...................................................6

California Labor Code section 1182.12 ..................................................................... 6

California Labor Code section 1194.2 ........................................................................6

California Labor Code section 1198 ...........................................................................6

California Labor Code sections 2698 et seq. ..............................................................7

California Labor Code section 2699(i) ...................................................................... 7

California Labor Code section 2802 ............................................................... 6, 7, 11

California Labor Code section 2804 ............................................................................. 6

Colo. Rev. Stat. 8-6-118 ............................................................................................8

12 N.Y.C.R.R. § 142-2.1 ........................................................................................... 7

12 N.Y.C.R.R. § 142-2.10 ..................................................................................... 7, 8

12 N.Y.C.R.R. § 142-2.3 ........................................................................................... 7

12 N.Y.C.R.R. § 142-2.4 ........................................................................................... 7

12 N.Y.C.R.R. § 190 et seq. ......................................................................................8

12 N.Y.C.R.R. § 191 ..................................................................................................8

12 N.Y.C.R.R. § 193 ..................................................................................................8

12 N.Y.C.R.R. § 194 ..................................................................................................8

12 N.Y.C.R.R. § 198-b ..............................................................................................8

## **FEDERAL STATUTES**

29 U.S.C. section 216(b)......................................................................................... 13

## **OTHER AUTHORITIES**

Wage Order 4-2001................................................................................................... 6

## **RULES**

Rule 23 ........................................................................................................ 10, 11, 12

## **REGULATIONS**

8 Cal. Code Regs. 11040........................................................................................... 6

I.       INTRODUCTION

Proposed Intervenors Cynthia Cole, Darin Takahashi, Sally Helmken, and Carrie Wehner (the "Cole plaintiffs") respectfully submit this supplemental opposition to the joint motion for preliminary approval filed by plaintiffs Michael Davis, et al. ("Plaintiffs") and defendants JPMorgan Chase & Co., JP Morgan Chase Bank, and Chase Manhattan Mortgage Corp. ("Chase") (collectively referred to as the "Moving Parties").

As the Court is aware, the Moving Parties filed their joint motion for preliminary approval on Friday, February 11, 2011 at approximately 9:00 p.m. EST.  Docket No. 183. Without consulting the Cole plaintiffs, the Moving Parties set the hearing on their motion for Tuesday, February 15, 2011 at 10:00 a.m., giving the Cole plaintiffs just one court day's notice of their motion.  The Cole plaintiffs filed an opposition to the motion on Monday, February 14, 2011 at approximately 12:00 p.m. EST (Docket No. 187), but because they only had a few hours to prepare their opposition, they were unable to cite the authorities discussed below, which are directly relevant to this motion.  Furthermore, the Moving Parties omitted two critical documents from the "Joint Stipulation and Settlement Agreement" ("Stipulation"): Schedule 1, which lists the underwriter positions covered by the settlement, and Schedule 2, which lists the state law claims that are being released under the settlement.  These documents were not filed until Monday, February 14, 2011 at approximately 8:30 p.m. EST, after the Cole plaintiffs filed their opposition.  Docket No. 190-1.  Upon review of these documents, it is clear that: (1) the release of claims negotiated by the Moving Parties is overbroad; and (2) the named Plaintiffs cannot represent the class defined in the Stipulation.

II.     THE FOLLOWING CASES DEMONSTRATE THAT THE COURT CANNOT
        PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE THERE HAS BEEN
        NO SHOWING THAT THE SETTLEMENT FALLS WITHIN THE RANGE OF
        POSSIBLE APPROVAL

As the Cole plaintiffs pointed out in their initial opposition brief, the Court cannot

preliminarily approve a settlement unless the settlement falls within the "range of possible

approval." In re Prudential Securities Inc. Limited Partnerships Litigation, 163 F.R.D. 200, 209

(S.D.N.Y. 1995).  One of the factors the Court must consider is the size of the settlement fund as

compared to the "best possible recovery" the class could receive at trial.  D'Amato v. Deutsche

Bank, 236 F.3d 78, 85 (2nd Cir. 2001); see also Reynolds v. Benefit National Bank, 288 F.3d

277, 285 (7th Cir. 2002) (reversing the district court's order approving a class action settlement

because court did not quantify the net expected value of continued litigation to the class).  In this

case, the Moving Parties have failed to provide the Court with any evidence on which to base a

finding that the settlement falls within the range of possible approval.

