**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**MICHAEL DAVIS, et al.,**
*on behalf of themselves and all others*
*similarly situated*

*Plaintiffs,*

v.

**JPMORGAN CHASE & CO., JPMORGAN**
**CHASE BANK, and CHASE MANHATTAN**
**MORTGAGE CORPORATION,**

*Defendants.*

Civil Action No.
01-CV-6492L

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION**
**FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

ARGUMENT......................................................................................................... 6

I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT ............................................................................................ 6

       A.    Complexity, Expense, and Likely Duration............................................. 8
       B.    Reaction of the Class to the Settlement ................................................... 9
       C.    Stage of Proceedings and Amount of Discovery ................................... 11
       D.    Risks of Establishing Liability and Damages, and of Maintaining
             the Class Through Trial ........................................................................ 12
       E.    The Range of Reasonableness of the Settlement in Light of the
             Best Possible Recovery and Attendant Risks of Litigation ................... 13

II.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS
       SHOULD BE CONFIRMED .......................................................................... 17

       A.    The Prerequisites of Rule 23 Are Satisfied ............................................ 17

             1.   Rule 23(a)(1):  Numerosity Requirement ................................... 18
             2.   Rule 23(a)(2):  Commonality Requirement ................................. 18
             3.   Rule 23(a)(3):  Typicality Requirement ...................................... 19
             4.   Rule 23(a)(4):  Adequacy of Representation Requirement ......... 19
             5.   Rule 23(b)(3):  Predominance Requirement ............................... 20
             6.   Rule 23(b)(3):  Superiority Requirement .................................... 21

III.   THE OBJECTIONS SUBMITTED BY THREE NAMED PLAINTIFFS
       FROM THE *COLE* AND *MCDANIEL* CASES LACK MERIT ...................... 22

       A.    The Release is Appropriate .................................................................. 24
       B.    California Class Members Stand to Receive a Fair Recovery for the
             Settlement of Their Claims.................................................................. 28
       C.    The Class Representatives Have Adequately Represented the
             Interests of all Class Members .............................................................. 31
       D.    There is Nothing Improper About Unawarded Attorneys' Fees
             Remaining the Property of JPMorgan Chase ........................................ 34
       E.    The Settlement Schedule has Provided Objectors with Sufficient
             Opportunity to be Heard ...................................................................... 38
       F.    The Parties have Demonstrated that the Grinnell Factors Weigh
             Heavily in Favor of Approval of the Settlement ................................... 39

CONCLUSION ...................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Alleyne v. Time Moving & Storage Inc.,*
   264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................................ 31

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................... 17, 32

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
   450 U.S. 728 (1981) ................................................................................... 8

*Bell v. Farmers Ins. Exchange,*
   87 Cal. App.4th 805 (2001) ........................................................................ 30

*Bothell v. Phase Metrics, Inc.,*
   299 F.3d 1120 (9th Cir. 2002) ..................................................................... 30

*Bricker v. Planet Hollywood New York, L.P.,*
   No. 08 CV 443 (WHP), 2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009)............... 8

*Carlson v. Xerox Corp., KPMG LLP,*
   No. 09-0544-cv, 2009 WL 4640661 (2d Cir. Dec. 9, 2009)………………….....39

*Castagna v. Madison Square Garden, L.P.,*
   No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ....... 8, 9

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ......................................................................... 7

*Cohen v. Chilcott,*
   522 F. Supp. 2d 105 (D.D.C. 2007) .............................................................. 37

*County of Suffolk v. Long Island Lighting Co.,*
   907 F.2d 1295 (2d Cir. 1990).................................................................... 8

*Creese v. Washington Mutual Bank,*
   No. B193931, 2008 WL 650766 (Cal. App. Mar. 12, 2008) .............................. 30

*Cruz v. Dollar Tree Stores Inc.,*
   No. 07-02050, 2011 WL 2682967 (N.D. Cal. Jul. 8, 2011) ................................ 13

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) .............................................................................. 8, 9

*Dornberger v. Metropolitan Life Insurance Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ......................................................................... 36

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................. passim

*Gilliam v. Addicts Rehabilitation Center Fund,*
  No. 05 CV 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............... 13

*Glass v. UBS Financial Services, Inc.,*
  331 F. App'x 452 (9th Cir.)
  *cert. denied, Evans v. Glass,* 130 S. Ct. 801 (2009) ................................................ 35

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 18

*Hansberry v. Lee,*
  311 U.S. 32 (1940).............................................................................................. 19

*Henry v. Quicken Loans, Inc.,*
  No. 04-40346, 2009 WL 3199788 (E.D. Mich. Sept. 30, 2009) ........................ 14

*In re Austria & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y 2000) ............................................................... 11, 14

*In re Corn Derivatives Antitrust Litig.,*
  748 F.2d 157 (3d Cir. 1984) ............................................................................... 24

*In re Currency Conversion Fee Antitrust Litig.,*
  263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................... 10

*In re Farmers Ins. Exchange,*
  481 F.3d 1119 (9th Cir. 2007) ............................................................................ 30

*In re Initial Public Offering Sec. Litig.,*
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................. 8, 10, 11, 12

*In re Ins. Brokerage Antitrust Litig.,*
  No. 04-5184, 2007 WL 1652303 (D.N.J. June 5, 2007)...................................... 37

*In re Prudential Sec. Inc. Ltd P'ships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................... 7

*In re Sony SXRD Rear Projection T.V. Class Action Litig.*,
   No. 06-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................ 21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................... 7

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Marketing & Sales Practices Litig.*,
   No. 5:09-02015, 2011 WL 1877630 (N.D. Cal. May 17, 2011) ......................... 36

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) .............................................................. 30

*Kamens v. Horizon Corp.*,
   No. 75 Civ. 1366, 1981 WL 1634 (S.D.N.Y. May 26, 1981) ............................ 36

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995)......................................................... 37

*Lenahan v. Sears, Roebuck & Co.*,
   No. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006)............................. 32, 33

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) .................................................. 37

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) ......................................................................... 8

*Moreno v. AutoZone, Inc.*,
   No. C05-04432, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007).....................23, 24

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
   660 F.2d 9 (2d Cir. 1981) .............................................................26, 28

*Prandini v. National Tea Co.*,
   585 F.2d 47 (3d Cir. 1978) ................................................................ 37

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .........................................................35, 37

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) .............................................................. 30

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ............................................................ 37

*Waisbein v. UBS Fin. Serv.*,
    No. 07-02328, 2007 U.S. Dist. LEXIS 92051 (N.D. Cal. Dec. 5, 2007) .......27, 28

*Wal-Mart Stores, Inc. v. Dukes*,
    -- S. Ct. --, 2011 U.S. LEXIS 4567 (June 20, 2011) ............................................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................... passim

*Whalen v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009) ............................................................................3, 9

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ........................................................................... 35

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 8

**DOCKETED CASES**

*Bahramipour v. Citigroup Global Markets, Inc.*,
    No. 04-04440 (N.D. Cal.) ................................................................................... 33

*Burns v. Merrill Lynch Pierce Fenner & Smith Incorporated*,
    No. 04-04135 (N.D. Cal.) ................................................................................... 38

*Citigroup Wage & Hour Litig.*, No. 04-04440 (N.D. Cal.) ........................................... 30

*Cole v. JPMorgan Chase & Co.*,
    No. SACV10-00632 (C.D. Cal.) ................................................................. passim

*Ebert v. JPMorgan Chase & Co.*,
    No. H-10-894 (S.D. Tex.) .................................................................................... 6

*Garett v. Morgan Stanley DW, Inc.*,
    No. 04-01858 (S.D. Cal.) ...................................................................... 27, 30, 38

*Karim v. Banc of America Investment Services, Inc.*,
    No. 06-167 (C.D. Cal.) ....................................................................................... 30

*McDaniel v. JPMorgan Chase Bank, N.A.*,
    No. 10-10044 (C.D. Cal.) ................................................................................... 34

*Pickle v. JPMorgan Chase & Co.*,
    No. 10-2791 (S.D.N.Y.) ...................................................................................... 6

*Poole v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 06-01657 (D. Or.) ......................................................................... 33

*Steinberg v. Morgan Stanley*,
    No. 06-02628 (S.D. Cal.) ........................................................... 26, 27, 38

*Takacs v. A.G. Edwards & Sons, Inc.*,
    No. 04-01852 (S.D. Cal.) ...................................................................... 38

*In re: Wachovia Securities LLC Wage and Hour Litig.*,
    No. SACV 05-1031, MDL No. 07-1807 (C.D. Cal.) .....................................29, 33

FEDERAL STATUTES

29 U.S.C. § 259 .......................................................................................... 14

STATE STATUTES

Section 2802 of the California Labor Code ................................................. 27

FEDERAL RULES

Fed. R. Civ. P. 23 .................................................................................. passim

MISCELLANEOUS

DOL Opinion Letter, FLSA 2009-3 (Jan.  14, 2009) ................................................. 16

## PRELIMINARY STATEMENT

Following the Court's preliminary approval of this settlement, the claims administrator sent notice of the settlement to nearly 3,800 class members, and the response of the class members further demonstrates that the settlement should be approved.  Indeed, based on the extraordinarily high percentage of class members who have submitted claim forms and the unquestionably low number of individuals who opted out or submitted objections, the undeniable conclusion to be drawn is that class members overwhelmingly support this settlement and it should be approved.

