UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL J. DAVIS,
and all others similarly situated,


                              Plaintiffs,

                                                      DECISION AND ORDER

                                                      01-CV-6492L

              v.

J.P. MORGAN CHASE & CO.,
J.P. MORGAN CHASE BANK, and CHASE
MANHATTAN MORTGAGE CORPORATION,

                              Defendants.
_____

       This action was brought by five employees of J.P. Morgan Chase & Co. ("Chase"), on behalf

of a class of persons, composed generally of persons who were employed by Chase in certain

capacities during a certain time period, to recover unpaid overtime wages under the Fair Labor

Standards Act ("FLSA") and New York state law.  On April 6, 2011, the Court issued a Decision

and Order, 775 F.Supp.2d 601, familiarity with which is assumed, preliminarily approving the

parties' settlement of plaintiffs' claims, conditionally certifying a class for settlement purposes, and

approving a notice of the proposed settlement to be sent to class members.  The Court also scheduled

a fairness hearing on July 21, 2011 for the purposes of determining the fairness, adequacy, and

reasonableness of the settlement, fixing the amount of attorney's fees payable to class counsel, and

hearing any objections to the proposed settlement.

       The Court held the fairness hearing as scheduled on July 21.  Counsel for plaintiffs and

defendant both appeared, as did counsel for the three class members who have filed objections to the

proposed settlement ("objectors").  Having considered the submissions and arguments of both sides

as well as those of the objectors, I conclude that the proposed settlement is fair and adequate, and I approve the proposed settlement.

## DISCUSSION

### I. Approval of Class Action Settlements: General Principles

Federal Rule of Civil Procedure 23(e)(2) provides that "the court may approve [a settlement] ... only after a hearing and on finding that the settlement ... is fair, reasonable, and adequate." *Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 247 (2d Cir. 2007) (internal quote omitted). The Court of Appeals for the Second Circuit "ha[s] have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005). "Such a presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). In other words, the court should consider both the substantive and the procedural fairness of the settlement. *McReynolds*, 588 F.3d at 803-04.

With respect to procedural fairness, "a District Court reviewing a proposed settlement 'must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability,

and have engaged in the discovery, necessary to effective representation of the class's interests.'"

*McReynolds*, 588 F.3d at 804 (quoting *D'Amato*, 236 F.3d at 85).

Concerning substantive fairness, the Second Circuit has instructed district courts to consider nine specific factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *accord D'Amato*, 236 F.3d at 86.

In deciding whether a settlement should be approved, the court must also keep in mind that its role is circumscribed.  The Court may approve or reject the settlement, but it "does not have the authority to 'delete, modify or substitute certain provisions.'" *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, No. C 06-5125, 2010 WL 2228531, at *2 (N.D.Cal. June 2, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  If the court finds one or more provisions particularly objectionable, the court may advise the parties that it will not approve the settlement unless the offending provisions are modified or deleted, *see Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986), but the court may not take it upon itself to rewrite the agreement, nor may it force the parties to accept settlement terms to which they have not agreed.  *Id.* at 726; *In re Agent Orange Product Liability Litigation*, 821 F.2d 139, 144 (2d Cir. 1987).

The court's task, then, is simply to decide whether the settlement agreement *as written* is fair, reasonable, and adequate, not whether the parties or the court could conceivably have come up with a "better" agreement.  *See In re Classmates.com Consol. Litigation*, No. C09-45, 2011 WL 744664, at *4 (W.D.Wash. Feb. 23, 2011) ("It is not the court's role to design a better settlement for the

parties"); *Evansville Greenway and Remediation Trust v. Southern Ind. Gas and Elec. Co., Inc.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (S.D.Ind. Sept. 20, 2010) ("It is not the court's function to determine whether the proposal is the best possible settlement that could have been obtained or one which the court itself might have fashioned") (internal quote omitted); *Ball v. AMC Entertainment, Inc.*, 315 F.Supp.2d 120, 129 (D.D.C. 2004) ("when determining whether to approve a proposed settlement, courts must determine whether the settlement is adequate and reasonable and not whether a better settlement is conceivable") (internal quote omitted).