The situation here is analogous to Liebman v. J.W. Petersen Coal & Oil Co., 73 F.R.D.

531 (N.D. Ill. 1973).  In that case, the district court refused to preliminarily approve a class

action settlement because the proponents of the settlement failed to prove that the proposed

settlement fell within an acceptable range.  The court wrote:

> "[I]n the final analysis, the responsibility for determination of the
> reasonableness and fairness of a settlement proposal rests with the court.
> There is no purpose served by sending out a proposed settlement to class
> members if it does not appear preliminarily to be within the range of an
> approvable proposal.  Before going into some of the specific objections to
> the proposed settlement which lead us to conclude that it is not within that
> range, one further point in terms of the legal framework from which the
> court must view such proposals needs to be mentioned. It is a truism that
> the purpose of settlements is to avoid the expense and uncertainty of trying
> difficult issues of fact and law.  However, the primary criterion for the

2

court in evaluating the fairness and adequacy of a proposal is an informed estimate of the probabilities of both liability and damages. See State of West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (2nd Cir. 1971), cert. denied sub nom. Cotler Drugs, Inc. v. Chas. Pfizer & Co., 404 U.S. 871, 92 S. Ct. 81, 30 L. Ed. 2d 115 (1971).  Only by making such an estimate can the court decide whether the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures are worth the relinquishment of plaintiffs' claims." Liebman at 534-35.

Similarly, in Acosta v. Trans Union, LLC, 243 F.R.D. 377 (C.D. Cal. 2007), the court denied a motion for preliminary approval of a class action settlement on the ground that the settlement fell outside the range of possible approval.   The court explained its role at the preliminary approval stage: "[A] court must apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  Id. at 389 citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2nd Cir. 1982) (internal quotes omitted).  Next, the court analyzed the proposed settlement in terms of the potential value of the plaintiffs' claims in litigation.  Id. at 389-94.  The court found that the settlement was not reasonable because "the economic value of the Settlement pales in comparison to Plaintiffs' potential recovery through litigation."  Id. at 393.  Finally, the court ruled that the fact that disgruntled class members could opt out did not cure the deficiencies of the settlement. "[C]ommon sense and empirical study admonish that any belief that a significant number of class members would do so is ill-founded."  Id. at 388.  See also Odon USA Meats v. Ford Motor Credit Corp., 1994 U.S. Dist. LEXIS 13723 (N.D. Ill. Sept. 26, 1994) (refusing to preliminarily approve a settlement because "[t]he Court is simply not prepared to say, based on the evidence adduced, that the proposed settlement is within the range of possible approval").

Based on the present record, there is no basis for the Court to conclude that the settlement falls within the range of possible approval.  Accordingly, the motion must be denied.

III.   THE PROPOSED RELEASE IS OVERBROAD

Schedule 2 to the Stipulation (filed on the evening of February 14, 2011 as Docket No. 190-1, Exhibit B) lists the specific state law claims that are being released under the settlement. Reading Schedule 2 and Paragraph 1.34 of the Stipulation together, it is clear that the Moving Parties intend to release all state law wage and hour claims that exist in the class members' favor through the date of preliminary approval (or alternatively, if a class member submits a claim form, through the date of the class member's signature on the claim form).[1] These claims include claims that have arisen since Chase reclassified the underwriters as non-exempt (hourly) employees in February 2009. Under controlling Second Circuit law, a class action release may only extend to claims that are based on the "identical factual predicate" as the claims that have been alleged in the lawsuit.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107 (2nd Cir. 2005).  The factual predicate of this lawsuit has always been Chase's misclassification of underwriters as exempt employees and the resulting failure to pay them overtime.  Because the release extends beyond misclassification claims, the release is overbroad.[2]

---

[1]     Paragraph 1.34 releases "any and all state law wage-and-hour claims … by a Class Member that accrued on any date up through and including the Preliminary Approval Date, or, in the case of Class Members who complete, properly execute, and timely return the Settlement Claim Certification and Consent to Join Settlement Form, the date on which the Class Member executes the Settlement Claim Certification and Consent to Join Settlement Form, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief …."  (Emphasis added.)  Paragraph 1.34 of the Stipulation does not restrict the definition of "Released State Law Claims" to those claims that are based on the facts alleged in the lawsuit and/or the misclassification of underwriters as exempt employees.