The settlement is also supported by class members who are plaintiffs in other litigation asserting the same claims.  As the Court is aware, several other copycat actions have been filed in other jurisdictions following the decision in this matter from the Second Circuit, and the vast majority of the plaintiffs in those cases—plaintiffs with separate counsel—have opted into this settlement.  Had those class members believed the settlement to be anything but fair, reasonable and adequate, they all would have opted out.  That they did not shows that their attorneys also believe the settlement to be fair, reasonable and adequate.  Indeed, any class member was free to opt out of the settlement if they believed that the settlement was not fair.  In fact, however, only a handful opted out and over 81% of the class members submitted claims which is particularly high for a claims period that extends back 15 years for New York class members and 12 years for all others, demonstrating that the settlement is fair, reasonable and adequate.

Beyond the overwhelmingly positive response from the class members, the settlement also easily meets the factors for approval of class action settlements.  For these reasons, too,

the settlement should be finally approved.  Finally, as discussed below, the single set of

objections submitted by three plaintiffs in the copycat litigation lack merit.

## **FACTUAL BACKGROUND**

### *Plaintiffs' Claims*

Plaintiffs originally filed this class and collective action on or about October 4, 2001.

Plaintiffs allege that defendants failed to pay them overtime under the Fair Labor Standards

Act ("FLSA") and state law, and as a result, plaintiffs were not paid overtime at time and

one-half their regular rate of pay when they worked more than forty hours per week.

Plaintiffs also allege damages for violations of state wage and hour laws such as delay in

payments and failure to provide or compensate for rest and meal breaks.  Fifth Am. Compl.,

Dkt. No. 181.  Among other things, plaintiffs claim that they performed job duties relating to

approving loans to individuals, evaluating whether to issue loans to individual loan applicants

and/or evaluating loan applications of individual loan applicants under credit guidelines and

approving loans if they meet standards, and that these duties do not render them exempt

from the overtime requirements under the FLSA and state law.  Plaintiffs therefore seek

overtime compensation, liquidated damages, interest, penalties and all other relief provided

for under the law.

### *Procedural History*

Early on in the case, the parties agreed to litigate the FLSA claim of one of the named

plaintiffs, Andrew Whalen.  Proceeding on that basis, the parties moved forward with

Mr.  Whalen's claims and began discovery.

Over the next three and a half years, the parties engaged in extensive and arduous

discovery, including the production of tens of thousands of pages of documents and many

depositions, culminating in the parties filing cross-motions for summary judgment.  Both parties focused their motions on the administrative exemption to overtime pay under the FLSA.  This Court granted defendants' motion for summary judgment and correspondingly denied plaintiffs' motion.  Judgment was entered in defendants' favor.

Plaintiffs filed an appeal with the Second Circuit.  After briefing and oral argument, the Second Circuit reversed the decision below.  *See Whalen v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009).  Chase's petition for rehearing was denied by the Second Circuit and a Mandate was issued on February 1, 2010.  *See* No. 08-cv-0492 (2d Cir.), Docket Entries of 1/22/10 and 2/1/10.  Chase's petition for a writ of certiorari was denied by the Supreme Court in May 2010.  *See* No. 09-1160 (U.S.), Docket Entry of May 3, 2010; *see also* No. 08-cv-0492 (2d. Cir.), Docket Entry of 5/7/10.

Thereafter, plaintiffs filed a fourth amended complaint and simultaneously moved for conditional certification and expedited notice to affected employees pursuant to Section 216(b) of the FLSA.  *See* Dkt. Nos. 136-145.  This Court then ordered that the parties engage in mediation to see if the claims could be resolved.  *See* Dkt. No. 157.  The parties engaged Michael Dickstein, a private mediator with extensive wage and hour class action experience, to assist them with their negotiations, and during the course of an in-person, two-day mediation, the parties reached a settlement.  *See* Affirmation of Michael J. Lingle ("Lingle Aff."), Ex. 1 (biography of Mediator Dickstein).  The successful mediation occurred after an earlier mediation before Magistrate Judge Bianchini and earlier discussions between counsel, including an in-person meeting between counsel for the parties, all of which failed.

*The Settlement*

Following good faith, arms-length negotiations, the parties reached a resolution to this matter, providing what is, in Class Counsel's opinion, substantial recovery to the class members.  Indeed, defendants have agreed to pay $42,000,000 in settlement of the plaintiffs' claims.  As a result, each class member individually is expected to receive a considerable sum for their claims in this case.  In fact, the minimum amount to be received by participating class members ranges as high as $94,625, before any redistribution of unclaimed amounts to participating class members which will only increase the amount.  Lingle Aff., Ex. 3 (Declaration of Amanda Myette, ¶ 10).

This settlement covers employees who worked as non-supervisory underwriters, credit analysts and/or other positions whose main job responsibilities are or were to evaluate creditworthiness of persons for individual loans or lines of credit and/or to decide whether defendants should issue individual loans or lines of credit to persons, and which existed at JP Morgan Chase in the United States at any time during the class period, and which are or were treated as exempt from overtime at any time during the class period.   For purposes of implementing the settlement only, the parties have agreed to the certification of a collective action under the FLSA and to a class action under state law.

Each participating class member will receive a pro rata share of the settlement based on their length of service in a position covered by the settlement, except that eligible employees in California will receive an allocation of four times the allocation of other employees for each month of service in a position covered by the settlement, in recognition of the arguably greater protections provided by California law to employees in that state and consistent with settlements in other wage and hour cases which include participants from

California.  In exchange for the payments to be made pursuant to the settlement, class members will release certain claims they may have against the defendants.

The Agreement also provided that notice of the settlement, as approved by the Court, was to be mailed to class members following preliminary approval by the Court, and they were provided with reasonable time to submit a claim form and to opt into the action to participate in the settlement.

In addition, the settlement amount covers attorneys' fees, not to exceed 33 1/3% of the settlement, and costs, claims administration costs and class representative payments for the time, effort and assistance they provided in litigating these claims on behalf of the class.

***Class Members Overwhelmingly Support the Settlement***

The Court granted preliminary approval of the settlement on April 6, 2011, *see* Docket No. 208, and approved the notice of settlement on April 20, 2011.  *See* Docket No. 210.  Accordingly, notice of the settlement was sent to class members, providing them with an opportunity to submit a claim form, object, or opt-out of the settlement by June 21, 2011.

Given the exceptionally high participation rate, the only conclusion to be drawn is that the class members overwhelmingly support the settlement.  Indeed, of the approximately 3,800[1] class members who were sent notice, over 3,000, that is, over 81%, submitted claim forms, thereby opting into the settlement.  Lingle Aff., Ex. 3, ¶ 15.  Only 11 individuals opted out of the settlement (less than 0.3%), and only a single objection was filed by counsel representing three class members who are named plaintiffs in subsequently filed copycat underwriter litigation pending in California.  *Id.*  On a work-month basis, the participation

---

[1]     The parties previously estimated the total class size to be approximately 5,000 individuals.  However, upon composing the class list, including removing duplicate names, the class size is actually approximately 3,800 individuals.

rate is even greater – over 91% of the total work months have been claimed.  *Id.*  Moreover, the percentage of class members who have elected to accept the benefits of this settlement among those who are plaintiffs in one of the many copycat cases around the country that were filed after the Second Circuit's opinion in this case is very high.  Eight of nine plaintiffs in *Ebert v. JPMorgan Chase & Co.*, No. H-10-894 (S.D. Tex. filed on 3/18/10; stayed on 8/30/10) have submitted claim forms; ten of twelve plaintiffs in *Pickle v. JPMorgan Chase & Co.*, No. 10-2791 (S.D.N.Y. filed on 3/29/10; stayed on 6/9/10) have submitted claim forms; and eight of eleven plaintiffs in *Cole v. JPMorgan Chase & Co.*, No. SACV10-00632 (C.D. Cal. filed on 5/10/10; stayed on 7/15/10) have submitted claim forms without objection and two have submitted claim forms with an objection.  These overall participation rates are particularly high given the long class period that stretches back to September 1996 for New York class members and September 1999 for all others.