## II. Application to this Case

After applying this analytical framework here, I conclude that the proposed settlement is both procedurally and substantively fair, and that it should be approved.  First, there is no indication that the settlement agreement is the product of anything other than arm's-length negotiations, and the objectors do not appear to contend otherwise.  Based on my familiarity with this action and with the attorneys, the Court also finds that plaintiffs' counsel possess the requisite experience and ability, and have engaged in sufficient discovery, to effectively represent the class's interests.  *McReynolds*, 588 F.3d at 804.

With respect to the *Grinnell* factors, this is a relatively complex FLSA class action that has already been litigated for some ten years, involving thousands of class members and extensive discovery.  A trial in this case would likely be lengthy and complicated as well.

The reaction of the class to the proposed settlement also favors approval of the settlement. Of the roughly 3800 individuals who were sent notice of the settlement, only eleven opted out, and just three–Cynthia Cole, Darin Takahashi, and Steve McDaniel–have objected.  Although those three objectors purport to speak for California class members generally, as explained below, it is still fair to say that there has been very little negative reaction by class members to the proposed settlement.

In considering the risks of establishing liability and damages, and of maintaining the class action through the trial, it is important to keep in mind that this Court's role is not to "decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *accord In re Veeco Instruments Inc. Securities Litigation*, No. 05 MDL 01695, 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007); *Cinelli v. MCS Claim Services, Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185-86 (W.D.N.Y. 2005). Since the Court cannot "foresee with absolute certainty the outcome of the case," *Frank*, 228 F.R.D. at 186 (internal quote omitted), "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

This has been a vigorously contested case, involving extensive discovery, several amended complaints, a summary judgment decision in favor of defendants by this Court, an appeal to the Second Circuit, which reversed and remanded that decision, an unsuccessful certiorari petition to the Supreme Court by defendants, and finally court-ordered mediation, which ultimately led to the settlement now before me. *See* 569 F.Supp.2d 327 (W.D.N.Y. 2008), *rev'd*, 587 F.3d 529 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 2416 (2010). Again, it is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial.

While defendants could presumably withstand a greater judgment, I assign relatively little weight to that factor here. It is more important to assess the judgment in light of plaintiffs' claims and the other factors that the Court has discussed. Were a defendant's ability to withstand a greater judgment a critical factor, then only the most massive settlement awards could be deemed reasonable in cases against large corporations. *See Castagna v. Madison Square Garden, L.P.*, No. 09–cv–10211, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011) ("a 'defendant's ability to

withstand a greater judgment, standing alone, does not suggest that the settlement is unfair'")
(quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)) (additional internal
quote omitted).

The final *Grinnell* factors are the range of reasonableness of the settlement fund in light of
the best possible recovery, and in relation to a possible recovery in light of all the attendant risks of
litigation.  The settlement fund here totals $42 million, one third of which, $14 million, is to be paid
out as class counsel's attorney's fees, leaving $28 million for the class members.  Despite that
substantial settlement, the objectors here have argued that the parties have failed to make any
showing of what the settled claims would be worth if the case proceeded to trial.

In considering this factor, it is important to bear in mind that it will often be difficult if not
impossible to calculate with any precision or accuracy what the best possible, or likely, recovery
would be at trial.  Numerous factors and contingencies may enter into that equation, preventing it
from being reduced to a simple formula.  *See In re Metlife Demutualization Litig.*, 689 F.Supp.2d
297, 340 (E.D.N.Y. 2010) ("The determination of a reasonable settlement is not susceptible of a
mathematical equation yielding a particular sum but turns on whether the settlement falls within a
range of reasonableness [that] recognizes the uncertainties ... in any particular case") (internal quote
omitted).

In the case before me, despite the Second Circuit's reversal of this Court's summary
judgment decision, additional defenses remained available to defendants.  As detailed in the parties'
joint motion for approval of the settlement, defendants would likely have challenged plaintiffs'
motions for class- and collective-action status, and they planned to pursue a defense based upon their
alleged good-faith reliance on regulations of the United States Department of Labor.  *See* Dkt. #225
at 14.

Thus, plaintiffs would have faced real risks had this matter proceeded to trial, and given the multiple hurdles that they would still have had to clear, and the issues that remained to be decided (such as issues concerning the limitations period and defendants' willfulness), any dollar figure assigned as the maximum potential aggregate recovery by plaintiffs would mean little, and would not provide a particularly useful benchmark for measuring the reasonableness of the settlement.