[2]     The Cole plaintiffs have already argued in their motion to intervene that the settlement cannot encompass California and Illinois state law claims because: (1) those claims were never litigated in this lawsuit; and (2) there is no evidence that the named plaintiffs ever worked in California or Illinois, so they are incapable of representing class members in those states and releasing their claims; and (3) the California claims are not based on the identical factual (footnote continued)

For example, page 1 of Schedule 2 lists the California claims that are being released under Paragraph 1.34.  They include claims that are based on the underwriters status as <u>non-exempt</u> employees.  The "California Payment of Wages Law," California Labor Code sections 200 <u>et seq.</u>, regulates the payment of wages to all California employees, including those who are non-exempt.  Sections 201 and 202 set forth deadlines for paying terminated employees (including non-exempt employees) their final paychecks. Section 203 establishes a penalty for failing to meet the deadlines set forth in Sections 201 and 202.  Section 204 requires that non-exempt employees receive semi-monthly payments of their accrued wages.  Sections 221 and 223 prevent an employer from recovering or offsetting wages that were previously paid to an employee.  Section 226 requires an employer to provide itemized wage statements to its employees and sets forth special requirements for non-exempt employees.  Section 227.3 requires an employer to pay a terminated employee for all of his or her vested vacation time. Section 230 prevents an employer from discharging an employee for serving on jury duty. Section 232 prevents an employer from discharging an employee for disclosing the amount of wages he or she earns to other employees.  These claims extend far beyond the factual predicate of this lawsuit.

Next, Schedule 2 releases all claims under California Labor Code sections 300 <u>et seq.</u> and 400 <u>et seq.</u>  Section 300 regulates assignments of wages and generally prohibits an employer from taking deductions from an employee's wages unless the deductions are authorized in writing by the employee and are for the payment of taxes, insurance premiums, or health

---

predicate as the federal and New York claims that were asserted in this lawsuit.  Docket No. 158-1, pages 6-16.

benefits.  Sections 300(b) and (g).  Section 351 prohibits an employer from sharing in a gratuity received by an employee.  Sections 400-410 generally prevent an employer from requiring an employee to post a bond as a condition of employment.  Sections 430-435 regulate employment applications and, for example, prohibit an employer from asking an employee about marijuana convictions.  Section 450 prevents an employer from requiring an employee to patronize its business.  These claims have nothing to do with the facts alleged in this lawsuit.

Moreover, Schedule 2 releases all claims arising under California Labor Code sections 1171 through 1205.   Section 1182.12 establishes the California minimum wage at $8.00 per hour.  Section 1194.2 allows an employee to recover liquidated damages for minimum wage violations.  Minimum wage claims were never asserted in this lawsuit.  In addition, Section 1198 makes it illegal for an employer to violate any order of the California Industrial Welfare Commission ("IWC").  The IWC has established 17 different wage orders for various industries in California.   Chase's business falls under Wage Order 4-2001, "Professional, Technical, Clerical, Mechanical and Similar Occupations."  See 8 Cal. Code Regs. 11040.  In addition to regulating the payment of overtime, Wage Order 4-2001 requires, inter alia, that employers: (1) pay minimum wages and reporting time pay to non-exempt employees; (2) maintain employee records; (3) refrain from deducting from an employee's wages except in certain situations; (3) provide and maintain employee uniforms; (4) provide meal and rest periods; and (5) provide seats to employees if their job reasonably permits the use of a seat.  These claims bear no relationship to the facts alleged in this case.

Furthermore, Schedule 2 releases all claims under California Labor Code sections 2802 and 2804.   Section 2802 requires an employer to reimburse its employee for all reasonable expenses incurred in the course of his or her employment, and Section 2804 invalidates any

agreement to waive the protections of Section 2802.  Claims for unreimbursed business expenses were never litigated in this case.

Finally, Schedule 2 releases all claims under the California Labor Code Private Attorneys General Act ("PAGA"), California Labor Code sections 2698 et seq.  PAGA was adopted by the California Legislature to permit aggrieved employees to enforce the California Labor Code by bringing private attorney general actions.  Bright v. 99 Cents Only Stores, 189 Cal.App.4th 1472, 1480 (2011).  Under PAGA, an employee who is injured by any violation of the California Labor Code may bring a private attorney general action for penalties, 75% of which are paid to the California Workforce Development Agency.  Cal. Lab. Code section 2699(i).  Paragraph 1.34 would insulate Chase from any private attorney general claim arising from any violation of the California Labor Code.  This is a stunning example of overreaching by Chase as well as the failure by Plaintiffs to provide adequate representation to the California class members.[3]