Unquestionably, class members have been resoundingly in favor of the settlement.

## ARGUMENT

## I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87) (4th ed. 2002)).  The Second Circuit is "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context."  *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).  As such, class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,

184-85 (W.D.N.Y. 2005) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (citation and quotation omitted).  Therefore, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Frank*, 228 F.R.D. at 184 (quoting *Wal-Mart Stores*, 396 F.3d at 116); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576-577 (S.D.N.Y. 2008) ("[A] strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel.").  Further, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Id.* (internal citation and quotation omitted).  This presumption has been easily met in this case, where, as discussed above, the parties bitterly litigated the action for nearly a decade and settled the case after multiple attempts at settlement and a decision from the Second Circuit, and only then with the assistance of a third-party neutral.

Further, in evaluating the adequacy of a settlement agreement, courts within the Second Circuit look to nine factors first enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48 (2d Cir. 2000)).  The factors include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the state of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5)  the risks of establishing damages, (6) the risks of maintaining the class action through

the trial, (7) the ability of the defendants to withstand greater judgment, (8) the range of

reasonableness of the settlement fund in light of the best possible recovery, and (9) the range

of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *County of

Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323-24 (2d Cir. 1990); *In re Initial Public

Offering Sec. Litig.*, 671 F. Supp. 2d 467, 478-79 (S.D.N.Y. 2009).  The weight of individual

*Grinnell* factors "will vary based on the facts and circumstances of the case."  *Wright v. Stern*,

553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *see also Bricker v. Planet Hollywood New York, L.P.*,

No. 08 CV 443 (WHP), 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009) (not

considering certain factors in approving class settlement).  In this case, the factors weigh

heavily in favor of final settlement approval.

      **A.**     **<u>Complexity, Expense, and Likely Duration.</u>**

      The majority of class actions are, by their very nature, "inherently complex."  *Frank*,

228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the

costs of continued litigation will be substantial and will quickly outweigh the recovery that

could be achieved").  Moreover, FLSA actions, such as the present case, are complex and, like

this case, often are litigated for years.  As the Supreme Court has recognized, "FLSA claims

typically involve complex mixed questions of fact and law . . . [and] must be resolved in light

of volumes of legislative history and over four decades of legal interpretation and

administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981);

*see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 167 (2007) (FLSA raises "a set of

complex questions. . ."); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 U.S.

Dist. LEXIS 64218, at *14 (S.D.N.Y. June 7, 2011) (approving the settlement and holding

that litigation of the FLSA and state wage and hour claims would be complex).

The lengthy procedural history in this case confirms the point. After years of

discovery, both parties submitted extensive motions on summary judgment, which were

resolved in defendants' favor, only to be reversed by the Second Circuit. Providing further

evidence of the complexity of the issues facing the parties, in its decision, the Second Circuit

noted that precedent concerning the administrative exemption "is light" in this circuit,

turning to a case involving members of the state police assigned to the Bureau of Criminal

Investigation for the "framework" of its analysis. *See Whalen*, 587 F.3d 532.

Further, in the absence of a settlement, defendants would challenge the propriety of

maintaining this case as a class or collective action as well as the scope of the Second Circuit's

decision, resulting in years of potential additional litigation.

Thus, this factor weighs heavily in favor of the settlement.

**B.      Reaction of the Class to the Settlement.**

The reaction of the class to the settlement provides the Court with the on-the-ground

view of the settlement and the opinion from those who matter the most – the class members

themselves. "Indeed, the favorable reaction of the overwhelming majority of class members

to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry." *Wal-Mart

Stores,* 396 F.3d at 119.

A low percentage of class members opting out or submitting objections therefore

provides substantial weight in favor of approving a settlement. *See D'Amato,* 236 F.3d at 86-

87 ("The District Court properly concluded that this small number of objections weighed in

favor of the settlement."); *Castagna*, 2011 U.S. Dist. LEXIS 64218, at *15 ("When relatively

few opt-out or object to the settlement, the lack of opposition supports approval."); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (where 1% of members opted out or filed objections, the reaction was "extraordinarily positive and weighs in favor of settlement"); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 485 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations and quotation omitted).

This case falls into the "extraordinarily positive" category.  Indeed, there is no doubt in this case that the class members fully support the settlement.  Of the approximately 3,800 individuals who received notice, only 11 opted out and only a single objection by three individuals was filed, representing less than 0.4% of the class members.  Moreover, these three individuals who submitted an objection are not just any class members.  They are three named plaintiffs in copycat litigation represented by the same counsel who entered the litigation ten years late (and only after the Second Circuit's decision), who tried to wrestle control of the case from Class Counsel, who had no problem trying to represent a nationwide class of underwriters as long as it was lead counsel, who attempted to consolidate the cases before a multi-district panel, who moved to intervene in this case in order to attack the settlement before counsel even knew the terms of the agreement, who was forced to admit at the preliminary approval hearing in this case that it would not be able to recover a fee unless it obtained more money for the class, and who now contends that the settlement should not be approved even if fair.  *See Cole v. JPMorgan Chase & Co.*, No. SACV10-00632 (C.D. Cal.) complaint filed 5/10/10 (*Cole* Dkt. No. 1); *Cole* Motion for Conditional Certification and Notice (*Cole* Dkt. No. 13); *Cole* Plaintiffs' Interested Party Response to Motion for Transfer and Coordination and/or Consolidation (*In re: JPMorgan Chase & Co. FLSA Litigation*; MDL

Dkt. No. 12); Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b) by the *Cole*

Plaintiffs (Dkt. No. 158); Transcript of Proceedings, Feb. 15, 2011, at 34-35 (Dkt. No. 193);

Objections to Class Action Settlement (Dkt. No. 217), at 26.  The objection is without merit,

as set forth in Point III, *infra,* and the bases for the objection also was not raised by a single

other class member.  Unlike most class settlements where the response of the class is

measured only by the number of opt-outs, the response to the settlement of the class here can

also be measured by the percentage of class members who have affirmatively elected to opt in

and receive the benefits of the settlement.  In contrast to the few opt-outs and objections,

over 81% of the class members submitted claim forms and over 91% of the total work

months were claimed in the settlement.

It would be difficult to fathom a more positive reaction from the class.

### C.      Stage of Proceedings and Amount of Discovery.

"[A] sufficient factual investigation must have been conducted to afford the Court the

opportunity to intelligently make an appraisal of the Settlement."  *Frank*, 228 F.R.D. at 185

(citing *Plummer v. Chemical Bank,* 668 F.2d 654, 660 (2d Cir. 1982)); *see also In re Austria* &

*German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y 2000).  The purpose of this

is to ensure that "the parties have a thorough understanding of their case prior to

settlement."  *In re Initial Public Offering Sec. Litig.,* 671 F. Supp. 23 at 483 (citation omitted).

As previously discussed, the extended procedural history in this case leaves no doubt

that the parties have sufficient information to thoroughly understand their respective

positions, including their strengths and weaknesses.  Setting aside the lengthy period of

discovery where they exchanged tens of thousands of pages of documents and conducted

numerous depositions, the parties also have a ruling from the Second Circuit on the parties'

cross-motions for summary judgment.  As a result, the parties were certainly in a position to appraise any settlement in this matter.

**D.**     **Risks of Establishing Liability and Damages, and of Maintaining the Class Through Trial.**

The risks of establishing liability and damages, and of maintaining the class through trial, also weigh in favor of approval.  In examining these factors, the Court need not "decide the merits of the case or resolve unsettled legal questions," but instead should "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Frank*, 228 F.R.D. at 185-86 (citation omitted).

Here, although plaintiffs may be convinced of the strength of their case, defendants are equally certain that their defenses will prevent recovery.  For example, while plaintiffs may believe the Second Circuit's decision resolves the issue concerning defendants' liability, defendants have stated their position that the Second Circuit's decision had limited application because it reversed a grant of summary judgment in defendants' favor construing the facts in a light most favorably to Whalen and that a trial was still necessary before this Court even on Whalen's claims.