Given the multiple issues that remained to be decided in this case, then, I believe that it is reasonable to view this settlement in terms of what individual class members stand to receive as a result of the settlement. It is also fair to ask what the likelihood would have been of plaintiffs obtaining a judgment for much more than what is called for under the settlement. Seen from those perspectives, the recovery is a substantial one.

As explained by the parties, class members outside California will receive compensation for seventeen overtime hours per work month, while California class members will receive nearly twenty-three overtime hours per work month.[1] Dkt. #225 at 16. Individual class members stand to receive various dollar amounts, in sums ranging as high as $94,625. *See* Pl. Ex. 3 (Dkt. #226-1) at 3 ¶ 10.

A calculation of individual class members' monetary compensation depends in part on what assumptions are made concerning the appropriate number of work weeks per year and work months per class period. The objectors have come up with a figure of $169,520,832 as defendants' total overtime exposure, *see* Dkt. #187 at 4 n.2, but again that figure is based on certain assumptions concerning the appropriate numbers. The parties, using different but no less reasonable numbers, have employed a similar calculation to arrive at a figure of about $45.5 million, which is close to the actual amount of the settlement. Dkt. #225 at 16-17.

---

[1]The reason for the different treatment of California and non-California class members is explained below.

In any event, while it is proper to assess the settlement amount by comparing it with the "best possible" recovery, that does not mean that the Court should rigidly measure the settlement amount against some purely theoretical, best-case-scenario sum, which plaintiffs may have had little realistic chance of actually recovering.  *See Canupp v. Sheldon*, No. 2:04-cv-260, 2009 WL 4042928, at *10 (M.D.Fla. Nov. 23, 2009) (stating that court should not "order a proponent of a proposed settlement to 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Likewise, the Court should not impose some arbitrary cutoff, and refuse to approve a settlement that falls below a certain percentage of that purely theoretical recovery.  "[T]here is 'a range of reasonableness with respect to a settlement,' and the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *Global Crossing*, 225 F.R.D. at 460-61 (finding on facts of that case that "when judged against the realistic, rather than theoretical, potential for recovery after trial, the settlement amount is extremely beneficial") (internal quote omitted).  *See also Dupler v. Costco Wholesale Corp.*, 705 F.Supp.2d 231, 246 (E.D.N.Y. 2010) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved") (quoting *Grinnell*, 495 F.2d at 455).

## III. Scope of the Releases

The objectors have also complained that the releases contained in the settlement forms are overbroad.  They argue that the releases extend beyond the factual predicate of this lawsuit.

"The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart*, 396 F.3d at 107 (citation omitted). Thus, the released *claims* need not be identical to those asserted in the lawsuit, as long as the underlying *facts* are the same; *see In re Adelphia Communications Corp. Securities & Derivative Litigation*, 272 Fed.Appx. 9, 13 (2d Cir. 2008) (settling class-action plaintiffs may release claims that arise from the same "core of facts" as the claims presented in the complaint).[2]

Contrary to the objectors' assertions, the releases here do not extend beyond the factual predicate of this lawsuit. As the Second Circuit has recognized, "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country," *Wal-Mart*, 396 F.3d at 106, and the objectors' arguments are based on an unnecessarily restrictive view of what is permitted under the "identical factual predicate" rule.

The language of the settlement (Dkt. #185-1) makes clear that the released claims are limited to claims arising out of the factual predicate underlying this lawsuit. It provides that the parties' stipulation "is intended ... to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims and Released Federal Law Claims ... ." Dkt. #185-1 at 5. The term "Released Federal Law Claims" is defined to include

> any and all federal law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against JPMorgan Chase Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or

---

[2]It is also necessary for the released claims to have been adequately represented by the named plaintiffs, which ":is established mainly by showing an alignment of interests between class members ... ." *Wal-Mart*, 396 F.3d at 107. The objectors do not expressly oppose the proposed settlement on that ground, although they do contend that the settling plaintiffs have improperly purported to release claims that they do not possess, for no consideration. That argument is addressed below.

unanticipated, including Unknown Claims as defined in section 1.44 hereof, by a Class Member that accrued on any date up through and including the date on which the Participating Claimant executes the Qualifying Settlement Claim Certification and Consent to Join Settlement Form, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.* for Class Members in Covered Positions, including all such claims that are existing and have been asserted as of the date on which the Participating Claimant executes the Qualifying Settlement Claim Certification and Consent to Join Settlement Form.

*Id.* ¶ 1.33.