However, the overbreadth of the release is not limited to California claims.  Even the release of New York claims is overbroad.  Page 4 of Schedule 2 lists the New York claims that are being released, including 12 N.Y.C.R.R. § 142-2.1 et seq.  Section 142-2.1 establishes the minimum wage for employees in New York.  Section 142-2.3 requires an employer to pay reporting time wages.  Section 142-2.4 establishes a split-shift premium of one hour of pay. Section 142-2.10 prevents an employer from taking deductions from an employee's wages, except for deductions authorized by law.  Again, these claims were never litigated in this case. Paragraph 1.34 also releases all claims under New York Labor Law sections 190 et seq.  Section

---

[3]     As the Cole plaintiffs explained in their motion to intervene, it is imperative that the California class members have separate representation to protect their interests.  See Amchem Products v. Windsor, 521 U.S. 591 627 (1997) (district court's order approving settlement was reversed because the settlement provided "no structural assurance of fair and adequate representation for the diverse groups and individuals affected").

191 establishes deadlines for the payment of manual workers, railroad workers, commissioned salespersons, and clerical workers.  Section 193 (like 12 N.Y.C.R.R. 142-2.10) prevents deductions from wages.  Section 194 prohibits an employer from paying an employee less because of the employee's sex.  Section 198-b prevents an employer from taking a "kick-back" of the employee's wages.  These claims have nothing to do with this case.[4]

Because the proposed release extends beyond claims that are based on the "identical factual predicate" as those that were litigated in this case, the release cannot be approved. However, even more troubling is that the class members are receiving <u>zero</u> consideration for waiving these additional claims. Paragraph 2.2.2 of the Stipulation provides that each Participating Claimant will receive a pro rata share of the Net Settlement Amount "based on each Participating Claimant's length of service in Work Months in a Covered Position according to JPMorgan Chase's records …."  Paragraph 1.11 states: "For purposes of this Stipulation, an individual will be considered to be employed in or to have been employed in a Covered Position only for the time period during which the Covered Position was treated as exempt from overtime by JPMorgan Chase."  Therefore, class members will receive no payment for waiving claims arising from their status as non-exempt employees after February 2009.

This case falls squarely under <u>National Super Spuds, Inc. v. New York Mercantile Exchange</u>, 660 F.2d 9 (2nd Cir. 1981).  <u>Super Spuds</u> was a class action seeking damages for the loss in value of futures contracts.  The complaint alleged claims on behalf of class members who

---

[4]     There are numerous, other examples of the overbreadth of this release.  <u>See</u>, <u>e.g.</u>, Ariz. Rev. Stat. section 23-363 (establishing minimum wage for Arizona employees; this claim is being released on page 1 of Schedule 2); Colo. Rev. Stat. 8-6-118 (conferring private right of action for failure to pay minimum wage in Colorado; this claim is being released on page 1 of Schedule 2).  The Moving Parties have made no effort to analyze or discuss the various wage and hour laws that are being released under this settlement.

had liquidated their futures contracts during a specified timeframe.  <u>Id.</u> at 17.   However, in addition to releasing claims based on liquidated contracts, the class action settlement purported to bar the class members from asserting claims based on futures contracts that had not been liquidated during that timeframe.  <u>Id.</u> at 14.  Furthermore, the class members who had held both liquidated an unliquidated contracts were compensated solely on the basis of the contracts they had liquidated; in other words, they received no compensation for the release of claims based on unliquidated contracts.  <u>Id.</u>  The district court approved the settlement, but the Second Circuit reversed, for two reasons.  First, the court held that the named plaintiffs, who possessed only liquidated contracts, were not adequate representatives of those class members who held unliquidated contracts.  <u>Id.</u> at 17.  "The named plaintiffs in a class action cannot represent a class of whom they are not a part."  <u>Id.</u> (Citations and internal quotes omitted.)  Second, the settlement was not fair and reasonable, because class members with unliquidated contracts received no consideration for the release of claims based on those contracts.  "An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class."  <u>Id.</u> at 19.  In this case, as in <u>Super Spuds</u>, class members who have claims based on their status as hourly employees after February 2009 are receiving nothing in exchange for a complete release of those claims.