Further, although defendants stipulated to class certification for the purposes of settlement only, were litigation to continue defendants could raise issues that could make certification inappropriate in the absence of a settlement.  *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 482 ("Plaintiffs inform the Court that defendants have compromised on several issues that defendants had previously argued would make these class actions unmanageable if they went to trial.  In addition, decertification is always a likely possibility during trial in complex class actions such as these.") (footnote omitted); *Frank*, 228 F.R.D. at 186 ("If settlement were disapproved, it is likely that [defendant] would

challenge the class certification.  While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement."). Defendants would argue that this is particularly true in light of the Supreme Court's recent opinion in *Wal-Mart Stores, Inc. v. Dukes, -- S. Ct. --*, 2011 U.S. LEXIS 4567 (June 20, 2011), which they would say put added teeth into the commonality requirement, rejected a trial by formula approach, and required that an employer has the right to assert its defenses against each class member.  *See, e.g., Cruz v. Dollar Tree Stores Inc.*, No. 07-02050, 2011 WL 2682967, at \*2-3 (slip op.) (N.D. Cal. Jul. 8, 2011) (citing *Wal-Mart v. Dukes* in holding that class certification was not appropriate because the claims of the class of allegedly misclassified store managers was not susceptible to common proof of class-wide liability).  Even the objectors raised questions about the challenges of certifying a class of underwriters if this case were to be litigated by claiming that auto underwriters are different than other underwriters. Objections at 27-28.  Once again, this favors approval of the settlement.[2]

### E.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation.

The Second Circuit has held that a settlement that is within a "range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" is appropriate.  *Wal-Mart Stores*, 396 F.3d at 119; *Gilliam v. Addicts Rehabilitation Center Fund*, No. 05 CV 3452 (RLE), 2008 WL 782596, at \*5 (S.D.N.Y. Mar. 24, 2008) ("[S]ettlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a

---

[2]    One of the factors is the ability of defendants to withstand a greater judgment.  That defendants could potentially withstand a greater judgment in this case does not mean that the settlement is in any way inadequate.  Thus, this factor does not weigh for or against approval of the settlement.

hypothetically larger amount years down the road.") (internal citation and quotation omitted).

Further, determining the "best possible recovery" remains a difficult and illusory goal and does not lend itself to a precise "mathematical equation yielding a particularized sum." *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178.

As noted above, substantial risks remained in this case for plaintiffs. Not only have defendants stated their position about the limited applicability of the Second Circuit's decision as set forth above, but also defendants indicated they would have challenged plaintiffs' motions for class and collective action status as well as the application of the Second Circuit's decision. Defendants also believe that they have a strong defense to liability under the FLSA even if Whalen was misclassified as overtime exempt. Defendants argue this is because 29 U.S.C. § 259 provides a complete defense to liability where the employer relied in good faith on a regulation or opinion from the Department of Labor ("DOL"). And here, defendants not only relied on DOL regulations stating that employees who make credit decisions and financial services employees who collect and analyze information are exempt from overtime, but also, this Court relied on those same regulations in finding that Whalen was properly classified as overtime exempt. *See* Court Decision and Order on summary judgment dated August 6, 2008 (Dkt. No. 114), at 4-6 (citing the DOL regulations and finding that Whalen "clearly" performed administrative job duties and was exempt); *Henry v. Quicken Loans, Inc.*, No. 04-40346, 2009 WL 3199788, at *13-14 (E.D. Mich. Sept. 30, 2009) (granting summary judgment on the issue of good faith reliance to employer in mortgage loan officer misclassification case where employer relied in good faith on DOL opinion that loan officers could qualify for the administrative overtime exemption).

As a result, recovery was far from guaranteed for the class.  While plaintiffs believe they had a very strong case, particularly given the Second Circuit's decision, they cannot ignore defendants' potential arguments, the inherent risks of continued litigation, the possibility that they would have achieved less in terms of recovery for class members through continued litigation or the substantial delay which would have resulted had litigation continued.  Each of those risks favor settlement with a guaranteed payment to class members.

Nor does this case lend itself to a precise mathematical calculation in terms of establishing the "best possible recovery."  Just in terms of attempting to calculate damages under the FLSA, it is far from clear whether the "best possible recovery" would include both liquidated damages and the maximum three-year statute of limitations, given that defendants would have asserted defenses to both (*i.e.*, that the requisite level of intent has not been satisfied).  Indeed, defendants have maintained that even if liability could be established for Whalen or any class members, if a class were ever certified, no finding of willfulness could be made given that the District Court ruled on summary judgment that Whalen "clearly" performed administrative work and that defendants properly classified Whalen as exempt under the DOL's regulations relating to credit managers and financial services employees.  *See* Court's Decision and Order on summary judgment (Dkt. No. 114), at 6, 10.  And, each of those assumptions affects the damages dramatically – liquidated damages double the potential recovery while the three year statute of limitations increases damages by one-third.  Defendants' good faith defense, if successful, could cut out damages altogether.  Additionally, there is an open legal question about whether damages in an FLSA misclassification case are calculated based on the fluctuating workweek method (which means employees only receive half of their regular rate for overtime hours) or on a time-and-a-half basis.  For example,

defendants would rely on a recent DOL opinion letter to argue that damages should only be based on one-half of the employees' regular rate.  *See* DOL Opinion Letter, FLSA 2009-3 (Jan. 14, 2009) (concluding that an employer that had misclassified employees as exempt from the overtime requirements of the FLSA can properly use the fluctuating workweek method to calculate the workers' back overtime pay).  Again, this assumption dramatically affects employees' damages and when combined with the issues identified above, can result in a swing in the potential recovery by a factor of six or more.

Nevertheless, the settlement provides, in Class Counsel's estimation, full recovery on class members' claims.  Assuming that the half-time rate can be used to calculate damages, class members outside of California stand to receive compensation for 17 overtime hours per work month.  At time and a half rates, California employees will receive nearly 23 overtime hours per work month.

Further, calculations by objectors' counsel in its opposition to preliminary approval of this settlement also demonstrate the reasonableness of the settlement.  Objectors' counsel made calculations of what they thought was reasonable exposure to defendants.  *See* The *Cole* Plaintiffs' Memorandum of Law in Opposition to Motion for Preliminary Approval (Dkt. No. 187), at 4, n.2.  They calculated that California class members should receive in settlement a gross amount of $1,561/month and that non-California class members should receive a gross amount of $416/month.  But those figures were based on assumptions that class members worked 52 weeks/year without any vacation or holidays.  If, instead of 52 weeks, 45 work weeks/year are assumed, using objectors' counsel's numbers, California class members should receive $1,352/month and non-California class members should receive $360/month.  Further, if, instead of objectors' counsel's assumed work months of approximately 187,000, actual

work months of approximately 98,000 as shown by the data are used and multiplied by the

per month amounts, the undiscounted value of the claims under objectors' counsel's

reasoning is about $45.49 million – which is only slightly more than what the settlement

provides.[3]

## II.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS SHOULD BE CONFIRMED.

As set forth in the parties' motion for preliminary approval, plaintiffs contend that the

state law class, which the parties have proposed for settlement purposes only, meets all

requirements of Fed. R. Civ. P. 23.   Therefore, the Court should confirm its provisional

certification of the settlement class pursuant to Rule 23.

### A.    The Prerequisites of Rule 23 Are Satisfied.

Certification of settlement classes is governed by Rule 23 of the Federal Rules of Civil

Procedure, although the fact that certification takes place in the context of settlement is a

factor to be considered.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622 (1997).  "To

qualify for class certification, a putative class must satisfy the four requirements of Rule 23(a),

as well as the requirements of one of the three subsections of Rule 23(b)."  *Frank*, 228 F.R.D.

at 174.  Thus, the Court's threshold task is to determine, in accordance with Rule 23(a),

whether the following prerequisites are satisfied:  (1)  Numerosity Requirement,

(2)  Commonality Requirement, (3)  Typicality Requirement, and (4) Adequacy of

Representation Requirement.  *See* Fed. R. Civ. P. 23(a).  Where, as here, the parties propose a

settlement class pursuant to Rule 23(b)(3), the Court's next task is to determine whether

---

[3]      The calculations are as follows:

$1,352.16/month * 10,343 work months in CA =      $13,985,390

$360.58/month * 87,368 work months outside CA = $31,503,153

Total = $45,488,543

common questions "predominate over any questions affecting only individual members" (the Predominance Requirement) and whether a "class action is superior to other available methods of adjudication of the controversy" (the Superiority Requirement).  Fed. R. Civ. P. 23(b)(3); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (holding that a Rule 23(b)(3) settlement class is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action.") (quoting 7A Wright, Miller & Kane, *Fed. Practice & Proc.* § 1777 (2d ed. 1986)).  All such requirements continue to be met in this case.

### 1.      Rule 23(a)(1):  Numerosity Requirement.

Given that the class consists of approximately 3,800 persons, plaintiffs maintain that joinder continues to be impracticable and the Numerosity Requirement is met.  *See* Fed. R. Civ. P. 23(a)(1).

### 2.      Rule 23(a)(2):  Commonality Requirement.

Rule 23(a)'s Commonality Requirement mandates that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  As before, plaintiffs contend that several common questions of fact and law exist, including whether Chase had a policy of improperly classifying class members as exempt employees for purposes of state law; whether the class members engaged in "production" work rather than "administrative" work; whether defendants required class members to perform their duties in a similar manner; whether class members exercised discretion and independent judgment in performing their jobs; and whether defendants' policies and conduct in classifying the class members as exempt violated state labor laws.