The definition of "Released State Law Claims" is similar, and includes

any and all claims which arose under applicable state laws for failure to timely pay wages, including payment of wages at termination arising out of or relating to the Class Members' work in a Covered Position; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods in a Covered Position; (e) any and all claims under applicable state laws stemming from or based on the alleged misclassification of employees in Covered Positions as exempt employees, *i.e.*, employees who JPMorgan Chase classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in state law; and (f) all claims for penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (e) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date.

*Id.* ¶ 1.34.

A commonsense reading of these definitions shows that they are limited to claims arising out of the same facts as plaintiffs' wage and hour claims in this case. The objectors have focused on the phrase "without limitation," arguing that it could be construed to expand the scope of the release far beyond such claims, but I do not believe that such an interpretation would be reasonable. Read in context, as it should be, the phrase "without limitation" simply indicates that *all* wage and hour claims of the type referred to in the rest of the paragraph fall within the scope of the release. The objectors' other arguments concerning the release, which mostly deal with the release of certain types of claims under California law, are likewise based on an overly restrictive application of the "identical factual predicate" rule, and are unpersuasive.

- 10 -

The objectors also contend that the release is invalid because the named plaintiffs seek to settle claims that they do not possess, for no consideration.  The objectors are correct that settling class members generally cannot validly release other class members' claims that they themselves do not possess, for no consideration.  *See National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class").

A court, then, when reviewing the fairness of a proposed class action settlement, "must take 'special care ... to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent an advantage to the class ... [bought] by the uncompensated sacrifice of claims of members, whether few or many.'"  *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)) (additional internal quote omitted).  In *Karvaly*, for example, the district court declined to approve a proposed settlement where "the class representatives [sought] to advance their own interests by sacrificing the rights of the majority of Class Members, who st[oo]d to gain nothing of substantial value from the proposed settlement ... ."  *Id.*

I am not persuaded by the objectors' argument.  They base that argument on the fact that the four named plaintiffs were employed as exempt residential-loan underwriters, and–according to the objectors–the proposed settlement purports to release all state and federal wage and hour claims, including those arising from the underwriters' status as non-exempt employees after February 2009.  *See* Objections to Class Action Settlement (Dkt. #217) at 18.

That assertion is not supported by the terms of the settlement, which provides that the released claims include any and all hour and wage claims arising out of class members' employment in a "Covered Position."  *See* Dkt. #185-1 ¶¶ 1.33, 1.34.  The definition of "Covered Position"

provides, in part, that:  "[f]or purposes of this Stipulation, an individual will be considered to be employed in or to have been employed in a Covered Position only for the time period during which the Covered Position was treated as exempt from overtime by JPMorgan Chase."  *Id.* ¶ 1.11.  Thus, it is simply not true that the release covers claims arising out of class members' non-exempt employment.

## IV. Payment to California Class Members

The three objectors here, Cynthia Cole, Darin Takahashi, and Steve McDaniel, are all involved in FLSA litigation against Chase in the Central District of California.  Cole is the lead plaintiff in *Cole v. J.P. Morgan Chase & Co.*, No. SACV 10-00632, Takahashi is a named plaintiff in *Cole*, and McDaniel is the lead plaintiff in *McDaniel v. JP Morgan Chase Bank*, No. CV 10-10044.

The objectors contend that the payment to the California class members under the proposed settlement is inadequate.  Though this argument may seem surprising, considering that class members who were employed in California with receive a pro rata share of the settlement amount that is four times *greater* than the share received by non-California class members,[3] the objectors, in support of that assertion, have analyzed the payout under the settlement agreement to one objector, Darin Takahashi.  According to the objectors, Takahashi would receive only about sixteen percent of the value of his claims under the proposed settlement.  *See* Dkt. #217 at 21-22.  The objectors have not shown, however, that Takahashi's circumstances are shared by other California class members, or that the objectors' calculation of the value of Takahashi's claims could fairly be applied

---

[3]The reason for this different treatment is that employees in California are given more generous protections under the hour and wage laws of that state.  *See* Parties' Mem. (Dkt. #225) at 29.

to those other class members.  In addition, that calculation appears to be based on a number of assumptions in Takahashi's favor, so as to maximize the value of his claims.