Another case that is directly applicable is <u>Karvaly v. eBay, Inc.</u>, 245 F.R.D. 71, 89 (E.D.N.Y. 2007).  In that case, the plaintiffs alleged that certain representations about the use of the "PayPal" online payment system were false.  The parties agreed to a class action settlement in which all users of the PayPal system would release "any and all claims based upon any of the

laws, regulations, statutes, or rules evidenced and referenced by" the Second Amended

Complaint.  The district court refused to grant preliminary approval, in part because the release:

> "would encompass a vast expanse of potential claims that have no relation
> to the acts and practices at issue here.  As written, the release would
> constitute a waiver of claims completely unrelated to this action that could
> be brought under any of the statutes or common-law theories that are
> alleged in the Second Amended Complaint. Though mindful of the
> 'general policy favoring settlement of litigation,' the Court is forced to
> conclude that a general release that purports to strip millions of individuals
> of their rights to sue the defendants upon a wide range of offenses that
> have nothing to do with the misconduct alleged in the present action, for
> no more consideration than PayPal's agreement to make certain superficial
> changes to its website, is an offense to the principle of due process so
> egregious as to render the proposed settlement untenable even at this
> preliminary stage." Id. at 88-89.

Finally, the facts of Kakani v. Oracle Corp., 2007 U.S. Dist. LEXIS 47515 (N.D. Cal.

June 19, 2007), are strikingly similar to this case.  The Kakani case began as an FLSA collective

action and a Rule 23 class action on behalf of California employees.  The class action was based

on Oracle's failure to pay overtime due to alleged misclassification of "sales consultants" as

exempt employees.  Id. at *2.   During settlement negotiations, the parties agreed to broaden the

class to a nationwide class involving "ten or so job classifications."  Id.  Under the settlement,

class members would release all wage and hour rights under state and federal law, not just rights

to overtime pay.  Id. at *2 and 6.  The district court refused to preliminarily approve the

settlement for several reasons.  Of particular relevance to this case, the court found that release

was overbroad, characterizing the release as "a bonanza for the company."  Id. at *13.  "With a

single stroke, the company would wipe the slate clean of *all* of its wage-and-hour liabilities for

*all* affected workers nationwide, not just for overtime claims in California."  Id.  Second, the

court faulted the parties for failing to provide any analysis of the "150-plus laws of 35 other

states" that would be extinguished under the settlement.  Id. at *23.  As a result, the court

questioned whether the named plaintiffs, who worked only in California and Washington state, could adequately represent class members in other states. Id. at *24. Third, the court noted that the right to opt out of the settlement was not a "cure-all."

> "While it is true that workers who dislike the proposal could opt out, this does not absolve the Court from its independent duty to vet the proposal. Nor does the fact that workers would have the right to submit objections. It is worth reminding ourselves that few ever opt out or object. Those who file claim forms do not appreciate the questions of substance and fairness that will suggest themselves to a district judge. There is no substitute for the requirement of district courts vetting the proposed settlement under Rule 23.
>
> "It is also no answer to say that a private mediator helped frame the proposal. Such a mediator is paid to help the immediate parties reach a deal. Mediators do not adjudicate the merits. They are masters in the art of what is negotiable. It matters little to the mediator whether a deal is collusive so long as a deal is reached. Such a mediator has no fiduciary duty to anyone, much less those not at the table. Plaintiffs' counsel has the fiduciary duty. It cannot be delegated to a private mediator."

Id. at *30-31; see also Jaime v. Std. Parking Corp., 2010 U.S. Dist. LEXIS 80298, at *7-8 (C.D. Cal. July 12, 2010) (refusing to grant preliminary approval of a proposed settlement in part because, as in this case, the proposed release included claims under California Labor Code section 2802, which had never been asserted in the lawsuit).

For all of these reasons, the settlement cannot be preliminarily approved.

IV.    THE NAMED PLAINTIFFS CANNOT REPRESENT THE CLASS DEFINED IN THE STIPULATION

Schedule 1 to the Stipulation lists the underwriter positions covered by the settlement. According to Schedule 1, "Covered Positions" includes 35 underwriter positions at Chase Auto Finance; 43 underwriter positions at Chase Business Banking; 42 underwriter positions at Chase Home Equity; 42 underwriter positions at Chase Mortgage Banking; 34 underwriter positions at Chase Student Loans; 6 underwriter positions at Chase Card Services; and 6 underwriter

positions at Chase Asset Management.  There has been no showing that the named Plaintiffs, who were employed as residential loan underwriters, are capable of providing adequate representation to 5,200 class members employed in <u>208 different underwriter positions</u> at the various Chase entities. Furthermore, there has been no showing that the Plaintiffs were ever employed as non-exempt underwriters.[5]  Therefore, they cannot provide adequate representation to those class members who were employed as non-exempt underwriters after February 2009.[6]