Plaintiffs submit that these issues satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).

### 3.      Rule 23(a)(3):  Typicality Requirement.

Rule 23's Typicality Requirement provides that the claims or defenses of the representative parties must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The representative party has demonstrated typicality when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Frank*, 228 F.R.D. at 182 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

In the present litigation, plaintiffs submit that the representative plaintiffs' state law claims arise out of the same type of factual and legal circumstances surrounding the claims of each class member.  For example, the class representatives contend that they and all class members were not administrative employees, instead were engaged in production work, and that they all allege the same injury – *i.e.*, that they were misclassified as exempt.  As such, plaintiffs contend that the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.      Rule 23(a)(4):  Adequacy of Representation Requirement.

Rule 23(a)'s Adequacy of Representation Requirement provides that the representative parties fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P.  23(a)(4).  This requirement is grounded in due process concerns, as class members are constitutionally entitled to adequate representation before an entry of a judgment that binds them. *See Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  To determine whether putative class members have received adequate representation, this Court must consider:  (1) whether "class counsel is 'qualified, experienced and generally able to conduct the litigation," and

(2)  whether class members have "antagonistic" interests.  *See Frank*, 228 F.R.D. at 182

(quoting *Drexel Burnham Lambert*, 960 F.2d at 291).

Here, Thomas & Solomon LLP ("T&S") is qualified and able to litigate the claims in

this matter.  T&S has litigated the class claims in this lawsuit to date.  T&S concentrates its

practice in employment litigation, and its attorneys are experienced in class action litigation,

including class actions arising under federal and state wage and hour laws.  T&S has

committed, and will continue to commit, the resources necessary to litigate and resolve these

claims.  Indeed, class counsel has conducted discovery, fully briefed summary judgment

motions, and achieved success at the Second Circuit.  Further, as detailed above, the class

representatives contend that they possess the same type of interests and suffered the same

type of injury as the other proposed class members.  Therefore, plaintiffs submit that the

adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of a

settlement class.

### 5.    Rule 23(b)(3):  Predominance Requirement.

Rule 23(b)(3)'s Predominance Requirement is "designed to determine whether

proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Frank*,

228 F.R.D. at 183.  It is satisfied if common questions can be resolved for all members of the

class in a single adjudication:

> Class-wide issues predominate if resolution of some of the legal
> or factual questions that qualify each class member's case as a
> genuine controversy can be achieved through generalized proof,
> and if these particular issues are more substantial than the issues
> subject only to individualized proof.

*Id.* (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Defendants' alleged liability on the state law claims centers around their alleged failure to pay overtime and other compensation to allegedly misclassified class members. As detailed above, the class representatives contend that the resolution of this claim involves a number of common issues. Moreover, class representatives contend that the common issues will predominate because they and the class members were all performing the same function and defendants had a common practice of allegedly misclassifying them as exempt employees and not paying them their overtime wages. As a result, the class representatives contend that the common factual and legal issues raised by the allegations will predominate.

### 6.   Rule 23(b)(3):  Superiority Requirement.

Rule 23(b)(3)'s Superiority Requirement mandates that "the class action be superior to other methods of adjudication." *Frank*, 228 F.R.D. at 183. Where a class is being certified for settlement purposes, three factors are pertinent to this determination:

> (a) The interest of members of the class in individually controlling the prosecution ... of separate actions;
>
> (b) The extent and nature of any litigation concerning the controversy already commenced by ... members of the class;
>
> (c) The desirability ... of concentrating the litigation ... in the particular forum.

*Id.* (quoting Fed. R. Civ. P. 23(b)(3)).[4]

Plaintiffs contend that the Superiority Requirement is satisfied because there is no indication that class members seek to individually control their cases, particularly given that only 11 individuals opted out, and there is no reason that this forum is undesirable for any

---

[4]     Since this motion is made in connection with a settlement class, there is no need to consider whether a trial of the matter would be manageable, as this Court held in preliminarily approving this settlement. Decision and Order dated April 6, 2011 (Dkt. No. 208), at 10. *See also, e.g., In re Sony SXRD Rear Projection T.V. Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *14 n.6 (S.D.N.Y. May 1, 2008).

reason.  Further, the other actions commenced by other class members remain in their

infancy – this action is by far the most advanced, having already been addressed by the

Second Circuit and the Supreme Court – and such actions were brought only because of the

success of the plaintiffs in this action at the Second Circuit.  Accordingly, plaintiffs contend

that certification of settlement classes is superior to any other method of resolving this matter,

as it will promote economy, expediency, and efficiency.

III.    **THE OBJECTIONS SUBMITTED BY THREE NAMED PLAINTIFFS FROM THE *COLE* AND *MCDANIEL* CASES LACK MERIT.**

The only objection to the settlement comes from three individuals who are named

plaintiffs in copycat actions and represented by separate counsel with an economic incentive

to seek to have this settlement disapproved.  Indeed, objectors' counsel reluctantly admitted

at the preliminary approval hearing under the Court's questioning that the only way his firm

would get paid is if this settlement was rejected and his firm ended up getting more money

for class members.  *See* Transcript of Proceedings, Feb. 15, 2011 (Dkt. No. 193), at 34-35.

As a threshold matter, objectors' counsel cannot assert the objections because the firm

has a conflict of interest between their representation of objectors, who seek to squash the

settlement, and class members who have elected to obtain the benefits of the settlement.

Objectors' counsel, Dostart Clapp & Coveney, LLP ("DDC"), represent three objectors,

Cynthia Cole, Darin Takahashi, and Steve McDaniel, and it also represents eight class

members who have submitted claim forms to participate in this settlement, each of whom is

also a plaintiff in one of the copycat underwriter cases against defendants currently pending

(and stayed) in California.[5]  Objectors' counsel, then, is representing directly competing

---

[5]      Attorney Daniel Holsenbeck, who has sought admission *pro hac vice* in this action, also
represents objectors Cole and Takahashi.  In addition, he represents two class members who

interests.  If DCC is successful on behalf of the three objectors in blowing up the very settlement that eight of its clients have elected to participate in without objection, DCC will deprive those clients of the settlement benefits that they wish to receive.

In a strikingly similar case, a federal district court held that lawyers had an actual conflict of interest by representing both objectors to a wage and hour class settlement and class members who submitted claim forms in the wage and hour class settlement and that such a conflict of interest required their disqualification.  *Moreno v. AutoZone, Inc.*, No. C05-04432, 2007 WL 4287517, at *4-6 (N.D. Cal. Dec. 6, 2007).  In *Moreno*, plaintiffs represented by the Bailey Pinney law firm were also class members in a similar putative class action, *Martinez v. AutoZone, Inc.  Id.* at *1-2.  They objected to the classwide settlement reached in *Martinez* on many of the same grounds raised by objectors in this case, including the allegedly low settlement amount, the alleged inadequacy of the notice to class members, the alleged failure by the parties to provide sufficient information to assess the merits of the settlement, and the allegedly overbroad release.  *Id.* at *3.  At the same time, Bailey Pinney represented three declarants in the *Moreno* action, each of whom was also a class member in the *Martinez* settlement who submitted a claim form and agreed to the settlement.  *Id.*

The *Moreno* court held that "[a] conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client . . . ."  *Id.*  The court then found that Bailey Pinney's representation of the objectors to the *Martinez* settlement, which required the firm to zealously advance the position that the settlement should not be approved, was adverse to and conflicted with the law firm's

---

(continued…)

have elected to participate in the settlement and who have not objected, Sally Helmken and Carrie Wehner.  (Dkt. No. 219.)

representation of the three declarants who sought payment in the settlement.  *Id.*  The court

also found that Bailey Pinney's "pecuniary interest in defeating the *Martinez* settlement and

limiting the preclusive effect of any *Martinez* judgment so it can proceed with a broader suit

here . . . and recover larger attorney's fees" "further heightened" the conflict of interest issue.

*Id.* at *7.  Other courts have disqualified counsel based on similar conflicts of interest.  *See,*

*e.g., In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984) (affirming

disqualification of counsel for objector to class settlement who previously represented class

members who favored the settlement).

Like the Bailey Pinney law firm in *Moreno*, objectors' counsel here both represent

objectors and class members who have submitted claim forms in the settlement and who seek

to receive their settlement payments.  Objectors' counsel have a pecuniary interest in

defeating the settlement in this case in order to proceed with their claims in the *Cole* and

*McDaniel* lawsuits and potentially recover attorneys' fees in those actions.

Even if objectors' counsel had the ability to represent both objectors and class

members who wish to obtain the benefits of the settlement notwithstanding the conflict of

interest, the fact that 75% of their clients have elected to participate in the settlement speaks

volumes about the fairness of the settlement.