The fact remains that California class members stand to receive four times as much, pro rata, under the settlement as non-California class members.  On the record before me, I do not believe that this result could reasonably be deemed unfair to class members in California.  *See Hopson v. Hanesbrands Inc.*, No. CV-08-0844, 2009 WL 928133, at *2 (N.D.Cal. Apr. 3, 2009) (approving settlement under which California class members would have their work weeks increased by a factor of 1.5 to compensate for the additional remedies available under California law as compared with the remedies available under FLSA).

## V. Attorney's Fees

The settlement agreement provides that "JPMorgan Chase will pay Class Counsel an amount allowed by the Court not to exceed 33 1/3% of the Maximum Settlement Amount for all attorneys' fees, and up to $115,000 for all allowable Litigation costs and expenses ... ."  Dkt. #185-1 ¶ 2.9.  It further states that "[t]he Class Representatives and Class Counsel agree that they shall be responsible for justifying the amount of this cost and fee payment to the Court," that, "[p]rovided it is consistent with this Stipulation, JPMorgan Chase will not oppose the amount of fees or costs requested by Class Counsel," and that "[i]n the event that the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, ... only the awarded amounts shall be paid and shall constitute satisfaction of the obligations of this paragraph and full payment thereunder, and the amount of any such reduction will not get paid out by JPMorgan Chase."[4]

---

[4]Such provisions, which are sometimes referred to as "clear-sailing" agreements, "are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure." *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 n.3 (11th Cir. 1999).

In other words, if the Court awards less than one third of the settlement fund as attorney's fees, that will not increase the amount paid to class members; it will simply decrease the amount paid by defendants.  Although the objectors did at one point object to this provision, they have since withdrawn that objection.  *See* Dkt. #232.  Therefore, as the matter stands now, not one person has objected to the fee award.

As with class action settlement agreements in general, the absence of objections to an agreed-upon attorney's fee award does not relieve the Court of its independent obligation to assess the agreement for its overall fairness and reasonableness.  *See In re Diet Drugs Products Liability Litigation*, No. MDL 1203, 2010 WL 3292787, at *9 (E.D.Pa. Aug. 19, 2010) ("The absence of even one objection to the current fee petition weighs in favor of granting it but does not negate our independent obligation to ensure its reasonableness").  It is, however, a factor that weighs in favor of approval of the award.  *See, e.g.*, *In re AT & T Corp.*, 455 F.3d 160, 169 (3d Cir. 2006) (noting "the absence of substantial objections to the requested attorneys' fees" as a factor supporting approval of fee award); *McGee v. Continental Tire North America, Inc.*, No. CIV. 06-6234, 2009 WL 539893, at *14 (D.N.J. Mar. 4, 2009) (stating that "[t]he absence of substantial objections by class members to the fees requested by Class Counsel strongly supports approval").  That makes a good deal of sense, since one of the primary reasons why courts must evaluate the reasonableness of a fee award is to protect the interests of the class.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003); *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  If the class members themselves do not object, then, that is some indication that the agreed-upon fee is not unreasonable.

The Court of Appeals for the Second Circuit "ha[s] acknowledged that 'the trend in this Circuit is toward the percentage method" for awarding fees, *i.e.*, basing the calculation of attorneys' fees on a percentage of the fund secured by counsel, rather than by using the traditional "lodestar"

approach of multiplying a reasonable hourly rate by the number of hours reasonably expended by counsel. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).  The percentage method is often preferred in part because it "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process of lodestar computation.'"  *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775, 2011 WL 2909162, at *5 (E.D.N.Y., July 15, 2011) (quoting *Goldberger*, 209 F.3d at 50) (internal quote omitted).  Other advantages of the percentage method that courts have identified are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys. *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011).

Even when the percentage method is employed, however, the Second Circuit has endorsed the use of the lodestar method as a "cross check" on the reasonableness of the requested percentage. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (quoting *Goldberger*, 209 F.3d at 49-50).  Whichever method is used, though, the ultimate question remains whether the fee request is reasonable.  *See Masters*, 473 F.3d at 436.  In making that determination, under either approach, a district court should consider:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation;  (5) the requested fee in relation to the settlement;  and  (6) public policy considerations.  *See Goldberger*, 209 F.3d at 50.