    <u>Diaz v. Electronics Boutique of America, Inc.</u>, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005), is directly on point.  In that case, the named plaintiffs sought to represent an FLSA collective group and a Rule 23 class consisting of exempt store managers ("SMs") as well as non-exempt assistant store managers ("ASMs") and sales associates ("SAs").  Like the Plaintiffs in this case, the <u>Diaz</u> plaintiffs argued that they were similarly situated to the entire class because they were all subject to the defendant's "company-wide plan of not paying their employees overtime or other wages for work performed."  <u>Id.</u> at *11.  The court refused to certify either the FLSA collective group or the Rule 23 class because the two named plaintiffs were not similarly situated to each other, and thus were not similarly situated to the other class members.  The court summarized the differences between the exempt and non-exempt claims:

> "The gravamen of Ostrander's claim, as distinct from that of Diaz's, is that [defendant] avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks.  Ostrander's claim and the claims of other SMs thus will involve an analysis of daily duties and responsibilities and the amount of

---

[5]    According to the Court's opinion in <u>Whalen v. J.P. Morgan Chase & Co.</u>, 569 F.Supp. 327, 329 (W.D.N.Y. 2008), plaintiff Whalen was employed as an underwriter in Chase's Home Equity group from November 1998 until May 2002, during which time he was classified as exempt.  The facts underlying the other plaintiffs' claims are not in the public record.

[6]    As discussed in Section III above, class members who were employed by Chase as non-exempt underwriters after February 2009 are releasing all of their state law wage and hour claims, including their hourly-based claims, for no additional compensation.

time spent on each, whereas Diaz's claim and the claims of ASMs and SAs will involve an examination of hours worked, payroll records and [defendant's] knowledge and/or permission of the alleged overtime hours worked. As such, Ostrander and Diaz are not similarly situated to one another for no factual nexus exists between their situations." Id. at *12.

Similarly, in Morisky v. Public Services Electric & Gas Co., 111 F.Supp.2d 493 (D.N.J. 2000), the court refused to certify an FLSA collective action and a Rule 23 state law class because the seven named plaintiffs, who worked in five different positions, were not similarly situated to the other class members.  The court found that the plaintiffs had made "no showing that the job responsibilities of the named plaintiffs are the same or similar to those of the remaining members of the proposed class, or that the opt-in plaintiffs could properly be classified as non-exempt employees. In fact, plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs." Id. at 498.

In this case, as in Morisky and Diaz, the Moving Parties have failed to present any evidence that the Plaintiffs can function as adequate representatives for 5,200 individuals who worked in 208 different positions, some of whom were both exempt and non-exempt.  As the Supreme Court instructed in Amchem Products v. Windsor, 521 U.S. 591, 620 (1997), except for the question of trial manageability, "the other specifications of [Rule 23] – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context."  Based on this record, the Court cannot certify the proposed class under 29 U.S.C. section 216(b) or Rule 23.

V.   <u>CONCLUSION</u>

For the reasons discussed above, as well as the reasons discussed in the <u>Cole</u> plaintiffs'

initial opposition brief (Docket No. 187) and their motion to intervene (Docket No. 158-2), the

Court should deny the Moving Parties' motion for preliminary approval, grant the <u>Cole</u>

plaintiffs' motion to intervene, and permit the <u>Cole</u> plaintiffs to take limited discovery.


Dated: February 25, 2011


By: s/ James F. Clapp
    JAMES F. CLAPP, *pro hac vice*
    jclapp@sdlaw.com
    ZACH P. DOSTART, *pro hac vice*
    zdostart@sdlaw.com
    MARITA M. LAUINGER, *pro hac vice*
    mlauinger@sdlaw.com
    DOSTART CLAPP & COVENEY, LLP
    4370 La Jolla Village Drive, Suite 970
    San Diego, California  92122-1253
    Telephone: 858-623-4200
    Facsimile: 858-623-4299

    and

    JULES L. SMITH
    jlsmith@bklawyers.com
    Blitman & King LLP
    Powers Building, Suite 200
    16 West Main Street
    Rochester, NY 14614
    Telephone: 585-232-5600
    Facsimile: 585-232-7738

    Attorneys for the <u>Cole</u> Plaintiffs

423530.1

14