Regardless of their motivation or the propriety of objectors' counsel submitting

objections, each of their objections lacks merit, as discussed below.

A.      **The Release is Appropriate.**

The objectors first claim that the release set forth in the settlement agreement is

overbroad.  In particular, the objectors claim that the release covers claims that go beyond the

payment of wages to employees as well as the time period after the employees were re-classified as non-exempt.  This objection is nothing but a red herring.

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief."  *Wal-Mart Stores,* 396 F.3d at 106.  Guiding the analysis are two principles: the identical factual predicate doctrine and the adequacy of representation doctrine.  As to the first, "[t]he law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."  *Id.* at 107.  As to the second, "[a]dequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim."  *Id.* at 106-07.

Typically, challenges to the scope of the release do not defeat approval of settlements because courts recognize them to be nothing more than a claim for additional compensation.  *See Wal-Mart Stores,* 396 F.3d at 113.

Here, the release meets both requirements.  First, all of the claims being released, whether they were asserted specifically or not, arise out of the identical factual predicate based on defendants' alleged failure to properly pay the affected employees.  Second, plaintiffs contend that the class members are clearly aligned given that they all commonly claim that they were not properly paid by defendants.

In fact, the release makes this point clear.  The provision concerning released claims refers specifically not only to wage and hour related claims, but also to claims arising out of or in any way related to the time in a "Covered Position," which is expressly limited to the

time period during which the positions were classified as exempt.[6]  *See* Settlement Agreement (Dkt. No. 185-1), at §§ 1.11, 1.33, 1.34.  By its terms, then, the release only applies to claims arising out or in connection with the time period the class member is or was in a Covered Position.

Contrary to the contentions by the objectors, the release of federal law claims and release of state law claims in the Settlement Agreement properly include claims related to the failure to pay overtime allegations in this action.  Defendants have agreed to pay money in this settlement so that they can extinguish any potential overtime and related wage and hour claims.  Defendants are paying for, and have the right to receive, peace from wage and hour claims from class members who are part of the settlement.  *See Wal-Mart Stores*, 396 F.3d at 106 ("Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country.").

Indeed, it is standard and common in class action wage and hour settlements for the employer to receive a release of all wage and hour claims, and objectors' counsel has repeatedly agreed to such provisions.  For example, in *Steinberg v. Morgan Stanley & Co. Inc.*, No. 06-2628 (S.D. Cal. settlement filed on 12/27/07 and approved on 7/10/09), *in which objectors' counsel here was counsel for the class*, the parties agreed to release a list of state law claims that was very similar to the claims released here as set forth in Schedule 2.  *See Steinberg* Dkt. No. 15, Exhibit 4.  In fact, the parties modeled Schedule 2 to this Settlement Agreement on Exhibit 4 of the *Steinberg* settlement.  Objectors' counsel represented in

---

[6]     Thus, objectors' argument that class members are receiving "zero" consideration for their hourly claims is simply baseless given that such claims are not subject to the release.  Thus, whatever the import of *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, (2d Cir. 1981), it has no bearing here.

*Steinberg* that the settlement was fair.  In that case, nearly all of the California claims that objectors contend here are too broad to be included in a release were part of the list of released claims.  Similarly, in *Garett v. Morgan Stanley DW, Inc.*, No. 04-01858 (S.D. Cal. settlement filed on 3/27/06 and approved on 9/12/06) (*Garett* Dkt. No. 32, §1.31), objectors' counsel also represented the class and similarly agreed to a list of released California state law claims that is very similar to the list on Schedule 2 to this Settlement Stipulation.

The claims challenged by objectors as overbroad for inclusion in the release are routinely included in wage and hour lawsuits.  For example, Section 2802 of the California Labor Code claims for reimbursement of business expenses is a related claim that is commonly brought with other wage and hour claims.  Similarly, claims under the Private Attorney General Act ("PAGA") in California are also derivative claims that are frequently brought with wage and hour claims in California.  *See, e.g., Waisbein v. UBS Fin. Serv.*, No. 07-02328, 2007 U.S. Dist. LEXIS 92051, at *9 (N.D. Cal. Dec. 5, 2007) (holding that PAGA claims were included in the release of claims for class members as part of underlying settlement of a similar class action in which PAGA claims were not alleged in the wage and hour complaint but were identified in the release).

Objectors' arguments in their brief also demonstrate that the state law wage and hour claims that are covered by the settlement's release are derivative of each other.  Objector Takahashi claims damages for waiting time, meal breaks, and penalties.  Objections at 21-22. He includes damages for such claims in his calculations of damages which he calls his "exempt-based claims." *Id.* at 22.  Objectors cannot contend on one hand that "exempt-based" claims should not be included in the release yet should be included in calculation of damages potentially available to class members.  This inconsistency demonstrates that the

related claims are properly included in the scope of the release of claims.  The release of claims is not overbroad because it includes a release of related wage and hour claims, and objectors' objection should be denied.

Further, all class members received court-approved notice of this settlement which described the claims released.  To the extent any class members, including the objectors, believed the release is too broad or that they did not receive sufficient compensation for all of the claims released, they had every right to opt-out of the settlement and pursue those claims separately.[7]

Thus, the objectors' claim on this basis is entirely unfounded.

### B.   California Class Members Stand to Receive a Fair Recovery for the Settlement of Their Claims.

Next, the objectors argue that the California class members' recovery is inadequate, primarily relying on the calculation of objector Takahashi's purported damages.  The objectors' analysis is flawed.

To start, the objectors attempt to show that the recovery is unfair based on their calculations for a single class member.  Of course, such an analysis oversimplifies the objective of any settlement which is to arrive at a compromise which is fair, reasonable and adequate for all class members, not any single class member such as Mr. Takahashi.  Not only have an overwhelming percentage of the class elected to participate in the settlement, but an even higher portion of California class members – 86% representing 94% of California work months – desire to receive benefits under the settlement.  Lingle Aff., Ex. 4, ¶¶ 15, 16.

---

[7]     In contrast to this settlement in which the language of the release of claims was provided to all class members as part of the Court-approved notice, in the *National Super Spuds* case relied on by objectors, the class was certified before the parties finalized the release and notice did not identify the scope of the release or allow adequately for the opportunity to opt out.  *National Super Spuds*, 660 F.2d at 14, 19.

Further, Mr. Takahashi's calculations include several overly generous assumptions. For example, he assumes that he worked overtime *every single week* of his employment, without regard to whether there was a holiday or if he took vacation. In addition, he assumes that he worked 15 hours of overtime in *each* of those weeks, without fluctuation. Moreover, he uses the generous statute of limitations available to him as a benefit of the settlement of this case, when he would not be entitled to such a lengthy recovery period in his own case. Then, he adds damages for additional claims, and comes to a total gross amount. Simply, Mr. Takahashi's calculations result in an overly optimistic, very top-line potential recovery.

Additionally, Mr. Takahashi's comparison does not account for reductions for fees and expenses. It is quite clear that he should not expect to be represented by his counsel for free. Thus, any amount Mr. Takahashi comes up with needs to be reduced for those fees and costs in order to come up with a like comparison with what this settlement offers him. His calculations do not provide that basis for a comparison.

More to the point, the settlement offers class members in California substantial value – providing them with four times that of class members in other states in recognition of the additional protections arguably afforded them under California law. In fact, this additional compensation goes beyond that typically contained in settlements where objectors' counsel represented the plaintiffs, where they typically only allocate two to three times the amount for class members in California. *See In re: Wachovia Securities LLC Wage and Hour Litig.*, No. SACV 05-1031, MDL No. 07-1807 (C.D. Cal. Settlement Filed on 4/7/09 and Approved on 10/6/09) (California class members received approximately 1.5 times more per month than class members in "Tier 2" states and 2.5 times more per month than class members in other states); *Citigroup Wage & Hour Litig.*, No. 04-04440 (N.D. Cal. Settlement Filed on 2/7/08

and Approved on 3/18/08) (California class members received approximately 3 times more

per month than class members in other states); *Garett v. Morgan Stanley DW, Inc.*, No. 04-

01858 (S.D. Cal. Settlement Filed on 3/27/06 and Approved on 9/12/06) (settlement of only

California class members was approximately 2.5 times larger per month than class members

in other states received in similar *Steinberg v. Morgan Stanley* settlement); *Karim v. Banc of*

*America Investment Services, Inc.*, No. 06-167 (C.D. Cal. Settlement Filed on 6/22/07 and

Approved on 3/24/08) (California class members received two times as much as non-

California class members).  Thus, it cannot be said that this settlement is anything other than

generous for any class member, including those in California.[8]  Objectors do not cite to a

single case in which California class members received as much as four times or greater than

non-California class members.  And, if any class member thought they were not receiving