At the Court's direction, class counsel have submitted summaries of the hours they expended on this case, broken down according to the attorneys and paralegals involved, their hourly rates, and the general nature of the work performed.  *See* Dkt. #238, #239.  The rates range from $120 for paralegals to $250 for "junior attorneys" and $375 for partners.  Dkt. #239 ¶ 3.  According to

counsel, these various individuals combined to work 10,685.1 hours on this case, which, at their standard hourly rates, would result in a fee of $2,631,025.50.  Dkt. #238 at 4.

"[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."  *Goldberger*, 209 F.3d at 50.  *See also Rite Aid*, 396 F.3d at 306-07 (in performing lodestar cross-check calculation, "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records").  In the case at bar, while over 10,000 hours (equaling about 1335 eight-hour workdays, or over five years' worth of five-day workweeks) might at first blush seem excessive, I believe that when one considers the long history of this case, which includes very extensive discovery, this Court's 2008 decision granting summary judgment for defendant, the plaintiffs' successful appeal to the Second Circuit, and an ultimately fruitful mediation process, the time expended here is not unduly lengthy.

"The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier."  *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).  *See, e.g.*, *Wal-Mart*, 396 F.3d at 123.  The multiplier "is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 305-06 (3d Cir. 2005).  *See also In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570, 590 (S.D.N.Y. 2008) ("Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a 'cross check' for a percentage of recovery analysis, counsel may be entitled to a 'multiplier' of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class") (citing cases).

In this case, dividing the $14 million fee request by the lodestar figure yields a multiplier of about 5.3.  A review of the case law indicates that while that figure is toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.  *See Johnson*, 2011 WL 4357376, at *20 ("Courts regularly award lodestar multipliers from two to six times lodestar") (collecting cases); *Telik*, 576 F.Supp.2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court"); *see, e.g., Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1123 (C.D.Cal. 2008) (multiplier of 5.2); *In re Charter Communications, Inc., Securities Litigation*, No. 02-CV-1186, 2005 WL 4045741, at *18 (E.D.Mo. June 30, 2005) (multiplier of 5.61); *Di Giacomo v. Plains All American Pipeline*, No. Civ.A.H-99-4137, 2001 WL 34633373, at *11 (S.D.Tex. Dec. 19, 2001) (multiplier of 5.3); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5).

In addition, as another district court pointed out in similar circumstances, had this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would also have been larger–indeed, given the vagaries of litigation and trial, it might have been lower.  That, too, then, tends to show that the multiplier here is not so high as to raise any red flags over the size of the fee request.  *See Charter Communications*, 2005 WL 4045741, at *18 (noting that "the multiplier is based on the hours incurred to date," and that "[h]ad the case not been settled, considerably more time would have been necessary to complete formal discovery ... and to prepare this case for trial with no assurance that the outcome would have been any more successful").

In any event, the Court "must be cautious of placing too much weight on these numbers lest [it[ re-introduce[ ] the problems of the lodestar method."  *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 766 (S.D.W.Va. 2009) (internal quote omitted).  The calculation is meant to serve as a rough indicator of the propriety of a fee request, not as a litmus test.  *See Rite Aid*, 396

F.3d.at 307 ("the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award"); *Di Giacomo*, 2001 WL 34633373, at *11 (stating that while "courts typically apply multipliers ranging from one to four, [t]he multiplier can, of course, far exceed that number") (citations omitted).

For that same reason, the fact that the multiplier here is not exceptionally high does not in itself mean that the requested fee *is* reasonable.  The Court must still apply the *Goldberger* factors set forth above.  Having done so, I find that the amount requested, though it "is, in absolute terms, a lot of money," *Brown v. RJR Nabisco, Inc.*, No. 88 Civ. 7905, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992), is nonetheless reasonable.

First, class counsel did expend significant time and effort on this case, which involved a class comprising several thousand individuals.  While the issues presented by this case were perhaps not extraordinarily complex, compared to other FLSA cases, defendants' summary judgment motion did turn in part on an issue concerning the scope of the FLSA's administrative-employee exemption, with respect to which the Second Circuit observed that there was little direct authority in the case law.  *See* 587 F.3d at 532 (stating that "[p]recedent in this circuit is light" as to the issue before the court, and that "[t]he line between administrative and production jobs is not a clear one").  The fact that the Court of Appeals reversed this Court's decision is also some indication that the issues presented were fairly debatable.  Based on my familiarity with this litigation, I can also state that class counsel, who have considerable experience in these types of cases, have performed with diligence and skill throughout.