---

[8]     The objectors also appear to believe that success would be a foregone conclusion in California,
based on state court rulings they cite.  However, they overlook the fact that the Ninth Circuit
expressly rejected the holding of their principal case, *Bell v. Farmers Ins. Exchange*, 87 Cal.
App.4th 805 (2001), which is particularly notable given (1) their admission that state courts in
California rely on the federal authorities to construe California law and (2) that their suits are
pending in federal court where *In re Farmers* is controlling.  *See In re Farmers Ins. Exchange*, 481
F.3d 1119, 1132 (9th Cir. 2007).  Moreover, defendants will argue that the decision in *In re
Farmers* is inconsistent with the Second Circuit's decision in *Whalen*.  In *In re Farmers,* the court
found that employees who were providing the only service of the company – claims adjusting
services – were not performing production work and that such an argument elevated form over
substance.  *Id.*  The court found that the proper focus was on whether the employees could
represent the company and have an effect on its finances and/or business operations.  *Id.*; *see
also Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1127 (9th Cir. 2002) (holding that the
administrative-production dichotomy "is but one analytical tool, to be used only to the extent
it clarifies the analysis" and explaining that "only when work falls 'squarely on the
"production" side of the line'" has the "dichotomy been determinative").  Defendants will also
argue that class certification would also be an uphill battle in California given that the Ninth
Circuit has held in companion cases that it was inappropriate to certify a class action of
mortgage employees where a fact-intensive inquiry as to each potential class member would be
required.  *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009);
*Vinole v. Countrywide Home Loans, Inc., 571* F.3d 935 (9th Cir. 2009).  Furthermore, the only
court that has considered class certification of underwriters was a California court that rejected
certification.  *Creese v. Washington Mutual Bank*, No. B193931, 2008 WL 650766, at *8 (Cal.
App. Mar. 12, 2008) (many differences and variations among underwriters defeats
commonality and would cause case to "devolve into a series of complicated mini-trials").

enough recovery, they were free to opt-out of the settlement and to attempt to obtain more through their own case (which would have been simple for the objectors given that they already had commenced other cases).

**C.    The Class Representatives Have Adequately Represented the Interests of all Class Members.**

Objectors raise three arguments to suggest that the *Davis* plaintiffs are inadequate class representatives.

First, the objectors claim that the *Davis* plaintiffs cannot represent California underwriters because they have conflicting economic interests, suggesting that the *Davis* plaintiffs have an interest in undervaluing California claims.  Actually, the reverse is true.

In negotiating the settlement, the *Davis* plaintiffs had every incentive to make the settlement as large as possible, including accurately assessing the value of claims for class members in California, in order to maximize both their own recovery and every other class member's recovery.  And, in terms of allocation, the *Davis* plaintiffs also recognized the additional potential value of claims in California and allocated those class members four times that received by other class members – double that typically allocated to workers in California by objectors' counsel in settlements they have negotiated.  Thus, objectors fail to demonstrate even a potential conflict between the *Davis* plaintiffs and class members in California.  *See Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 52 (E.D.N.Y. 2010) (in FLSA collective action and Rule 23 class action settlement, holding that class representatives could fairly allocate different multipliers to class members in different job titles based on the strengths of their claims notwithstanding the fact that the class representatives did not hold all jobs).

Objectors cite *Amchem*, 521 U.S. at 625, in support of their argument, but the facts of that case make it inapposite.  *Amchem* concerned a settlement of a mass tort action arising from asbestos-related injuries before the plaintiffs initiated any litigation.  Included in the settlement were both individuals who were currently injured as well as those who only had been exposed to asbestos but did not fall into the "currently injured" category (i.e., they had not yet manifested physical injuries).  Because the interests of the exposure-only group varied so extensively from the currently injured group, the Supreme Court found a conflict between them.  In the parlance of *Amchem*, in this case all class members fall into the "currently injured" category – they all were allegedly owed unpaid wages.  In other words, no recovery has been set aside for underwriters who are allegedly owed overtime wages in the future, which would be the equivalent scenario to that presented in *Amchem*.  Thus, *Amchem* offers no guidance in this case.

Objectors' argument based on *Amchem* that it is necessary to have additional class representatives from other states has also been rejected in a wage and hour case strikingly similar to this one.  In *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *8 (D.N.J. July 24, 2006), the court certified a nationwide FLSA and state law settlement class over objections by class members from Washington who were litigating a competing suit. *Id.* at *2-3.  The class representatives for the settlement class were from California and New Jersey.  *Id.* at *4.  The settlement provided that class members from certain states, including Washington, New Jersey, and California, would recover 50% more than other class members because the laws of these states were more favorable on certain relevant points.  *Id.* at *16. Despite the fact that there was not a Washington class representative or a class representative from any of the states receiving lesser settlement amounts, the court approved the settlement.

*Id.* at *19.  The court held that "variations between the wage and hour laws of different states are not sufficient to defeat predominance for a settlement class."  *Id.* at *8.  The court also rejected the objectors' argument that the settlement was unreasonable given the much higher estimates of what the Washington plaintiffs would recover at trial, holding that "it is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  *Id.* at *16.

In fact, objectors' counsel over and over and over again has settled class action lawsuits on a nationwide basis without class representatives from every state, each time representing that the settlement is fair.  *See, e.g., Poole v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 06-01657 (D. Or., Settlement Approved 2/8/10); *In re Wachovia Sec. LLC Wage & Hour Litig.*, No. 07-01807 (C.D. Cal., Settlement Approved 10/6/09); *Bahramipour v. Citigroup Global Markets, Inc.*, No. 04-04440 (N.D. Cal., Settlement Approved 3/18/08).  Objectors' counsel acknowledges this fact but tries to explain that it has not done so without a California class representative.  Objections at 26, n.14.  Objectors' counsel's explanation rings hollow.  It appears that the better explanation for objectors' counsel's strained position is that not having class representative from each state is acceptable when counsel benefits from an award of attorneys' fees, but not when it does not so benefit.

Second, objectors claim that the *Davis* plaintiffs cannot represent hourly underwriters. Consistent with the discussion above concerning the release, this is nothing more than an invention of the objectors given that the *Davis* plaintiffs do not claim to represent such underwriters and the settlement does not affect any potential claims class members may have for time spent working as hourly underwriters.

Finally, the objectors assert that the *Davis* plaintiffs cannot represent auto loan underwriters because they claim that those underwriters' claims are "arguably" "stronger" because they exercised less discretion.[9]  Setting aside whether that is even true, plaintiffs contend that the objectors focus on the wrong prong of the applicable exemption.  Even in his copycat complaint against JPMorgan Chase on behalf of auto underwriters, objector McDaniel alleges that the putative class members are similar because they "are engaged in producing the product that Chase offers for sale to the public: automotive loans" and that "[t]hey did not perform work that was directly related to Chase's management policies or general business operations."  *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 10-10044 (C.D. Cal.), Class Action Complaint, Dkt. No. 1, ¶¶ 8, 13.  Mr.  McDaniel does not allege that the putative class of auto underwriters was similar based upon the exercise of discretion or lack thereof.  Accordingly, both Class Counsel and objectors agree on the argument that both auto underwriters and mortgage underwriters are nonexempt insofar as they are engaged in the production of the product that JPMorgan Chase offers.[10]

### D.      There is Nothing Improper About Unawarded Attorneys' Fees Remaining the Property of JPMorgan Chase.

There simply is nothing wrong with an agreement that provides that unawarded attorneys' fees will not be paid by the defendants and will not be redistributed to the class. Courts have routinely approved settlements with such provisions, including in cases in which

---

[9]      Mr. McDaniel asserts that as an auto loan underwriter, he had arguably stronger claims, suggesting that he should have received more in recovery.  However, many other class members who were also auto loan underwriters fully support the settlement and, accordingly believe their recovery is at the very least fair, reasonable, and adequate.  *See, e.g.*, Lingle Aff., Exs.  5, 7, 9-12, 14-7, 19-21, 25-6, 29, 34-5, 37-9, 41-2, 46-7, 52, 55-6, 58, 61-2, 64, 69-71, 73-4, 76, 78, 83, 85-6, 90.

[10]     For the same reasons, plaintiffs contend that the cases cited by objectors on this point do not compel a different outcome given that such cases focus on differences in job duties among the plaintiffs.

objectors' counsel represented the plaintiffs.  Indeed, even in the Ninth Circuit case upon

which objectors primarily rely, the court approved a settlement that contained a provision

stating that any reduction in attorneys' fees by the court would not be paid out by the

defendant.  *Glass v. UBS Financial Services, Inc.*, 331 F. App'x 452, 456 (9th Cir.), *cert. denied*,

*Evans v. Glass*, 130 S. Ct. 801 (2009).