The settlement itself is also a very sizable one, as explained earlier.  That is so whether the settlement is considered as a whole or with respect to individual class members.  This is not a class action in which the total settlement seems impressive, but many individual class members end up

receiving trifling amounts.  Many of the class members here stand to recover thousands of dollars as a result of this settlement.

The policy concerns underlying courts' obligation to scrutinize fee requests are also not implicated here to any great extent.  As stated, only three individuals have objected to the proposed settlement, and even they do not object to the fee request.  Initially, they did object to the provision that, to the extent that the Court awards a fee of less than one third of the total settlement amount, the unawarded amount will not be paid to class members, but will revert to Chase, but they have since withdrawn that objection.  *See* Dkt. #217 at 35.

While such reversionary clauses have been described as "problematic because [they] act[] as a device to isolate fees from scrutiny," *Glass v. UBS Financial Services, Inc.*, 331 Fed.Appx. 452, 456 (9th Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 797 (2009), they have nevertheless been upheld where the class members obtained very favorable results.  If that were not so, I would share the concern about such fee arrangements and great scrutiny would be required where only class counsel benefits.  *See id.*[5]

Such provisions do call for heightened scrutiny of the settlement agreement and the negotiation process for signs of collusion, *see In re HP Laser Printer Litigation*, No. SACV 07–0667, 2011 WL 3861703, at *4 (C.D.Cal. Aug. 31, 2011), but they do not in themselves render a settlement agreement unfair or unreasonable.  *See*, *e.g.*, *id.*; *Lonardo v. Travelers Indemnity Co.*, 706 F.Supp.2d 766, 786 n.19 (N.D.Ohio 2010).  As I see no evidence of collusion in the case before me, this provision does not pose an obstacle to approval of the settlement, including the fee agreement.

_____

[5]Though approving the fee award in that case, the Ninth Circuit in *Glass* explained that "[a] reversion clause for attorneys' fees is problematic because it removes an important economic incentive that class members may have in challenging a fee award that may be excessive under the circumstances.  The clause also gives the district court one less reason to challenge an award of attorneys' fees where any reduction would only benefit the defendant, who may have all but admitted to significant violations of the law."  331 Fed.Appx. at 456 n.2.

## VI. *Pickle* **Plaintiffs**

Counsel for class members who are plaintiffs in another action against Chase, *Pickle v. JP Morgan Chase & Co.*, 10-Civ-2791, which is pending in the Southern District of New York, have not filed formal objections to the settlement, but have submitted a letter to the Court (Dkt. #188) outlining certain "concerns" that they have concerning the proposed settlement. Most of those concerns are echoed by the objectors and have already been addressed. I do note, however, that counsel for these class members ("*Pickle* plaintiffs") have asserted that the settlement agreement is flawed because it seeks to certify a single Rule 23 class covering all fifty states, but that there appear to be no class representatives for all the proposed state law classes, with the result that class members in those other states are not adequately represented.

Such arguments have been rejected by other courts, *see, e.g., Thompson v. U.S. Airways, Inc.*, No. 09– cv–870, 2011 WL 2935051, at *4 and n.8 (E.D.Pa. July 20, 2011); *In re AOL Time Warner, Inc. Securities*, No. 02 Civ. 5575, 2006 WL 3057232, at *29 (S.D.N.Y. Oct. 25, 2006), and I find them unpersuasive here as well. The *Pickle* plaintiffs have not presented any facts to support their assertion that the named plaintiffs here are inadequate class representatives, and have failed to overcome the presumption of adequacy that must be accorded to the settlement agreement. *See McReynolds*, 588 F.3d at 803.

## CONCLUSION

The parties' joint motion for an order granting final approval of the settlement and settlement agreement (Dkt. #224), as well as plaintiffs' motion for an award of attorney's fees and costs (Dkt. #228), are granted.

The motion (Dkt. #232) filed by Cynthia Cole, Darin Takahashi, and Steve McDaniel for leave to withdraw certain of their objections to the parties' proposed settlement agreement is granted, and the objections in question are deemed withdrawn.

The motion (Dkt. #209) filed by the *Cole* plaintiffs seeking to modify the briefing schedule set forth in the Court's April 6, 2011 Decision and Order is denied as moot.

The parties are hereby directed to submit to the Court an agreed-upon Final Order of Settlement by November 1, 2011.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      October 11, 2011.