      Objectors claim that *Glass* and another Ninth Circuit case, *Staton v. Boeing Co.*, 327

F.3d 938, 970 (9th Cir. 2003), show that "in recent years" courts have disfavored settlement

agreements that award attorneys' fees from a separate fund and provide that any attorneys'

fees not ultimately approved by the court revert back to the defendant.  Objections at 29.

Objectors' reliance on these cases is misplaced.  In *Staton*, for example, the court was

primarily concerned with the fact that the entire settlement was conditioned upon the court

awarding a particular amount of attorneys' fees.  327 F.3d at 969-72.  As for *Glass*, the

court's approval of a common fund settlement which contained a provision permitting

attorneys' fees that were not awarded to remain property of the defendant rebuts any reliance

on the prior decision in *Staton* for the argument that such arrangements are improper.  *Glass*,

331 F. App'x at 456.  Thus, even non-controlling Ninth Circuit case law relied upon by

objectors contradicts, rather than supports, objectors' argument.  *See also Williams v. MGM-*

*Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (finding that parties may properly

negotiate payment of attorneys' fees and that unclaimed money in settlement fund would "be

returned to the defendants if it is not used to pay the class attorneys' fees[,]" but reversing

and remanding on other grounds); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Marketing &*

*Sales Practices Litig.*, No. 5:09-02015, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011)

(approving class action settlement in which defendants "agreed to pay attorneys' fees and expenses of up to $25 million separate and apart from the class fund").

Moreover, courts in the Second Circuit have routinely approved similar settlements in which the parties agreed that unawarded attorneys' fees need not be paid by the defendant. For example, in *Dornberger v. Metropolitan Life Insurance Co.*, 203 F.R.D. 118, 143 (S.D.N.Y. 2001), the court approved a common fund settlement that provided for attorneys' fees to be paid directly by defendant, rather than from the common fund.  *See also Kamens v. Horizon Corp.*, No. 75 Civ. 1366, 1981 WL 1634, at *2 (S.D.N.Y. May 26, 1981) (same).  These decisions also reject the premise of the objectors' argument that attorneys fees must be taken from the settlement fund as a whole rather than from a separate fund.  *Dornberger*, 203 F.R.D. at 125 (recognizing that the "[s]ettlement structure[d] attorneys' fees so that they [were] separate from and not a deduction from the Settlement award to the plaintiff class"); *Kamens*, 1981 WL 1634, at *2 ("Neither attorneys' fees, expenses, costs of notice, nor administrative costs will be deducted from the settlement fund.").  Thus, even if this settlement could be described as objectors have done, it is not improper.  It is not inappropriate to create a fund to pay the Class Members and for JPMorgan Chase separately to pay attorneys' fees in an amount awarded by the Court.  This would be similar to the arrangements in the cases cited above.  *See Kamens*, 1981 WL 1634, at *4-5 (approving less attorneys' fees than the parties had stipulated to, which resulted in defendants paying a lesser amount of attorneys' fees than the maximum agreed to in the settlement agreement, and finding that the reduction of the requested fees did not result in a windfall to defendants because defendants had merely agreed to pay up to a maximum amount, and this did not relieve the court of its obligation to evaluate the reasonableness of the requested fees).

Not only do these cases show that settlement arrangements in which attorneys' fees that are not awarded need not be paid by defendants are entirely proper under Second Circuit case law, but also numerous courts outside of the Second and Ninth Circuits likewise have approved such settlements.  *See, e.g.*, *Prandini v. National Tea Co.*, 585 F.2d 47, 49 (3d Cir. 1978) (upholding settlement agreement and attorneys' fee award that included a reversion to the defendant of unawarded attorneys' fees); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785-86 (N.D. Ohio 2010) (approving settlement agreement and attorneys' fees award that was payable separate from the common fund, rejecting the same argument the objectors make in this case under *Staton* as "confounding" and supported by "no legal authority," and noting that "[i]ndeed, one could argue that the policy of assuring zealous advocacy on behalf of a class is better served by a structure that divorces the Actual Payment from any attorney fee provision."); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 364 (D.D.C. 2007) (approving class action settlement where "the settlement ha[d] separate funds for class recovery and attorneys' fees"); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) (same); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1652303, at *2 (D.N.J. June 5, 2007) (granting motion for attorneys' fees in approved settlement that provided that defendant would pay attorneys' fees, expenses, and incentive awards "[i]n addition to and separate from the Settlement Fund"); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995) (approving settlement which stated that any amount of attorneys' fees disapproved by the court would be unpaid by the defendant and not be shared with the class).

In addition, counsel for the objectors have agreed in many class action settlements that unawarded attorneys' fees would not be redistributed to class members.  *See, e.g.*,

*Steinberg v. Morgan Stanley*, No. 06-02628 (S.D. Cal., Settlement Filed on 12/27/07 and

Approved on 7/10/09), Dkt. No. 15, ¶ 2.9.1; *Garett v. Morgan Stanley DW, Inc.*, No. 04-01858

(S.D. Cal. Settlement Filed on 3/27/06 and Approved on 9/12/06), Dkt. No 32, ¶ 2.8.1;

*Burns v. Merrill Lynch Pierce Fenner & Smith Incorporated*, No. 04-04135 (N.D. Cal. Settlement

Filed on 1/13/06 and Approved on 2/17/06), Dkt. No. 24, ¶ 2.8.1; *Takacs v. A.G. Edwards &*

*Sons, Inc.*, No. 04-01852 (S.D. Cal. Settlement Filed on 5/25/07 and Approved on 11/5/07),

Dkt. No. 210, § VI.  Thus, objectors' counsel has advocated that settlement after settlement

was fair when unawarded fees were not paid to the class members in those cases.  The

obvious conclusion to be drawn by this objection, then, is that such arrangements are

acceptable when objectors' counsel benefits from the award of attorneys' fees, but not when

objectors' counsel do not stand to receive an attorneys' fee award.

Finally, objectors' claim that class members will not be incentivized to scrutinize the

attorneys' fees if unawarded fees do not revert to the class is unfounded.  The argument

epitomizes irony given that, if nothing else, objectors and their counsel have at every turn

scrutinized all aspects of the settlement.  Objectors' actions alone belie their argument that

class members have no incentive to scrutinize the attorneys' fees.

Accordingly, the objection to the fact that the settlement does not require JPMorgan

Chase to pay unawarded attorneys' fees is unsupported by law and is inconsistent with past

practice by counsel for the objectors, and the objection should be denied.

###    E.    The Settlement Schedule has Provided Objectors with Sufficient Opportunity to be Heard.

The objectors next argue that they should be provided with an opportunity to object

twice to the settlement – the first time as part of the standard procedure for approval of

settlements and then a second time once those objections have been responded to by the parties.  There is no precedent for what the objectors request.

Instead, this case has followed, and should continue to follow, the standard procedure for approval of class action settlements – preliminary approval, followed by notice, with an opportunity for class members to opt-in, object, or opt-out, then the parties' responses to any objections and their motion for final approval concluding with the final approval hearing before the Court.[11]  Objectors have not identified, nor are there, any grounds to alter this well-established procedure.[12]

Nor have objectors been denied an opportunity to be heard.  As they have been assured multiple times over, although they still insisted on attempting to circumvent the process, they were provided with an opportunity to object to the settlement – and object they did.  There exists no possible reason for objectors to be provided with any additional opportunities as they have been given all that due process requires.

F.    **The Parties have Demonstrated that the *Grinnell* Factors Weigh Heavily in Favor of Approval of the Settlement.**

As discussed above, the *Grinnell* factors weigh heavily in favor of the settlement.  Thus, this objection is moot.

---

[11]     Objectors do not seriously dispute that a percentage award of 33 1/3% is reasonable.  Indeed, had they believed as much, they had all information necessary to submit such an objection but did not.  To the extent, then, that any potential objection would be based on a lodestar analysis, it is moot given that Class Counsel has sought fees on a percentage basis.

[12]     *See Carlson v. Xerox Corp., KPMG LLP,* No. 09-0544-cv, 2009 WL 4640661 (2d Cir. Dec. 9, 2009) (unpublished decision) (class settlement notice informing class members of the amount of attorneys' fees to potentially be sought by class counsel is sufficient under Rule 23).

## **CONCLUSION**

For the foregoing reasons, and for the reasons previously set forth by the parties, this

Court should grant final approval of the settlement.


Dated: July 14, 2011

s/ *J. Nelson Thomas*
J. Nelson Thomas
Michael J. Lingle
THOMAS & SOLOMON LLP
Class Counsel
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com


s/ *Sam S. Shaulson*
Sam S. Shaulson
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
*Attorneys for Defendants*
101 Park Avenue
New York,, New York 10178
Telephone: (212) 309-6718
sshaulson@morganlewis.com
cgonell@morganlewis.com